UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 05-359-01, -2, -3 (RMU) |
| : | |
| DOUGLAS JEMAL, ET AL. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT DOUGLAS JEMAL'S
MOTION TO SEVER COUNTS FOR CONSOLIDATION WITH RELATED CASE**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Douglas Jemal's Motion to Sever Counts for Consolidation with Related Case ("Def. Second Severance Mot.").

## INTRODUCTION

The Indictment alleges – and the Court has already recognized – that the financial relationships among defendants Douglas Jemal, Blake Esherick and Norman Jemal are the ties that bind their conspiratorial relationship. The personal financial motives of the three men are profound, and their mutual dependence on one another to pursue their mutual financial interests is central to the Government's case. Moreover, the sets of charges (involving crimes against the District of Columbia Government (fraud and bribery), Morgan Stanley (false invoice) and the federal government (tax evasion)), fit together and form a single coherent picture; they arise from common and joint motives, take place in the same environment in the same time-frame, and will be proved by an overlapping set of witnesses. It is thus not only legally proper but absolutely efficient for the Indictment as presently constituted to be tried as scheduled.

The defendants have strived mightily to tear apart the Indictment and send the various counts scattering. They filed lengthy pre-trial motions to that end. These motions were properly denied by the Court.

Nonetheless, alleging virtually no changed circumstance other than the indictment of John E. Brownell, Douglas Jemal,[1] joined by his codefendants, has sought to have the Court revisit its ruling denying severance. Yet he offers no persuasive reason for the Court to reconsider the decision it made when rejecting the first set of severance motions. He does not and cannot seriously maintain there is prejudice in the present Indictment – that matter has been decided. Instead, he advances vague efficiency claims. Even to reach this end, he advances positions as to the evidentiary relationship of the presently charged Jemal-Esherick counts with the potential Jemal-Brownell tax counts that are fundamentally inconsistent with positions he previously advanced in his initial severance motion and in the 404(b) litigation.

The positions of defendants Esherick and Brownell are even less persuasive. Esherick would opt for two trials for himself, including one with Brownell. Esherick accedes to this position even though he has previously argued that admission of evidence of any Jemal-Brownell tax evasion conduct before the same jury that would consider his own personal tax charges "would cause substantial prejudice to * * * Esherick that cannot be cured by any limiting instruction." Def. 404(b) Mot. at 20.[2] Nonetheless, Esherick has allied himself with the legal interests of Jemal.[3]

---

[1] Defendant Douglas Jemal will be referred to as "Jemal" or "defendant," except when the pleading refers in the same paragraph to Norman Jemal.

[2] "Def. 404(b) Mot." refers to the defendants' Motion in Limine To Exclude Evidence Alleged in Government's Notice of Intent to Introduce Rule 404(b) Evidence.

[3] Esherick resides in a house owned by Jemal. After the grand jury investigation commenced, his salary was increased from $70,2000 to $300,000 per annum. After Indictment, it appears his salary was increased to $350,000.

Brownell's position is even less compelling.  He offers <u>no</u> argument to explain why it is in <u>his</u> interest to be tried with Esherick and Jemal.  Indeed, Brownell's professed desire to permit the trial of his personal criminal liability to be joined with the trials of other crimes by other individuals is nearly unique in the history of criminal litigation, though Brownell, like Esherick, has advanced a position that certainly inures to the benefit of his employer, Jemal.[4]

Finally, the asserted efficiency grounds are either non-existent or wholly speculative.  Defendants would turn the present schedule of trials – a three-codefendant trial in September and a single defendant trial in February – into <u>two</u> three-codefendant trials.  The relief sought would necessarily complicate the Brownell trial.  In light of the unknown landscape that lies ahead involving other defendants or other charges, it is at least as likely (if not more likely) that granting Jemal's motion would protract and complicate the overall resolution of charges against all the present or potential defendants.  Indeed, it must be stressed that, at a minimum, trial of the present Indictment will fully and completely dispose of the potential liability of two men, defendants Norman Jemal and Blake Esherick; and that granting Jemal's motion would require Esherick to stand trial twice and thereby delay the resolution of all the charges against him.

## BACKGROUND

1. <u>Indictment</u>

On September 27, 2005, the grand jury indicted Douglas Jemal on one count of conspiracy, in violation of 18 U.S.C. § 371; one count of bribery, in violation of 18 U.S.C. § 201; one count of mail fraud, in violation of 18 U.S.C. §§ 1343, 1346; one count of wire fraud, in

---

[4]     Brownell still works for Jemal.  After the commencement of the Grand Jury investigation, Brownell's salary increased from roughly $125,000 to $300,000.

violation of 18 U.S.C. § 1343; and three counts of tax evasion, in violation of 26 U.S.C. § 7201. Normal Jemal is charged with one count of conspiracy, one count of bribery, one count of mail fraud, and one count of wire fraud. Blake Esherick is charged with one count of conspiracy; one count of bribery; one count of mail fraud; one count of first degree fraud, in violation of 22 D.C. Code §§ 3221(a), 3222(a)(1); one count of wire fraud; and three counts of tax evasion.

2. Defendants' First Set of Severance Motions

On December 12, 2005, defendants Douglas Jemal, Norman Jemal, and Esherick jointly moved to sever the tax counts (counts six through eight of the Indictment) and the wire fraud count (count five) from what they termed the public corruption counts (counts one through four). See Def. First Severance Mot. at 1.[5] The defendants insisted that the Court could only ensure compliance with Rule 8(b) of the Federal Rules of Criminal Procedure by ordering three separate trials. Def. First Severance Mem. at 8.

On January 18, 2006, the government opposed defendants' severance motion, noting that "Counts Six through Eight detail Esherick's compensation from Douglas Jemal (through DDC). Such evidence explains the financial motives of Esherick, the primary actor on behalf of Douglas Jemal in Counts One through Five, and goes to the heart of the conspiratorial relationship between Douglas Jemal and his trusted and loyal employee." Gov. Opp. at 9. The government

---

[5] Throughout this pleading, Defendants' Motion to Sever Counts Based on Improper Joinder Under Rule 8(b) and Prejudicial Joinder under Rule 14 is cited as "Def. First Severance Mot." The Government's Consolidated Opposition to 1) Defendants' Motion to Sever Counts Based on Improper Joinder under Rule 8(b) and Prejudicial Joinder Under Rule 14; and 2) Norman D. Jemal's Motion to Sever Counts 6-8 Based Upon Prejudicial Joinder Under Rule 14 is cited herein as "Gov. Opp." The defendants' Reply Memorandum in Support of Defendants' Motion to Sever Counts Based on Improper Joinder Under Rule 8(b) and Prejudicial Joinder Under Rule 14 is cited herein as "Def. Severance Reply Mem."

argued that the tax counts were necessarily joined with the other counts in the Indictment because the tax counts demonstrated Esherick's motive and compensation, and noted that "courts are uniform in recognizing that allegations concerning the financial understandings of members of a conspiracy with each other and payments among the conspirators are appropriate components of an overall conspiratorial agreement." See id. & nn. 6-7 (collecting cases).

On February 1, 2006, in their reply brief to the government's opposition to the severance motion, defendants reiterated their joint demand for three separate trials: "the Court should sever the Wire Fraud Count and the Tax Evasion Counts from each other and from the Public Corruption Counts for separate trials." Def. Severance Reply Mem. at 2.[6]

3. Rule 404(b) Litigation

On December 22, 2005, the government filed its Notice of Intent to Introduce Evidence Under Fed. R. Evid. 404(b) ("404(b) Notice"), where it indicated its intent to show that Jemal paid substantial sums of unreported income to DDC's Construction Vice President and its Chief Financial Officer (now identified as Brownell). See id. at 18. The Government made clear that such evidence was to be offered against Jemal, not Esherick, and explained that the evidence was admissible under Rule 404(b) of the Federal Rules of Evidence as proof of Jemal's intent, motive, opportunity, plan, knowledge, identity, and absence of mistake or accident:

> The tax fraud involving Esherick is part of a broader common
> scheme or plan executed by Douglas Jemal to reward his critical
> employees and provide them an incentive to commit dishonest acts

---

[6] Defendant Norman Jemal, besides joining his co-defendants' motion to sever the tax counts from the Indictment, filed his own, separate motion. See Memorandum of Law in Support of Norman Jemal's Motion to Sever Counts 6-8 Upon Rejudicial (sic) Joinder Under Rule 14. Norman Jemal's severance motion contemplates at least two trials of Douglas Jemal and Esherick on the eight charges in this Indictment.

>on his behalf by compensating them in ways which are not reported to the IRS. He fostered not only financial dependence but extreme loyalty from these subordinates by bringing them into a corrupt financial relationship, where a substantial portion of the executives' financial well-being and accumulation of wealth resulted from payments of unreported compensation. Id. at 22.

On January 18, 2006, defendants filed their Motion in Limine To Exclude Evidence Alleged in Government's Notice of Intent to Introduce Rule 404(b) Evidence, in which they stressed the differences among the compensation schemes involving various DDC executives:

>[E]ach of the executives at issue had their [sic] own personal compensation arrangement with Douglas Jemal. These arrangements took different forms and involved different types of payments. Thus, the evidence of these other compensation arrangements is not relevant to establishing whether Douglas Jemal intended to assist Esherick in evading taxes. Def. 404(b) Mot. at 19 (citation omitted).

The defendants argued that the admission of such 404(b) evidence "would cause substantial prejudice to * * * Esherick that cannot be cured by any limiting instruction." Def. 404(b) Mot. at 20. In other words, they contended, the evidence regarding the other two employees should not be introduced in a trial involving tax evasion allegations against Jemal and Esherick:

>[E]vidence that Douglas Jemal assisted other DDC employees evade taxes would strongly implicate that * * * Esherick participated in the act. * * * The government has also characterized the individuals at issue as the 'critical employees' of DDC, a small, private corporation that is operated in many respects like a family business. It would take no small leap for the jury to improperly infer that * * * Esherick participated in the conduct involving the other DDC employees if the evidence was admitted against Douglas Jemal. No limiting instruction would effectively prevent the jury from reaching this improper conclusion or cure the prejudicial spill over caused by this evidence. Id. at 21.

4. <u>Motion to Reschedule Trial Date</u>

On February 3, 2006, the defendants moved to reschedule the trial date from September 8, 2006, to the earliest possible trial date. See Memorandum in Support of Defendants' Motion to Reschedule Trial Date ("Def. Scheduling Mot."). Attached to the memorandum was a declaration from Jemal, which states, in part:

> My business will be severely damaged if the trial in this matter does not take place until September 2006, and I continue to be unable to obtain any substantial real estate financing. In addition, the current situation affects numerous current and ongoing projects, which impacts hundreds of jobs and the revitalization of the D.C. metropolitan area. For these reasons, I respectfully ask the Court the reschedule the trial in this matter to the Court's first available trial date.

Declaration of Douglas Jemal in Support of Defendants' Motion to Reschedule Trial Date ("Jemal Decl."), at ¶ 15. The defendants chose September because lead counsel for Jemal and Esherick were unavailable for an earlier date, in February. See Def. Scheduling Mot. at 2.

5. <u>Motions Hearing and Rulings</u>

On March 7, 2006, the Court denied the defendants' severance motions, recognizing the logical, interconnected relationship between the bribery and fraud counts and tax evasion counts:

> Starting with the defendants' motions to sever. The counts in this indictment are properly joined because there is a logical relationship between and among the activities alleged in various counts. The counts track the defendants' efforts to generate, by way of allegation, revenues and profits from their properties through bribery of a public official and falsification of documents as alleged by the government.

* * *

> The defendants' main objection seems to be the joinder of the tax counts with the rest of the indictment. The tax counts relate to Mr. Esherick's compensation, and the defendants argue that Mr. Esherick's compensation is irrelevant to the other allegations in the indictment.
>
> But as discussed in relevant case law, payments among conspirators can constitute overt acts made in furtherance of a conspiracy and there is ample authority supporting the proposition that tax counts can properly be joined with non-tax counts when there is shown that the tax offenses rose directly from the other offenses charged.
>
> As for the prejudice which the defendants assure the court will flow from trying these counts together, the court's view of the evidence is that it may be easily compartmentalized, and the court intends to give appropriate limiting instructions when the time is ripe. Moreover, the government will be required to present the evidence in a logical fashion and sequence. Mot. Hearing Tr. at 7-8.

The Court also held that joinder was proper because evidence of tax evasion would be admissible in a separate trial of the fraud and bribery counts under Rule 404(b):

> Lastly, the defendants' arguments that the evidence of the different charges would not be allowed in at separate trials is misguided since the evidence of Mr. Esherick's compensation may well be admissible to prove his intent, plan, and knowledge of the bribery conspiracy. Id. at 8.

6. Defendants' Pursuit of Rule 404(b) Objections.

After announcing its rulings on the motions, the Court heard argument from counsel for the Jemal opposing admission of Rule 404(b) evidence concerning tax evasion perpetrated by the Construction Vice President and Chief Financial Officer of DDC. Counsel began by asserting that it would be unfair to Esherick to have evidence come in during this trial about tax evasion schemes involving two other DDC officials not charged in this Indictment: "And what about Mr.

Esherick? I mean he has his own tax problems. Now he's got to be on the hook for somebody else's tax returns." Mot. Hearing Tr. at 27.

Defense counsel next argued that there is no logical relationship between the tax counts in this Indictment and any tax evasion evidence regarding other DDC officials:

> [A]s you think about potential prejudice and about the time we have to spend preparing to meet a tax case against two uncharged people we don't represent, think about what Mr. Jemal is facing with respect to tax issues with respect to three different employees who worked for him where he doesn't prepare the returns, doesn't see them. You know, he has separate relationships of [sic] all three of them. The payments are all different. I mean the government tries to say, oh, there is a similarity here because they all worked in the same place but the reality is the amounts are dramatically different between the three folks.
>
> Another complication. This will be an issue for trial that the government doesn't mention in its papers. The two uncharged folks loaned money to Douglas Jemal and his companies. And the repayments of loans that get mixed in with the extra compensation and what that suggests to you is that there is going to be a real issue as to whether these are loans or actual compensation. That is a separate issue with two other folk. Mot. Hearing Tr. at 27-28.[7]

7. Post-Hearing Activity

On March 21, 2006, the grand jury indicted John E. Brownell, DDC's Chief Financial Officer, on one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and five counts of tax evasion, in violation of 26 U.S.C. § 7201. See United States v. John E. Brownell, Case No. 1:06-cr-77, Indictment.[8]

---

[7] Near the end of the hearing, counsel for Jemal indicated that he respected the Court's rulings and would not seek reconsideration. Cf. id. at 46 ("Your Honor, as much as I would like to, I will resist the temptation to ask the court to reconsider arguments * * *. We were looking forward to arguing and the court has obviously ruled.").

[8] The owner and President of DDC is named as an unindicted co-conspirator.

On March 21, 2006, counsel for Jemal met with one of undersigned counsel to request that the government postpone indictment of Jemal in any investigation regarding potential tax evasion by DDC's Construction Vice President. On March 30, 2006, counsel for Jemal met with one of undersigned counsel and with the Chief of the Fraud and Public Corruption Section of the United States Attorney's Office again to request that the government postpone any indictment of Jemal for tax evasion in connection with the DDC Construction Vice President until the conclusion of the trial in this case.[9]

      8. Jemal's Second Severance Motion

On May 1, 2006, Douglas Jemal filed his second severance motion in this litigation. The motion notes that defendants Norman Jemal and Esherick agree with the relief sought in the motion. See Def. Second Severance Mot. at 1. The memorandum in support of the motion acknowledges that counsel for Douglas Jemal importuned the government to postpone any subsequent indictments of Douglas Jemal until after the trial in this case. See Def. Second Severance Mot. Mem. at 3. It further notes that defense counsel proposed that, in return for the government postponing any subsequent indictment of Douglas Jemal in a case involving DDC's Construction Vice President, "Mr. Jemal would consent to being joined by information as a co-defendant in the Construction VP's indictment at the conclusion of the trial in this matter." Id.

As to the substance of the second motion, Jemal offers two points in support: first, that he would be prejudiced by facing multiple trials regarding allegations of tax evasion at DDC; and (2) that severing the tax evasion counts from this Indictment and joining them with the

---

[9] On April 3, 2006, counsel for the DDC Construction Vice President sent the government a waiver of statute of limitation defenses signed by his client that extends through July 31, 2006.

Indictment in United States v. John E. Brownell would conserve judicial resources. He further contends that the "Tax Evasion Counts [in this Indictment] and the Brownell Indictment could have been joined in a single indictment * * *." Id.

    9. Brownell's Joinder Motion

On May 1, 2006, in United States v. John E. Brownell, 1:06-cr-77, the defendant filed a Motion to Consolidate Counts With Tax Counts in Related Case ("Brownell Joinder Mot."). Running counter to traditional arguments against joinder — e.g., that the jury will convict a defendant opposing joinder by cumulating as to all the codefendants evidence not relevant to him — defendant Brownell seeks to be joined with the tax counts in this case. However, he offers no reason why he seeks joinder nor does he describe any benefit he would receive if his motion were granted. See Brownell Joinder Mot. Mem. 3-7. Indeed, he specifies that he is not requesting true joinder with counts in this Indictment; he wants to be joined in a trial with Jemal if and only if the tax counts in this Indictment are severed. See id. at 3 n.3.

## ARGUMENT

As shown below, the Court properly denied defendants' first set of severance motions because the relationship between the tax evasion counts and the remaining counts is vital to understanding the nature and scope of the conspirators and their motives. Jemal's second severance motion offers no persuasive reason to revisit the Court's decision. Indeed, he takes positions that are inconsistent both with the relief he seeks and with his previous positions.

**I.    The Tax Counts Are Properly Joined with the Remaining Counts in the Indictment.**

The Court has already ruled that the tax evasion counts are properly joined with the conspiracy, bribery, and fraud counts because they explain how Esherick was being compensated

for his efforts on behalf of the conspiracy. See Mot. Hearing Tr. at 6-8. The joinder of the tax counts with the other counts is essential so that the jury gets a full picture of how the conspiracy worked and why conspirators like Esherick had a motive to participate in it.

The Court further held that joinder was proper because evidence about the tax evasion would be admissible in a separate trial of the conspiracy, bribery, and fraud counts under Rule 404(b) of the Federal Rules of Evidence. See id. at 8.[10]

The Court's joinder rulings were proper under Rules 8(b) and 14 of the Federal Rules of Civil Procedure — a point left unchallenged in Jemal's second severance motion.

## II.   No Basis Exists To Revisit the Court's Decision.

As noted above, defendant offers only two reasons to sever the tax counts. Neither justifies such a drastic shift to the parties' expectations at this stage in the litigation.

### A.   There is No Substantial Prejudice.

The first reason offered in the second severance motion — that Jemal would be "substantially prejudiced" by having to face multiple trials — does not withstand even mild scrutiny. Jemal cites no authority — no case, no treatise, no law review article — for the proposition that a defendant suffers legally cognizable prejudice when he faces back-to-back criminal trials and there are no double jeopardy concerns (as there are none here). Jemal does not even specify how it is that he would be substantially prejudiced.

The most likely reason he has cited no authority is that defendants routinely face back-to-back trials — often because courts grant their motions to sever out certain counts and schedule

---

[10]   See also, e.g., United States v. Levi, 45 F.3d 453, 455-56 (D.C. Cir. 1995) (affirming convictions in rejecting claim that trial court erred in denying severance motion where evidence regarding joined counts would have been admitted in separate trials of those counts).

trial on the severed counts to take place immediately after the first trial is concluded.  Indeed, it is difficult to take seriously Jemal's claim that he would be "substantially prejudiced" by facing back-to-back trials when considering that his first severance motion explicitly sought three separate, and presumably back-to-back, trials.  See Def. First Severance Mem. at 8  ("[T]he Public Corruption Counts, the Wire Fraud Count and the Tax Evasion Counts are improperly joined in a single indictment, and the Court should sever each set of counts from the others <u>for separate trials</u>")  (emphasis added).

    B.    <u>Severance Is Unlikely to Conserve Judicial Resources</u>

Jemal's second reason for severance is his prediction that it would be more efficient to try all the tax counts in one, omnibus trial.  Putting aside whether it would be appropriate to do so, it is unlikely that that would be any more efficient.

Jemal's proposal would convert one three-defendant trial (in this Indictment) and one one-defendant trial (in the Brownell Indictment) into one three-defendant trial (in this Indictment) and another three-defendant trial (in Brownell).  That would have the effect of making the second trial, in February, far more complex, while not making the trial in this Indictment appreciably less complex.  Moreover, far from conserving judicial resources and streamlining two trials, Jemal's proposed reconfiguration would most likely result in the unnecessary duplication of substantial bodies of proof in both trials.  First, the trial on this Indictment would almost certainly involve testimony about tax evasion conduct by Jemal and Esherick (among other grounds, as proof of their financial relationship, and to explain Esherick's motive in taking illegal actions on behalf of Jemal by reference to the compensation Esherick received, under Rule 404(b)).  As the Court has noted:  "Lastly, the defendants' arguments that

the evidence of the different charges would not be allowed in at separate trials is misguided since the evidence of Mr. Esherick's compensation may well be admissible to prove his intent, plan, and knowledge of the bribery conspiracy." Mot. Hearing Tr. at 8. Thus, severing out the tax evasion counts from this Indictment will not substantially decrease the amount of testimony about the Esherick-Jemal financial relationship (to include the unreported income) in this Indictment. Second, it may be necessary to include certain of Esherick's bribery and fraud conduct in any new, hypothetically consolidated tax case, to explain his role in the organization and the services he provides for Jemal for which he is compensated in unreported income.

As for the investigation of the DDC Construction Vice President and Jemal, the first thing to note is that there now is no indictment. Moreover, although the government makes no representations about whether there would be any such indictment in the future, it would not be surprising if the results of the trial on this Indictment would tend to induce a resolution of the Brownell case and any potential case involving the DDC Construction Vice President short of trial. Hence expeditious trial of this Indictment as conceived by the grand jury may indeed result in the most efficient way of handling all possible criminal issues regarding DDC senior officials.

### III.    The Defendant's Positions Are Internally and Externally Inconsistent.

####    A.    External Inconsistencies

In evaluating the merits of defendant Jemal's affirmative claims, it is noteworthy that the relief Jemal seeks in his second severance motion and the positions he advances therein are flatly inconsistent with the positions he has affirmatively advanced at other times in this case. These inconsistencies are not on small matters; they go right to the heart of the relief he seeks.

At the core of his second severance motion is his proposal that the Court sever tax counts six through eight in this Indictment and join them with the Indictment involving John Brownell (and, potentially, with any indictment involving the DDC Construction Vice President).  But Jemal (and Esherick) have previously argued to this Court, not once, not twice, but on <u>four</u> occasions, that, for a variety of reasons, it would be improper for one jury to hear evidence about tax evasion by Brownell (and the Construction Vice President) in any case involving the tax evasion charges against Jemal and Esherick — the very defendants who seek to be joined in the proposed omnibus tax evasion trial:

- First, defendants argued on relevance grounds that the Court should not allow the government to introduce evidence in this trial of tax evasion by other DDC officials:

    > [E]ach of the executives at issue had their [sic] own personal compensation arrangement with Douglas Jemal.  These arrangements took different forms and involved different types of payments.  Thus, the evidence of these other compensation arrangements is not relevant to establishing whether Douglas Jemal intended to assist Esherick in evading taxes.  Def. 404(b) Mot. at 19 (citation omitted).

- Second, defendants argued on undue prejudice grounds that the Court should exclude any evidence in this trial regarding tax evasion by other DDC officials because that evidence would only be admissible as to Jemal and thus "would cause substantial prejudice to * * * Esherick that cannot be cured by any limiting instruction."  Def. 404(b) Mot. at 20.  In other words, defendants contended,

    > evidence that Douglas Jemal assisted other DDC employees evade taxes would strongly implicate that * * * Esherick participated in the act.  * * * The government has also characterized the individuals at issue as the 'critical employees' of DDC, a small, private corporation that is operated in many respects like a family

>   business.  It would take no small leap for the jury to improperly
>   infer that * * * Esherick participated in the conduct involving the
>   other DDC employees if the evidence was admitted against
>   Douglas Jemal.  No limiting instruction would effectively prevent
>   the jury from reaching this improper conclusion or cure the
>   prejudicial spill over caused by this evidence.  Id. at 21.

- Third, counsel for Jemal argued at the motions hearing that it would be unfair to Esherick for evidence to come in during this trial about tax evasion schemes involving other DDC officials: "And what about Mr. Esherick?  I mean he has his own tax problems.  Now he's got to be on the hook for somebody else's tax returns."  Mot. Hearing Tr. at 27.

- Fourth, counsel for Jemal argued at the hearing that his client would be prejudiced because there is no logical relationship between the tax counts in this Indictment and any tax evasion evidence regarding other DDC officials:

>   [A]s you think about potential prejudice and about the time we
>   have to spend preparing to meet a tax case against two uncharged
>   people we don't represent, think about what Mr. Jemal is facing
>   with respect to tax issues with respect to three different employees
>   who worked for him where he doesn't prepare the returns, doesn't
>   see them.  You know, he has separate relationships of [sic] all three
>   of them.  The payments are all different.  I mean the government
>   tries to say, oh, there is a similarity here because they all worked in
>   the same place but the reality is the amounts are dramatically
>   different between the three folks.
>
>   Another complication.  This will be an issue for trial that
>   the government doesn't mention in its papers.  The two uncharged
>   folks loaned money to Douglas Jemal and his companies.  And the
>   repayments of loans that get mixed in with the extra compensation
>   and what that suggests to you is that there is going to be a real issue
>   as to whether these are loans or actual compensation.  That is a
>   separate issue with two other folk.  Mot. Hearing Tr. at 27-28.

               *               *               *

In sum, defendant is seeking to join in one omnibus tax evasion trial counts and defendants that he has consistently argued may not heard in one trial. We recognize that criminal defendants have a right to present inconsistent factual defenses – "I didn't make the payment to the city official; but if I did, it was a gift" – though it is only natural to conclude that each of the shifting factual arguments undermine each other. The defendants, however, have been the <u>moving</u> party (in their motion <u>in limine</u> and the instant motion to sever) in advancing serially contradictory factual and legal positions, which may be characterized as follows: "we will be prejudiced by the inclusion of evidence of the Jemal-Brownell tax conduct in the Jemal-Esherick tax case; but, to the extent you don't buy that argument, we now insist that there is such a tight, logical, and proper relationship between the Jemal-Brownell and Jemal-Esherick tax charges that the respective sets of charges should be heard together." It is hard to take either argument seriously when each is so vigorously argued within weeks of the other.

B.     <u>Internal Inconsistencies</u>

The positions in Jemal's second severance motion are also internally inconsistent. The main premise of his motion is that it would be judicially efficient to sever the tax counts from this trial and join them into one, omnibus tax evasion trial with Brownell (and possibly the Construction Vice President). But the relief he seeks is inconsistent with maximizing judicial efficiency. For example, his idea of efficiency is for Esherick to be tried twice.

If judicial efficiency were truly the touchstone, why does Jemal not seek to join the Brownell Indictment with this entire Indictment for one trial? Trying one case should be more efficient than trying two or three separate trials. But Jemal makes clear that he does not favor joinder <u>per se</u>; he only wants his tax counts to be joined with the <u>Brownell</u> Indictment if his tax

-17-

counts are first severed from this Indictment. Brownell's own commitment to judicial efficiency is similarly half-hearted. See Brownell Joinder Mot. at 1 n.1 ("This request is, however, conditional on the Court's deciding to grant the defendant's request in the <u>Jemal</u> case to sever the bribery counts from the criminal tax counts in that case. Should the Court decline to do so, then we do not seek joinder with that case as it is presently constituted.").

Jemal's failure even to suggest that the Brownell Indictment be joined with all the charges in this Indictment is particularly significant given his previous plea to the Court about how essential it is for him, if not the fate of the entire City, that he be able to resolve all his criminal liabilities as soon as possible. Thus, defendant previously declared that his

> business will be severely damaged if the trial in this matter does not take place until September 2006, and I continue to be unable to obtain any substantial real estate financing. In addition, the current situation affects numerous current and ongoing projects, which impacts hundreds of jobs and the revitalization of the D.C. metropolitan area. For these reasons, I respectfully ask the Court the reschedule the trial in this matter to the Court's first available trial date. Jemal Decl. at ¶ 15.[11]

That Jemal does not seek true joinder suggests that this motion has little to do with preserving the Court's resources.

---

[11]   Of course, it is difficult to reconcile that position with the one Jemal took in his first severance motion, which would have delayed the ultimate resolution of charges against him by severing this Indictment into three separate trials. See Def. First Severance Mot. at 8.

## CONCLUSION

      The defendant's motion should be denied.

                                Respectfully submitted,

                                KENNETH L. WAINSTEIN
                                UNITED STATES ATTORNEY

By:    _____
        Mark H. Dubester
        Timothy G. Lynch
        Assistant United States Attorneys
        555 4th Street, NW
        Room 5233
        Washington, D.C. 20530
        (202) 353-4862

CERTIFICATE OF SERVICE

      I hereby certify that, this 5th day of June, 2006, I caused to be served by electronic filing a copy of the foregoing, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Carol Elder Bruce, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street,
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe and Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

                    _____
                    Timothy G. Lynch
                    Assistant United States Attorney
                    D.C. Bar No. 456506
                    555 Fourth Street, NW
                    Room 5233
                    Washington, D.C. 20530
                    (202) 353-4862