1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


United States of America          Docket No. 05-0359 RMU

                                  Washington, D.C.
         vs.                      March 7, 2006
                                  1:52 p.m.
Douglas Jemal      01
Norman D. Jemal    02
Blake C. Esherick 03

           Defendants


        Transcript of Motions Hearing on Legal Issues
           Before the Honorable Ricardo M. Urbina
               United States District Judge


APPEARANCES:

For the Government:        Mark Dubester, Esq.

For the Defendant:         Reid H. Weingarten, Esq.
                           Brian M. Heberlig, Esq.
                           Christopher B. Mead, Esq.
                           Stanley M. Brand, Esq.
                           Ross A. Nabatoff, Esq.
                           Paul F. Kemp, Esq.
                           Carol E. Bruce, Esq.

Reporter:                  WILLIAM D. MC ALLISTER, CVR-CM
                           Official Court Reporter
                           Room 4806-B
                           333 Constitution Avenue, N.W.
                           Washington, D.C. 20001-8306
                           (202) 371-6446


Reported by Voice Writing and transcribed using SpeechCAT


Pages 1 through 55

9

1   the allegations in counts one through three and in order to
2   avoid unfair surprise at trial the government needs to apprise
3   the defendants of the specific official acts that the
4   government contends constitutes the quid pro quo the government
5   expects to prove at the trial, that is, all of official acts
6   allegedly undertaken by Mr. Lorusso as part of the bribery
7   scheme alleged in counts one through three.

8           Surplusage.  I have reviewed the indictment in its
9   context as a total document.  I have considered whether it
10  contains language that, because of its materiality or
11  irrelevant nature, may constitute prejudicial or inflammatory
12  allegations.  You have each been given a chart referencing
13  these items.

14          In this vein, I rule that the disputed phrases
15  contained, and you have the charts so you can check them off as
16  I go, the disputed phrases contained in 1, 2, 6, 8, 11 through
17  13, that is,  1, 2, 6, 8, 11 through 13, in the table to
18  delineating these challenged phrases are stricken because they
19  contain irrelevant assertions which, in their totality, harbor
20  the possibility of unduly prejudicing the defendants.

21          Motion to quash.  The Jemal defendants claim that the
22  affidavit justifying the warrants failed to establish probable
23  cause for the three alleged illegal transactions: the bribery
24  scheme, the illegal leasing commission, and tax evasion, and
25  that even if the affidavit contained adequate probable cause,

10

1  the defendants argue that the command provisions of the
2  warrants exceed any such probable cause.
3         Also the defendants assert that the warrants lacked
4  the constitutionally-mandated particularity, which thereby
5  enables the government to engage in an improper rummaging of
6  the defendants' business and personal affairs.
7         The government asks the court to give Judge Kay's,
8  that is, Judge Alan Kay, who issued the search warrant, to give
9  Judge Kay's decision to issue the warrant deference, and in
10 that event the warrants are otherwise based on adequate
11 probable cause as well.  That's the government's assertion.
12        Noting that a combination of factors may establish
13 probable cause even when individual factors standing along may
14 not, the court first considers whether there is a substantial
15 basis for Judge Kay's issuance of the warrant, that is, was it
16 reasonable for Judge Kay to conclude that the affidavit set
17 forth a probability of criminal activity and a fair probability
18 that the evidence would be found in the particular places set
19 forth.
20        This court concludes that there was a substantial
21 basis for Judge Kay's findings and for the likelihood that the
22 evidence would be found as suggested.
23        A District Court should not review the sufficiency of
24 an affidavit except with a view towards deference.  However,
25 some affidavits and some warrants are flawed in a fashion that

11

 1   are conspicuous, and therefore, the court in those instances is
 2   required to go beyond the affidavit and the other supporting
 3   documents and ascertain whether or not the insurance is
 4   appropriate.  The evidence viewed as a whole provided a
 5   substantial bases for the magistrate's findings in this case.
 6            Regarding the bribery charge, for example, the 16-
 7   page affidavit is based, in part, on the sworn testimony of Mr.
 8   Lorusso.  Mr. Lorusso was, of course, before the court and pled
 9   to the offense of conspiracy to pay and receive bribes,
10   involving an entity "Company X," earlier referenced.
11            During his tenure as Deputy Director of the D.C.
12   Office of Property Management, Mr. Lorusso was responsible,
13   according to the government, for arranging for the leasing of
14   space for use by agencies of the D.C. Government.
15            DDC was a company which leased and sought to lease
16   real estate to the D.C. government.  The affidavit alleges
17   specific incidents from November 2001 through January 2003 in
18   which Mr. Lorusso used his official position to benefit DDC.
19   The affidavit also details actions taken by DDC to provide
20   benefit to Mr. Lorusso, including paying for a hotel room in
21   Las Vegas, cash gifts, Rolex watches, paying for car repairs,
22   et cetera.  The officer applying for the warrant also sets
23   forth corroborating evidence for Lorusso's statements.
24            Regarding the wire fraud and tax evasion charges, the
25   affidavit sets forth in detail spending patterns relating to

12

1   DDC checks as well as tax records indicating that Defendant

2   Esherick claimed mortgage and real estate deductions on

3   property owned by DDC where Esherick lived rent-free.

4          The warrant also details the locations to be

5   searched, for example, Esherick's residence, owned by DDC, and

6   DDC offices, stating the address and location to be searched,

7   its connection with the defendants, and other details of the

8   properties.

9          Therefore, the evidence presented in the affidavit,

10  taken as a whole, provides a substantial basis for Judge Kay's

11  finding of probable cause

12         Moreover, the court concludes that it is reasonable

13  to believe that financial records related to DDC and Mr.

14  Esherick, Brownell, Millstein and other related entities would

15  be found in the DDC office and at Mr. Esherick's home.

16  Authority for the proposition lies in the case of U.S. v. Singh

17  at 390 F.3d 168.  A showing of nexus to a defendant's home "may

18  be based on 'reasonable inferences' from the facts presented

19  based on common sense and experience."

20         With regard to the defendants' staleness challenge,

21  it is reasonable that a business retains financial records for

22  several years, and a two- or three-year time lapse is not

23  significant enough to render the warrant invalid.  The entire

24  point of creating business and financial records is for

25  preservation.

13

1        Therefore, I conclude that the appropriate course of

2    action in this case is to find that Judge Kay had a substantial

3    bases in that his issuance of the warrant was appropriate in

4    every way and that the warrant was not otherwise

5    constitutionally infirm.

6        The motion to dismiss.  Contrary to the position

7    asserted by the defendants, the indictment does allege a direct

8    nexus between the gratuities conferred and Mr. Lorusso's

9    actions, and the timing of the events alleged in the indictment

10    show that the alleged bribes were given before the beneficial

11    acts took place.

12        I am handing out, which is obviously for the record,

13    but it is an informal chart that I have devised to help me at

14    least visualize this issue of cross-referencing things of value

15    provided to Mr. Lorusso and actions taken by Mr. Lorusso.

16        As I've indicated, specifically count two alleges

17    that the defendants gave things of value to Mr. Lorusso to

18    influence his official acts and to induce him to do and to omit

19    acts in a fashion that would be favorable to DDC whenever the

20    opportunity presented itself.

21        The indictment then goes on to describe when

22    precisely those opportunities presented themselves.  Thus, at

23    least on its face, the indictment does allege that there is a

24    connection between the bribes and Mr. Lorusso's actions.

25        Moreover, assuming, as the defendants argue, that a