UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 06-0077 (RMU) |
| | : | |
| JOHN E. BROWNELL, | : | |
| | : | |
| Defendant. | | |

GOVERNMENT'S RESPONSE TO
DEFENDANT BROWNELL'S MOTION *IN LIMINE* TO PRECLUDE EXPERT
TESTIMONY ON ULTIMATE ISSUE OF STATUS OF PAYMENTS AS LOANS

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Defendant Brownell's Motion *In Limine* to Preclude Expert Testimony on Ultimate Issue of Status of Payments as Loans.

THE GOVERNMENT DOES NOT INTEND TO USE EXPERT
TESTIMONY AS ALLEGED BY DEFENDANT

From 1996 through 2004, Douglas Development Corporation (DDC), at defendant Brownell's direction, made payments of close to $300,000 directly to defendant Brownell's line of credit at Potomac Valley Bank in Maryland. These payments were in the form of checks signed by Douglas Jemal. The first $50,000 of these payments, occurring from approximately mid-1996 through mid-1998, may have constituted loan repayments from Douglas Jemal/DDC to Brownell, for the evidence demonstrates that, in 1996, Brownell made a payment to DDC in the amount of $50,000. However, the remaining $250,000 constituted little more than straight, unreported income to Brownell.

These payments were recorded in the books of DDC as "loan repayments," even though: 1) the payments vastly exceeded any conceivable loans made by Brownell to DDC, and 2) the payments were made directly to Potomac Valley Bank, with no indication they were for the

benefit of Brownell. On the books of DDC, these payments appeared to reflect nothing more than DDC's loan repayments for what could very well have been – but was not – some form of a real estate loan by Potomac Valley Bank to DDC.

The defendant claims these payments were in fact "loans" to Brownell, notwithstanding the fact they were not recorded as such. Notably, they were not recorded in the "loans receivable account," that is, the account where other "loans" from DDC to its employees were recorded. For example, the "loans" to Esherick and other DDC employees were recorded in the "loans receivable account," suggesting that as far as DDC was concerned, Esherick owed DDC the amounts of the loans.

The issue as to the nature of the payments to be a factual one. Brownell, in his pleading, has argued that these payments were in fact "loans to him from Douglas Development Corp. and, therefore, did not constitute taxable income." Defendant's motion at 2. The government will argue these payments were just disguised income.

The government does not intend to call a witness to testify as to the ultimate issue as to whether these were or were not loans. However, the government will introduce some or all of the following testimony, that it will argue is relevant to demonstrating the true nature of the payments:

- that the DDC payments to Potomac Valley Bank were not recorded in the general ledger as a loan to Brownell; to the contrary, they were recorded to appear to be the routine repayment of a loan by Potomac Valley Bank to DDC.

- that Brownell personally directed the checks to be written and personally directed how these payments would be recorded in the general ledger;

- that the monies that went into Brownell's Potomac Valley Bank line of credit were used by Brownell for personal purposes, primarily to include the immediate replenishment of his personal checking accounts, and that there was no logical basis to have the DDC payments made to Potomac Valley Bank instead of Brownell directly;

- that there were none or virtually no "loan repayments" until June 2005, subsequent to the February 2005 search of Brownell's house;[1]

- that Brownell evidenced other tax evasion conduct, namely, that he failed to file returns from 1994 through 2004;

- that Brownell also received income from DDC in the form of payments to third parties on his behalf, particularly payments for the renovation of a property that he personally owned;

- that in 1999, out of the proceeds of a refinancing settlement, Brownell directed the settlement attorney (at the direction of Jemal), to write a check to Brownell for $10,000, to Esherick for $10,000 and to Millstein for $50,000;.

- that Brownell submitted loan and credit applications in the mid-1990s in which he reported his income at amounts far greater than the income that was reported by DDC (in the W-2s it submitted for Brownell) to the IRS;

---

[1] The indictment alleges that the scheme went up to and including April 2005, that is, when Brownell's return for the prior year was due and owing. The government intends on introducing other cover-up evidence that occurred thereafter, namely, that in June 2005 Brownell "repaid" DDC the amount of the so-called loans and filed his overdue returns. The government is aware the defense is likely to argue these events reflected Brownell's good faith, just as the government shall argue that these events were, in effect, admissions by Brownell as to certain matters.

- that Brownell had previously worked for a tax preparation accounting firm;

- that in 2005, after the investigation commenced, Brownell's income was increased to approximately $275,000 per year;

- that Brownell used several checking accounts simultaneously so as to obscure the analysis of his personal finance.

The government will argue criminal intent relying substantially on the above facts. Though the Government will ask the revenue agent to testify as to the amounts due and owing by Brownell to the IRS if the jury were to find the amounts alleged to income were in fact income (and not loans), the government does not intend on using an expert to opine whether the payments at issue were in fact loans, or whether Brownell perceived them to be loans.

WHEREFORE, the government does not object to the Court granting the relief sought by the defendant.

                                       RESPECTFULLY SUBMITTED,

                                       JEFFREY A. TAYLOR
                                       UNITED STATES ATTORNEY

By:     _____
       MARK H. DUBESTER
       ASSISTANT UNITED STATES ATTORNEY
       DC Bar No. 339655
       555 Fourth Street, N.W., Room 5917
       Washington, D.C.  20530
       Ph. (202) 514-7986