## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
UNITED STATES                       )
                                    )
      v.                            )      Crim. No. 06-CR-0077 (RMU)
                                    )
JOHN E. BROWNELL,                   )
                                    )
          Defendant.                )
_____ )
```

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT BROWNELL'S MOTION TO SUPPRESS EVIDENCE
## OBTAINED BY ILLEGAL SEARCHES OF RESIDENCE AND OFFICE

Defendant John E. Brownell, through counsel, respectfully submits this reply to the government's opposition to Brownell's motion to suppress evidence obtained by searches of Brownell's home and the offices of Douglas Development Corporation ("DDC").

In its opposition, the government asserts that this Court need not give substantial consideration to the issues raised in Brownell's motion but, instead, should simply defer to the magistrate judges' decisions to issue the warrants. The law, however, requires more. A reviewing court faced with a challenge to a search must analyze the warrant and affidavit in order to determine whether a substantial basis for a finding of probable cause exists, and must further determine whether the warrant is overbroad or lacking in constitutionally-mandated particularity.

Brownell respectfully submits that such an analysis here reveals that the warrants in this case were invalid.

### A.    **Brownell Has Standing to Challenge the DDC Search.**

In its opposition, the government asserts that Brownell has no standing to challenge the search of the offices of his employer, DDC. (Government's Opposition, at 3-4 n.2.) The government claims that Brownell alleged no facts demonstrating that he had any privacy interest in DDC's premises.

However, as set forth in Brownell's initial memorandum, Brownell had a personal office at DDC and a computer on his desk assigned to his use. Brownell's office was searched as part of the search of DDC's premises, and his computer was seized or imaged. Moreover, privileged materials on Mr. Brownell's desk in his office were reviewed during the search, although left behind by the agents. (Memorandum at 13-14.) The government does not controvert any of these factual assertions. The facts will further show that Mr. Brownell maintained his files in his office and in the property files room at DDC, and that through his office computer he had access to DDC's computer system, whose servers were in a locked closet down the hall.

The law is clear that a defendant is entitled to object to a search of his private office in his employer's premises: "It has long been settled that one has standing to object to a search of his office, as well as of his home." *Mancusi v.*

*DeForte*, 392 U.S. 364, 369 (1968). *See also U.S. v. Hubbard*, 493 F. Supp. 209, 213(D.D.C. 1979)("The Court finds that there is a legitimate expectation of privacy with respect to one's own office").

*Mancusi* concerned the search of an office shared by the petitioner and other union officials. In holding that the petitioner had an expectation of privacy in the shared office, the Supreme Court explained that he certainly would have an expectation of privacy in a private office:

> [I]t seems clear that if [petitioner] had occupied a 'private' office in the union headquarters, and union records had been seized from a desk or a filing cabinet in that office, he would have had standing. . . . In such a 'private' office, [petitioner] would have been entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his union superiors.

392 U.S. at 369. Moreover,

> It is, of course, irrelevant that the Union or some of its officials might validly have consented to a search of the area where the records were kept, regardless of [petitioner's] wishes, for it is not claimed that any such consent was given, either expressly or by implication.

392 U.S. at 369–70. An employer's control over all of its premises, including the employee's private office, cannot be enough to invalidate the employee's right to challenge a search of his office – if it was, the cases finding a right of privacy in an office would be meaningless.

The government does not argue here that there was any consent by the owners of DDC to the search of Brownell's office. Thus, Mr. Brownell clearly has standing to challenge the search of his office. For the same reasons, he has standing to challenge the search of his computer and his files, as well as stored documents or files he could access through his computer. *See U.S. v. Costin*, 2006 WL 2522377, *6 (D.Conn. July 31, 2006)(defendant may have privacy interest in computer storage devices to which he has access).

The government's opposition states that it is not seeking an evidentiary hearing on Brownell's standing to challenge the DDC search except in the event that the Court were to rule differently than it did on the DDC suppression motion in *U.S. v. Jemal, et al.*, Crim. No. 05-359(RMU).[1] (Government's Opposition, at 3-4 n.2.) Brownell respectfully submits that the Court should reconsider its approach to these issues, and that a hearing will be required.

_____

[1] Brownell recognizes that this Court denied the motion to suppress the results of the DDC search in *U.S. v. Jemal, et al.*, Crim. No. 05-359(RMU), but respectfully notes that this does not preclude him from pursuing his motion in this case. Moreover, the arguments made by Brownell with regard to the warrants and, particularly, the allegations as to his tax evasion scheme are not identical to the arguments made by the Jemal defendants. Further, this Court has not previously addressed a motion to suppress evidence from the search of Brownell's residence.

**B.   There Was No Substantial Basis For
      <u>a Finding of Probable Cause as to Tax Evasion.</u>**

In reviewing a magistrate's decision to issue a warrant, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (citations omitted). But this does not mean that the reviewing court should do no more than rubber stamp the magistrate's conclusions. *See U.S. v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983). Application of a deferential standard of review does not require a court to abdicate its role in ensuring that constitutional protections are preserved. "[A] court is not relieved from making its own judgment as to whether the affidavits provide a 'substantial basis . . . to conclude that [the evidence was] probably present . . . .'" *Schoeneman v. U.S.*, 317 F.2d 173, 176 (D.C. Cir. 1963). The government's suggestion that the substantial basis standard precludes a meaningful analysis of the affidavits underlying the warrants should be rejected.

In its opposition, the government asserts that the affidavits establish probable cause that Brownell was involved in a tax evasion scheme through their allegations that certain payments were made by DDC to Brownell's credit account line at Potomac Valley Bank ("PVB"), that certain of the payments were

recorded in a "loan payable" account, that Brownell failed to file tax returns for a number of years, and that other DDC employees received payments, including loans, from DDC. (Opposition at 6-7.) However, the affidavits do not show that the payments to Brownell constituted taxable income. Indeed, the affidavits acknowledge that some of the payments were loans to Brownell, which are not taxable.

In the absence of any factual allegations that the payments at issue were taxable income, the assertion that Brownell was engaged in a scheme to evade taxes on those payments is purely conclusory. A finding of probable cause cannot be based on conclusory allegations. *See Henry v. U.S.,* 361 U.S. 98, 101 (1959); *Illinois v. Gates*, 462 U.S. at 238. Affidavits that rely on conclusory allegations cannot, therefore, provide a substantial basis for a magistrate's decision to issue a warrant. In the absence of such a substantial basis, the warrants are invalid, and all of the material seized pursuant to them should be suppressed.[2]

---

[2]    With regard to probable cause as to the matters in the affidavit in support of the DDC warrant other than the alleged tax evasion scheme, Brownell respectfully seeks to incorporate the arguments made in the Jemal defendants' memorandum in support of their motion to suppress the results of the DDC search and in their reply memorandum. Brownell further incorporates the arguments made by the Jemal defendants with regard to overbreadth and lack of particularity of the warrant.

C.  **The Command Sections of the Warrants Were Overbroad.**

As the government acknowledges, the permissible scope of a warrant is "limited by the probable cause on which the warrant is based." *In re Grand Jury Subpoenas dated December 10, 1987,* 926 F.2d 847, 856-57 (9th Cir. 1991). *See also U.S. v. Maali*, 346 F. Supp.2d 1226, 1239 (M.D. Fla. 2004). In its opposition, the government describes the affidavits, with respect to Brownell, as supporting a finding of probable cause that Brownell had engaged in a tax evasion scheme relating to DDC checks made payable to PVB for Brownell's personal line of credit. (Opposition, at 6-7.)

Even assuming that this were true, which Brownell disputes, the command provisions in the warrants at issue here authorize searches that go far beyond the probable cause identified by the government. The DDC warrant and, particularly, the warrant for Brownell's residence permitted the government to conduct a fishing expedition through all of Mr. Brownell's financial records. There was no limit on the agents' ability to seize records related in any way to Brownell's income, spending or assets – and it is likely that virtually any records a person possesses can be connected to his spending or possessions.

The government insists that such a wholesale search was necessary so that it could investigate, among other things, Mr. Brownell's spending habits and patterns, other potential sources

of income, sources of cash, and whether he had a "cash horde." But there are no facts suggesting that Brownell had any sources of income other than DDC. Moreover, the government offers no explanation as to how any of these issues are tied to payments by DDC to PVB for Brownell's benefit – the *only* tax evasion scheme that the affidavits address. In fact, there is no link. The warrants' command provisions improperly exceeded any probable cause arguably established by the affidavits.

This problem is compounded by the provisions in the warrants allowing the seizure of entire folders or files if they contained one responsive document, and the seizure of all computer hardware, software and documentation, which the government's opposition does not address. These provisions plainly allow seizure of materials beyond the scope of any probable cause established by the affidavits.

D.   **The Warrants Were Not Sufficiently Particular.**

In its effort to demonstrate that the warrants at issue here met the constitutional requirement of particularity, the government essentially argues that since it was entitled to seize all documents related to Mr. Brownell's financial affairs, the warrant language allowing the seizure of all of Mr. Brownell's financial documents was sufficiently particular. But for the reasons set forth above and in Brownell's opening memorandum, the command to seize all of Mr. Brownell's financial

records impermissibly exceeds any probable cause established in the affidavits in support of the warrants. Therefore, the government's justification cannot hold.

The government further attempts to establish that the language of the warrants defined the items to be seized with sufficient particularity by citing to cases in which courts have permitted the review of broad collections of documents. But those cases involve complex fraud schemes spanning many years, multiple entities or intricate transactions. *See, e.g., Andresen v. Maryland*, 427 U.S. 463, 480 n.10 (1976). The tax evasion scheme purportedly set forth in the affidavits here is in no way comparable to the schemes at issue in those cases. The payments in question all came from or through DDC, and in large measure had already been identified by the government before the searches took place. It would have been a relatively simple matter for the warrants to have given the agents specific direction for the searches by specifying categories of documents related to those payments and similar issues. Instead, the general nature of the language gave the agents discretion and latitude as to what documents were to be seized.[3] Moreover, the language of the warrants was not limited by reference to any

---

[3]    Indeed, the language of the warrants did not, as the government contends, effectively direct the agents to seize only documents related to income and expense items – as is evident from the fact that the agents seized, among other things, invitations to parties held by Mr. Brownell at his home.

specific criminal offenses or statutes, nor were the affidavits incorporated into the warrants by reference.

As the Supreme Court has stated, "a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). The searches in this case should, accordingly, be declared invalid. *See U.S. v. Cardwell*, 680 F.2d 75, 78-79 (9th Cir. 1982).

E.    **The Good Faith Exception Does Not Apply Here.**

The government asserts that the good faith exception set forth in *U.S. v. Leon*, 468 U.S. 897 (1984), which provides that defects in a warrant do not invalidate a search that is executed in "objectively reasonable reliance" on the warrant, saves the searches here. In attempting to demonstrate that the good faith exception applies, the government essentially argues that a court must find that a search has been conducted in reasonable reliance on a warrant whenever the supporting affidavit contains factual details. *See* Opposition at 20. But the government's approach is too simplistic.

Under *Leon*, the good faith exception does not apply, *inter alia*, where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 468 U.S. at 923. Factual details cannot be indicia of probable cause unless they show the

reasonable possibility that an offense has been committed. Although the affidavits in this case do contain factual detail regarding certain payments to Mr. Brownell, their assertions that these payments were unreported taxable income that were part of a scheme of tax evasion are (as demonstrated above and in Brownell's Memorandum, at 8-10) simply conclusory. Such allegations are not sufficient to establish probable cause, *see Henry v. U.S.,* 361 U.S. at 101, and, therefore, cannot be the basis for a finding of reasonable reliance sufficient to invoke the good faith exception.

Further, the overbreadth and lack of particularity of the warrants also take them outside of the *Leon* good faith exception. *Leon*, 468 U.S. at 923 ("where a warrant is so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid"). For the reasons demonstrated above, no officer could reasonably believe that the allegations in the affidavits concerning the DDC/PVB scheme supported a search of all of Brownell's records relating in any way to his finances, income, spending or assets, or, given the nature of those allegations, that the description of the items to be seized was sufficiently specific to satisfy the Fourth Amendment.

## Conclusion

Accordingly, for the reasons set forth above and in his initial memorandum,[4] Brownell respectfully submits that the evidence obtained pursuant to the searches of his residence and the offices of DDC should be suppressed.

Respectfully submitted,

JOHN E. BROWNELL

By Counsel:

__/s/ Barry Coburn_____
Barry Coburn (D.C. Bar #358020)
Gloria B. Solomon (D.C. Bar #358880)
Jeffrey C. Coffman (D.C. Bar #493826)
TROUT CACHERIS, PLLC
1350 Connecticut Avenue, N.W.
Suite 300
Washington, D.C. 20036
Phone: (202)464-3300
Fax: (202) 464-3319

---

[4] Brownell relies on his initial Memorandum with respect to any issues not addressed in this reply.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December, 2006, I served a copy of the foregoing Reply Memorandum by ECF.


___/s/ Barry Coburn_____