**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 06-077 (RMU)** |
| | : | |
| **JOHN E. BROWNELL** | : | |

**GOVERNMENT'S MOTION TO ADMIT CERTAIN EVIDENCE**

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully moves that the Court rule in advance of trial that the below described evidence is admissible. In support of this request, the government respectfully submits:

## I. INTRODUCTION

The defendant, John E. Brownell, failed to file tax returns for calendar years 1994 through 2003. This is clearly alleged in the Indictment.

In April 2005, after the searches were executed and when he knew he was under investigation, Brownell filed returns for 1999 through 2004, that is, the years within the six year criminal statute of limitations. The returns from 1994 through 1998 were never filed.

From about 1993 through 1999, Brownell's income as reported to the IRS was in the $45,000 to $55,000 range. During the entire period, Brownell received funds from Douglas Development Corporation (DDC), his employer, in addition to his salary that was run through the payroll processing service.

In particular, the Indictment charges that DDC made payments that constituted income to Brownell in the form of payments on Brownell's personal line of credit account at Potomac Valley Bank. From 1996 through 2004, DDC made payments of close to $300,000 to Brownell's personal Potomac Valley Bank account. Nearly the entirety of these monies were used for

Brownell's personal purposes.[1] In some instances, Brownell would direct the payment by D.C of, say $5000 to his line of credit, and, within just a day or two, write a check for nearly the same amount, say $4500, drawn on the line of credit, which he would deposit into his personal account. This went on month after month, year upon year, for close to 8 years. The Potomac Valley Bank line of credit was secured by Brownell's residence at 6151 Tuckerman Lane, Rockville, Maryland.

During the period from 1994 through 2004, Brownell, on numerous occasions, made representations about his income, his means of compensation, and his tax status. He did so in connection with his mortgage loan application for his purchase of 6151 Tuckerman in 1995, his application for the line of credit from Potomac Valley Bank that was secured by the 6151 Tuckerman property in May 1996, in various bank credit card and bank overdraft applications, and in connection with his purchase in 2000 of 6155 Tuckerman Lane, a property he purchased as a rental property that was adjacent to 6151 Tuckerman. These documents are inherently and extremely relevant in this tax case, as they would be in nearly any tax case. In these documents, Brownell admits that his income was substantially in excess of that reported to the IRS, states that he receives bonuses, represents that DDC paid his line of credit, and fails to report that he had outstanding loan obligations to DDC.

---

[1] There may be some dispute as to whether some portion of this money constituted a "loan repayment" by DDC to Brownell for a loan made by Brownell to DDC/Jemal. However, the amount of the payments from this line of credit to Brownell far exceeded any possible "loan repayment" obligation from DDC/Jemal to Brownell. For the most part, this has been conceded by the defendant, who, it appears, now claims that the entirety of these payments were in fact loans to him.

## II. "PRE-INVESTIGATION" DOCUMENTS THE GOVERNMENT SEEKS TO INTRODUCE

Accordingly, the Government thus seeks to introduce the following documents that were created prior to the commencement of the criminal investigation:

| Govt. Exhibit Number | Description | Relevant Contents |
|---|---|---|
| NOT YET MARKED[2] | Brownell Memo to Jemal | References Brownell's attempts to pay himself a bonus that is "untraceable" for tax purposes. |
| 56 | October 1995 Loan Application to purchase 6151 Tuckerman | Numerous representations that Brownell's income was excess of $120,000 plus bonus; includes copies of "bonus" checks amounting to approximately $34,000 (net) and 1993 and 1994 W-2s. |
| 102 | October 1995 Closing Documents for 6151 Tuckerman Lane Purchase | Representations that Brownell's income was in excess of $120,000. |
| 30B | January 1996 Credit Card Application | Reported income of $120,000 per year. |
| 50F | May 1996 Potomac Valley Bank Line of Credit Application secured by 6151 Tuckerman Lane | Includes copy of 1994 tax return reporting income of over $130,000. |
| 14 | 1996 W-2 – Scanned image found among Brownell's electronically stored documents | This document which appears to have been "saved" in January 1998, reported Brownell's 1996 income as in excess of $130,000 |
| 57 | 1998 Suntrust/Crestar Overdraft Credit application | Income reported as $120,000 plus $1075 per month rental income |
| 52 | October 2000 loan application for 6155 Tuckerman | Represents that the Potomac Valley Bank line of credit was "paid by business (Douglas Development Corp.)" and that Brownell received salary "plus bonus"; |

[2] In December, the Government commenced a final review of the seized computer evidence and located this document. It was produced to defense counsel the next day. The other documents discussed in this pleading were produced to the defense last March. This document is attached to this pleading.

| Govt. Exhibit Number | Description | Relevant Contents |
|---|---|---|
| 55 | October 2000 Adams Bank Credit Application | Represents: "Potomac Valley bank debt is paid by Douglas Development." |
| GX 44 and 45 | October 2000 Correspondence to Potomac Valley Bank | Represents: "I am having a little trouble digging up my 1998 and 1999 returns." |
| GX 121 | October 2000 Letter from Douglas Jemal to Potomac Valley Bank, found in Brownell's house | Represents that Brownell will receive a year end bonus. |
| 115 | Signed Personal Financial Statement, found in Brownell's house, dated February 2002 | Reports no liabilities, i.e., reports no outstanding loans to DDC and that he last filed tax returns for 1999. |
| 54 | March 2002 Eagle Bank credit application | Reports income "plus bonus." |

## III. ACTS SUBSEQUENT TO THE TAX INVESTIGATION

In late 2004, Brownell became aware that he was under a tax investigation, and, in February 2005, search warrants were executed at his house and the DDC offices. Thereafter, in April 2005, Brownell filed returns for 1999, 2000, 2001, 2002, 2003 and 2004. Each return reported some additional income – though less than the amounts he actually received.

In June 2005, Brownell and DDC engaged in the following transaction: DDC issued a one time salary payment to Brownell for over $420,000 (gross). From this amount, about $147,000 was withheld for federal taxes, and $34,500 for state taxes, and the net amount of the salary payment checks that was issued was about $232,000. Brownell then wrote DDC a check for this same amount – $232,000. Brownell's check to DDC was recorded in the DDC books as a loan repayment.

This transaction constitutes an admission by Brownell that, as of June 2005, he had

received over $230,000 in what he claims to be loans. (The government understands that the defense in this case is that all or nearly all the funds Brownell received from DDC in excess of his income from 1998 through 2004 were loans.)

IV. THE EVIDENCE IS RELEVANT AND NOT PREJUDICIAL

The above evidence constitutes admissions by Brownell: 1) that his salary was substantially in excess of the approximate $50,000 range that was reported to the IRS from 1994 through 19992; 2) that he received "bonuses" in addition to his base salary (these bonuses were not reflected in his W-2s); 3) that he was well-aware of his obligation to prepare and file tax returns; 4) that DDC paid his line of credit, and, 5) that he had no outstanding loan obligations to DDC. It also constitutes an admission as to the true value of his services to Jemal and the amount that he had received over the years that was not treated as compensation. These points are directly related to the charges in this case and constitute admissions by Brownell.[3] Moreover, by providing on occasion unfiled returns and W-2s to financial institutions, Brownell covered up and concealed the fact that he had not in fact filed returns with the IRS.

First, in this case, as in countless tax case, issues associated with Brownell's compensation in 1995 through 1998 are part and parcel of the charged conduct.[4] The Indictment makes clear that Brownell did not file timely returns from 1994 through 2003 and in particular, discusses the fact that Brownell obtained the Potomac Valley Bank line of credit in 1996. Second, in this case, a central aspect of the tax evasion scheme was Brownell's use of the line of

---

[3] Though certainly the defense will argue different inferences, the government is entitled to use such evidence to support its arguments.

[4] Thus, for example, this Court in the Jemal case permitted the government to introduce certain tax conduct by Esherick prior to the years of prosecution.

credit secured by his 6151 Tuckerman residence, and he obtained the line of credit by the purchase of that property in 1995 and obtaining the line of credit in 1996. Third, the 1993-1996 years precede the charged years of evasion – the statute of limitations has expired – the conduct at issue is part of the same stream of conduct for which Brownell is charged in substantive counts.

There are simply no issues of jury confusion or prejudice (as the law understands that term). This is not a case, for example, where the government is seeking to introduce evidence that the defendant – prior to or during the charged years of evasion – ran a prostitution or drug business on which he failed to pay taxes. Compare, United States v. Abodeely, 801 F.2d 1020, 1025 (8th Cir. 1986) (evidence of defendant's involvement in prostitution business admitted to show source of unreported income). The evidence at issue consists simply of statements and documents by Brownell related to the amounts and means of compensation, his assets and liabilities. The evidence will be submitted by documents only, and will take a minimum amount of trial time.[5] That some of the documents at issue were submitted to financial institutions and consists of unfiled returns does not change the analysis. See e.g., United States v. Moses, 148 F.3d 277, 283 (3rd Cir. 1998) (evidence that the defendant prepared tax forms which he submitted to a lending institution, but "did not cause the forms to be submitted to the IRS until after he was

---

[5] The defense counsel appears to contend that such evidence is "404(b) evidence." The government disagrees with this contention. These are statements made by the defendant that are tightly related to the charges in this case. (By analogy, the Court in the Jemal case permitted into evidence statements made by Esherick as to his income without using the "other crimes" analysis, and permitted certain pre-charged conduct as relevant as intrinsic to the charged scheme.)

indicted" was admissible to show that the defendant "was aware of his obligation to file tax forms."). Under a very straight-forward Rule 402 analysis, the proposed evidence is admissible.

Moreover, we urge the Court to rule all the proposed evidence admissible. Any single document, application, or representation can be minimized, trivialized, or explained away as a result of confusion or innocent error. It is the collection of documents that powerfully demonstrates Brownell's persistent intent to evade of taxes. The fact that some of the most significant of these occurred in 1993, 1995 and 1996 does not detract from their collective, appropriate, legitimate force as tending to prove the charged subsequent conduct. Once Brownell obtained the line of credit in May 1996, it just so happened that there were fewer instances where Brownell was called upon to make representations as to his income. But this happenstance does not detract from the legitimate evidentiary power of the earlier representations. In this case, as in many, evidence as to intent is found in conduct that occurred prior to the actual charged offenses.

## V. THE LAW OVERWHELMINGLY SUPPORTS THE ADMISSION OF THIS EVIDENCE

### A. Rule 404(b) Does not Apply

Particularly in the tax context, courts are nearly uniform in permitting the admission of evidence of a defendants taxpayer's conduct in one tax year as relevant to explaining his conduct, motive and intent in the subsequent years, and such evidence is uniformly admitted without being considered under Rule 404(b). See, e.g., United States v. Ebner, 782 F.2d 1120, 1126 n. 7 (2d Cir.1986) ("The jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years."); United States v. Farber, 630 F.2d 569,

572 (8th Cir., 1980) ("[S]ubsequent tax paying conduct is relevant to the issue of intent or wilfulness in a prior year." [citations omitted].), cert. denied, 447 U.S. 1127 (1981); United States v. Magnus, 365 F.2d 1007, 1011 (2d Cir.1966) ("[P]rior taxpaying history, both federal and state, was probative of [taxpayer's wilfulness in failing to pay substantial amounts of federal taxes in [the years at issue.]"), cert. denied, 386 U.S. 909 (1967). At least one District Court has squarely rejected 404(b) analysis in deciding whether to admit tax misdeeds of years other than those charged in the Indictment:

> "Because he was not charged with tax evasion for 1988, Ristovski argues that the trial court erred in declining, as it did, to exclude evidence of the amount of money Precision received from Mason in 1988 in the form of checks payable to cash. Because the 1988 receipts were part of the same tax evasion scheme as that charged, however, the evidence was admissible as "intrinsic" to the charged conduct. The evidentiary rule on which Ristovski's relies – Rule 404(b), Fed.R.Evid. – need not be applied here."

United States v. Ristovski 2000 WL 491513 (6th Cir., April 18, 2000) at *6.

These cases are consistent with standard interpretations of Rule 404(b): "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." United States v. Barnes, 49 F.3d 1144, 1149 (6th Cir. 1995). The evidence at issue reflects the roots of the conspiracy, and the roots of the course of conduct, immediately prior to and subsequent to the dates charged in the Indictment, and is considered "intrinsic" and not subject to Rule 404(b) analysis.[6] United States v. Badru, 97 F.3d 1471, 1474-75 (D.C. Cir.

---

[6] Where evidence of the defendants' acts are either inextricably intertwined with a charged conspiracy, or is evidence of the conspiracy itself, it is admissible without Rule 404(b) analysis, regardless of whether those acts fall outside the period during which the indictment alleges the conspiracy existed. United States v. Diaz 878 F.2d at 614-616 & n.2 (crimes, wrongs or acts occurring before alleged inception date of conspiracy were relevant and admissible in drug conspiracy prosecution and did not raise Rule 404(b) question); United States v. Bates, 600

1996), cert denied, 520 U.S. 1213 (1997); United States v. Allen, 960 F.2d 1055, 1058 (D.C. Cir.), cert denied, 506 U.S. 881 (1992); United States v. Diaz, 878 F.2d 608, 614-16 & n.2 & 3 (2d Cir.), cert denied, 493 U.S. 993 (1989).

To the same end, the fact that Brownell and Jemal changed their means of compensating Brownell in 2005 after having been put on notice in late 2004 of the existence of a tax investigation – raising Brownell's reported salary from about $120,000 to $300,000 – evidences the true intended compensation by Douglas Jemal of Brownell during the preceding years. These facts are analogous to those in United States v. Bok, 156 F.3d 157, 166 (2d Cir. 1998) where defendant Bok failed to file until he was pressed to do so by the taxing authorities: "As a simple matter of logic, Bok's failure to file state or federal returns for either himself or his corporations until told to do so by the IRS is indicative of an intent to evade the tax system. This is particularly true in light of Bok's legal education, which included coursework in both corporate and personal taxation."[7]

B. The Evidence is Admissible Even if Considered Under Rule 404(b)

Even if the tax behavior of Brownell in the years prior to and subsequent to the charged years are considered "other crimes" subject to Rule 404(b) analysis, for the reasons set forth above, there are a host of legitimate purposes associated with such evidence, and as such, the

---

F.2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators, including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior); United States v. Bermudez, 526 F.2d 89, 95 (2d Cir.), cert denied, 425 U.S. 970 (1975) (upholding admission of traces of narcotics and narcotics-related equipment seized in home six weeks after conspiracy to distribute cocaine ended).

[7] Defendant Brownell, like Bok, is a skilled accountant.

evidence is plainly admissible.

We first note that the government did more than provide "notice" of this evidence: it provided the **actual** evidence, and it did so **nearly a year ago**.[8] The documents at issue were provided to current defense counsel with government exhibit numbers affixed at that time.

Second, "Federal Rule of Evidence 404(b), which governs the admission of evidence of other crimes or bad acts, 'is a rule of inclusion rather than exclusion.' *** The rule bars admission of such evidence when offered for the purpose of proving that a defendant acted in conformity with his character, but allows admission so long as the evidence is offered for any other relevant purpose. " United States v. Lawson, 410 F.3d 735, 741 (D.C. Cir. 2005) (quoting United States v. Bowie, 232 F.3d 923, 929 (D.C.Cir.2000)). Moreover, "[U]nder Rule 404(b), any purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove bad character." United States v. Miller, 895 F.2d 1431, 1436 (D.C.Cir.1990).

In this case, even if such evidence were to be considered under Rule 404(b), courts have uniformly determined such evidence is admissible as relevant to proof of intent, plan, scheme and absence of mistake or accident. See United States v. Ausmus, 774 F.2d 722, 727-28 (6th Cir. 1985) ("The defendant's failure to pay taxes, both prior to and following the years in question, demonstrates a pattern, plan, and scheme indicating that his failure to pay his taxes in 1978, 1979, and 1980 was not the result of an accident, negligence, or inadvertence. The pattern demonstrates willfulness, which was part of the government's prima facie case."). See also,

[8] As part of the discovery in the Jemal case, the government produced nearly the entire Brownell discovery, including copies to Brownell's current defense counsel. The government recalls this being March 2006 at the latest.

United States v. Dixon, 698 F.2d 445, 447 (11th Cir. 1983) ("Finally, we note that other courts have consistently admitted evidence of tax evasion in pre- and post-indictment years on the issue of the willfulness of the evasion charged in the indictment." [citations omitted].)[9]

That the documents were submitted to financial institutions is of no consequence. Typically in the "other crimes" context, the government seeks to prove the actual commission of another crime to establish some predicate fact or prove the defendant's intent from the very commission of the other crime. Here, in contrast, the government will not be attempting to prove Brownell defrauded any financial institutions by submitting the documents the government intends to introduce in this tax evasion trial. Thus, for example, the government will not call bank representatives or introduce other evidence to establish the materiality of the representations or that the institution was defrauded. Rather, and simply put, it is the contents of the documents,

---

[9] In United States v. Ringwalt, 213 F.Supp.2d 499, 506 (E.D. Pa. 2002), in upholding the admissibility of such evidence under Rule 404(b), the District Court Judge summarized the law as follows:

> Defendant's pursuit of the identical tax evasion scheme during 1992 and 1993 is additional evidence of willfulness for the charged years of 1994 and 1995. "[A] defendant's past taxpaying record is admissible to prove willfulness circumstantially." United States v. Bok, 156 F.3d 157, 165 (2d Cir.1998) (holding that defendant's failure to file returns for years before and after those in the indictment admissible to show intent to evade tax system). See also United States v. Johnson, 893 F.2d 451, 453 (1st Cir.1990) ("The evidence that [defendant] submitted W-4 form in 1987 claiming more allowances than he was entitled to and did not file an income tax return for 1987, was relevant to show [defendant's] willfulness and absence of mistake in filing the Schedule C forms containing false information during the years 1982-86."); United States v. Ebner, 782 F.2d 1120, 1126 n. 7 (2d Cir.1986) ("The jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years."); United States v. Adcock, 558 F.2d 397, 402 (8th Cir.1977) ("It is ... well settled that in a tax case the government may show proof of unreported income in prior years indicating a pattern of understatement of income which is relevant to the issue of willful intent.").

not their use to obtain loans or credit, that have direct bearing on proof of Brownell's knowledge and intent to commit tax evasion.

Thus, in light of the admissible purposes of the evidence, the evidence must be admitted. There can be no contention that the sole purpose would be to show that the defendant had a "bad character" and acted in conformity with that character. Indeed, as noted, the conduct at issue – submission of documents – is hardly the sort of conduct which would naturally arouse the passions of the jury or cause them to harbor improper prejudice against the defendant.[10]

WHEREFORE, we request the above-described evidence be admitted.

RESPECTFULLY SUBMITTED,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: ____________________________

MARK H. DUBESTER
ASSISTANT UNITED STATES ATTORNEY
DC Bar No. 339655
555 Fourth Street, N.W., Room 5917
Washington, D.C. 20530
Ph. (202) 514-7986

---

[10] The evidence admission can easily be admitted with an accompanying jury instruction along the following lines:

> This Court has admitted evidence in the form of certain documents that contain representations related to Mr. Brownell's income, compensation, and certain financial circumstances. These documents are admitted solely as they relate to proof of Mr. Brownell's knowledge and intent in connection with the tax charges in this case.