**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
                                  )
UNITED STATES                     )
                                  )
      v.                          )     Crim. No. 06-CR-0077 (RMU)
                                  )
JOHN E. BROWNELL,                 )
                                  )
           Defendant.             )
_____ )


**DEFENDANT BROWNELL'S OPPOSITION TO**
**GOVERNMENT'S MOTION TO ADMIT CERTAIN EVIDENCE**

Defendant John E. Brownell, through counsel, respectfully opposes the Government's Motion to Admit Certain Evidence.

**SUMMARY OF ARGUMENT**

We respectfully submit that the evidence proffered by the government, with certain exceptions delineated below, should be excluded on the following grounds:

- Although Brownell made a written request in August 2006 that the government provide notice of all evidence of uncharged misconduct that the government might seek to introduce, the government failed to timely comply with its Rule 404(b) obligation to provide such notice. Under Rule 404(b), this alone mandates exclusion of the evidence.

- While the government suggests that it is making nothing more than a garden-variety proffer of evidence typically admitted in criminal tax prosecutions, precisely the opposite is the case. Typical "other bad acts" evidence in tax prosecutions consists of, for example, prior convictions for tax evasion. Here, in stark contrast, the government seeks to tar Mr. Brownell with alleged criminal conduct that is grossly different in kind, and temporally remote from, the conduct in the indictment. Nor is this anything like any of the evidence the Court admitted in the

Jemal trial. Instead, this is precisely the kind of "bad character" or "bad propensity" evidence that Rule 404(b) is formulated to guard against. ***The government provides no case support for admission of such evidence in a criminal tax prosecution.*** The cases, in fact, mandate its exclusion.

- The evidence at issue is far too dissimilar to the acts charged in the indictment, and far too remote in time, to be relevant for any permissible purpose under Rule 404(b) or Rule 403. With regard to the 1993 Memorandum, these problems are compounded by its ambiguity and lack of evidence that it was ever given to anyone. Indeed, the government's description of this memorandum in its motion attempts to give it a meaning beyond its actual terms.

- To support its motion, the government relies largely on cases holding that evidence of tax evasion in prior years is admissible to show tax evasion in the charged years. But that is not the issue here. The evidence that the government seeks to introduce relates primarily to statements to financial institutions well prior to the time period implicated in the indictment, not prior instances of tax evasion.

- As the case law makes clear, evidence may not be admitted under Rule 404(b) if it is excludable under Fed. R. Ev. 403. Even if the evidence at issue here were admissible under Rule 404(b), which Brownell strongly disputes, it is far more prejudicial than probative and should be excluded under Rule 403 in any event. Admission of this evidence would substantially lengthen and complicate the trial, and contribute substantially to the risk of jury confusion, by requiring us to defend against a number of allegedly improper or criminal acts different in kind from and outside the time period of the conduct at issue in the indictment.

If limited to the facts alleged in the indictment and otherwise legitimately admissible evidence, the government will not be able to meet its burden of proving that the payments at issue were not loans to Brownell by DDC or otherwise illicitly disguised income. The evidence will show that these payments

were made overtly and without attempt at concealment, and that they were consistently recorded and accounted for as loans (or other non-income payments). But there is a critical danger that the evidence that the government seeks to introduce through this motion would improperly focus the jury's attention on other acts of alleged misconduct by Brownell that are not relevant to the elements of the crimes charged. The fundamental policies underlying Rule 404(b) - the presumption of innocence and the concomitant need to insure that "a defendant . . . be tried for what he did, not for who he is," *see United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980)(citations omitted) - require denial of the government's motion.

## INTRODUCTION AND FACTUAL BACKGROUND

Brownell is charged with tax evasion for tax years 1999 through 2003, and with conspiracy to commit tax evasion. The government bases its tax evasion claims on certain payments made to or on behalf of Brownell by Douglas Development Corporation ("DDC") that Brownell did not report as taxable income. The primary focus of the indictment is on payments made by DDC to Brownell's line of credit account at Potomac Valley Bank ("PVB"). As the government acknowledges, Brownell's position is and has always been that most of the payments at issue were loans to him from DDC and, therefore, did not constitute taxable income.

In its motion, the government seeks the admission of the following evidence: (1) a 1993 memorandum purportedly from Brownell relating to the tax implications of a bonus payment (the "1993 Memorandum"); (2) certain loan and credit applications from the years 1995 through 2002 and documents, containing statements about Brownell's income and debts, including statements that his PVB line of credit was paid by DDC; and (3) tax filings made by Brownell in 2005, as well as his salary and loan repayment to DDC in that year.[1] The government contends that all of this evidence is admissible without regard to Rule 404(b) of the Federal Rules of Evidence, and further that the evidence is admissible even if Rule 404(b) were to apply.

We do not object to admission of the following evidence:

(a) the 2005 tax filings and the associated loan
     repayments at that time; and

---

[1]     For some unknown reason, the government appends only the 1993 memorandum to its submission, and relies only on generalized descriptions of the other evidence it proffers. We are in the process of pulling copies of the documents referenced in the government's motion, and will submit them to the Court shortly after the filing of the instant expedited response to the government's motion. In some cases it is not easy to determine precisely what documents the government is citing, because a number of the government's exhibits are each hundreds of pages long, but we will do our best to divine what is being referenced and provide it to the Court.

(b)  alleged statements by Mr. Brownell about his income during the time period covered by the indictment (1998 through 2003); and

(c)  evidence showing that Mr. Brownell did not file his tax returns from 1994 onward.

However, we strenuously object to the government's request for admission of all of the other evidence proffered, including:

(a)  the alleged statements by Mr. Brownell, proffered by the government in its motion, about his income prior to 1998, *i.e.*, **prior to the date the PVB credit line switched from its initial status as a $50,000 loan from Brownell to the company, and became a loan from the company to Brownell.** Such alleged misstatements are completely irrelevant to prove motive, intent or any other Rule 404(b) exception and serve only to tar Mr. Brownell as a person with a negative propensity; and

(b)  the 1993 memorandum (authored five years prior to 1998), which evidently was "discovered" by the government in December 2006 on Mr. Brownell's hard drive. There is no evidence this memorandum was ever given to Mr. Jemal or anyone else, or that DDC did anything to implement its suggestions.

**ARGUMENT**

**A.    The Government Failed to Give Timely Notice of its
       Other Acts Evidence as Required by Rule 404(b).**

Rule 404(b) governs the admissibility of "other crimes, wrongs, or acts":

> Evidence of other crimes, wrongs, or acts is not
> admissible to prove the character of a person in order
> to show action in conformity therewith. It may,
> however, be admissible for other purposes, such as
> proof of motive, opportunity, intent, preparation,
> plan, knowledge, identity or absence of mistake or
> accident . . . .

Fed.R.Ev. Rule 404(b).

The rule expressly incorporates a notice requirement:

> *upon request by the accused, the prosecution in a
> criminal case shall provide reasonable notice in
> advance of trial*, or during trial if the court excuses
> pretrial notice on good cause shown, *of the general
> nature of any such evidence it intends to introduce at
> trial.*

Fed.R.Ev. 404(b)(emphasis added).

The notice requirement in Rule 404(b) is not a trivial matter. Its purpose is to allow Rule 404(b) issues to receive a thorough and fair hearing before trial and to allow the defense to adequately prepare to meet it. *See* Rule 404(b), Advisory Committee note (1991 amendment) (the notice requirement "is intended to reduce surprise and promote early resolution on the issue of admissibility"). "The notice requirement is now firmly embedded in Rule 404(b), and courts should rebuff efforts to

nullify the Rule's aim of enhancing fairness in criminal trials." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Failure to comply with the notice requirement is grounds for exclusion of the government's 404(b) evidence. *See United States v. Vega*, 188 F.3d 1150, 1154-55 (9th Cir. 1999) (reversing conviction and ordering new trial because trial court erred in admitting Rule 404(b) evidence when adequate pretrial notice had not been given); *United States v. Spinner*, 152 F.3d 950, 961 (D.C. Cir. 1998)(finding that trial court erred in permitting government to use 404(b) evidence without reasonable notice).

By letter dated August 8, 2006, Brownell specifically requested notice of any uncharged misconduct evidence the government intended to use. *See* Exhibit 1 hereto, at page 2, ¶ 8. The prosecution provided no response to this letter. The November 6, 2006 due date for pretrial motions came and went without any Rule 404(b) notice from the government. Brownell reasonably understood the government's lack of notice to mean that it did not intend to introduce any Rule 404(b) evidence in this case, particularly in light of the extensive Rule 404(b) notice filed months before trial by the government in the case recently tried before this Court, *United States v. Jemal et al. See* copy attached as Exhibit 2. Brownell relied upon this proposition in deciding not to file a motion in limine to exclude 404(b) evidence, and in his trial preparation.

On December 4, 2006, however, the government filed its response to defendant's motion to exclude expert testimony on the ultimate issue of loans. In its response, the government stated that it would not provide expert testimony on this issue and conceded Brownell's right to the relief sought. The response went on to provide a gratuitous, generalized list of the evidence the government intended to introduce at trial. *See* Exhibit 3 hereto. As Brownell pointed out in his reply, this unnecessary listing of evidence plainly was an attempt by the government to rectify its failure to provide 404(b) notice. The response contained some of the items raised in the government's pending motion, including evidence "that Brownell submitted loan and credit applications in the mid-1990's in which he reported his income at amounts far greater than the income that was reported by DDC (in the W-2's it submitted for Brownell) to the IRS." Ex. 2 at 2. Brownell immediately objected in his reply memorandum to the method and timing of this disclosure. The motion now pending includes additional evidence not raised even in the government's December filing. Brownell respectfully submits that neither of these filings – made more than six months after Brownell's request and well after the motions deadline in this case – satisfied the government's obligation to provide reasonable notice under Rule 404(b).

The government contends that it provided appropriate notice by giving all of the documents at issue to defense counsel in early 2006. *See* Government's Motion, at 10. This argument is unavailing. The fact that documents relating to the evidence in question were provided in wholesale fashion to defense counsel in discovery, along with thousands of pages of bank records and other materials, is not a substitute for the notice required by Rule 404(b). *See Spinner*, 152 F.3d at 961 (D.C. Cir. 1998)("providing such evidence to the defense in discovery is not enough to satisfy the notice requirements of Rule 404(b), which requires the government specifically to disclose 'the general nature of any such evidence it intends to introduce at trial.'").

Moreover, the government's contention that it provided these documents in discovery is factually inapplicable to the 1993 Memorandum. As the government admits, this document was not provided to defense counsel until December 2006. *See* Government's Motion, at 3 n.2 (the exact date was December 22, 2006). Although the government seeks to justify this delay by asserting that it did not "locate" the document until that time, *id.*, in fact the 1993 Memorandum has been in the government's possession since computer records were seized from DDC in February 2005. There is no reason that notice of this document – which the government apparently feels is so significant that it

has attached it to its motion papers – could not have been discovered and produced long ago.

Finally, as will be demonstrated below, any claim by the government that its notice obligation is excused because the evidence does not fall within 404(b) – *i.e.*, is "intrinsic" to the offenses charged - is misplaced. Accordingly, the notice provision of Rule 404(b) requires the exclusion of the government's evidence here.

**B.    The Evidence Identified in the Government's Motion Falls Within the Scope of Rule 404(b).**

The government insists that none of the evidence it seeks to offer is governed by Rule 404(b) because it is directly related to the charges in this case. However, this argument cannot be squared with our Circuit's holding regarding the scope of Rule 404(b) in *United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000).

In *Bowie*, the Court noted that in order to determine whether evidence constitutes "other crimes, wrongs, or acts" within the meaning of Rule 404(b), many courts consider whether the evidence is "inextricably intertwined" with the charged crime; if it is, it is outside the ambit of Rule 404(b). *Bowie* rejected this analysis as unhelpful, and in some instances circular or overbroad. Instead, the court adopted a narrow definition of intrinsic evidence:

[I]f the evidence is of an act that is part of the charged offense, it is properly considered intrinsic. In addition, some uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.

\* \* \*

On the other hand, we are confident that there is no general "complete the story" or "explain the circumstances" exception to Rule 404(b) in this Circuit. Such broad exclusions have no discernible grounding in the "other crimes, wrongs, or acts" language of the rule. Rule 404(b), and particularly its notice requirement, should not be disregarded on such a flimsy basis.

*Bowie*, 232 F.3d at 929. *See also United States v. Alexander*, 331 F.3d 116, 125-26 (D.C. Cir. 2003)(citing *Bowie's* recognition that evidence may be intrinsic "in a narrow range of circumstances").

The indictment alleges that Brownell engaged in tax evasion during the tax years 1999 through 2003 by failing to report payments that he received from DDC, and in a conspiracy to evade taxes spanning the years 1998 through 2005. The evidence at issue in the government's motion does not relate to acts that are part of the charged offenses. Nor, as a matter of logic, could they have facilitated the commission of the charged crimes.

First, the 1993 Memorandum on its face was written years before, and relates to a payment apparently contemplated years before, any of the charged crimes are alleged to have occurred.

11

Even if the 1993 Memorandum contemplated a different species of tax evasion, it would not be part of the acts of tax evasion set forth in the indictment. *See Bowie*, 232 F.3d at 929 (possession of counterfeit bills on April 17 was not the same crime as possession of counterfeit bills on May 16). Therefore, the 1993 Memorandum is plainly not intrinsic evidence of the offenses charged.

The documents marked as government exhibits 56, 102, 30B, 50F, and 14, which include items dating from 1993 through 1996, also predate the tax evasion charges in the indictment. They contain references to Brownell's income in amounts exceeding those set forth in his W-2's for those years. Like the 1993 Memorandum, these documents are neither direct evidence of the charged crimes nor acts taken to facilitate the commission of those crimes, since the offenses alleged in the indictment were commenced years later.

The government attempts to sidestep this analysis by asserting that in tax evasion cases, evidence of a taxpayer's conduct in one tax year is admitted as relevant to his motive and intent in subsequent years without being considered under Rule 404(b). *See* Government's Motion, at 7. However, the cases relied on by the government do not support its claim here. The cases the government cites typically relate to the failure to file returns in other years or other failures to pay taxes,

which are not the subject of the evidence at issue here. *See United States v. Farber,* 630 F.2d 569, 572 (8th Cir. 1980), *cert. denied*, 449 U.S. 1127 (1981); *United States v. Magnus*, 365 F.2d 1007, 1011 (2d Cir. 1966). *cert. denied*, 386 U.S. 909 (1967); *United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998). *United States v. Ebner*, 782 F.2d 1120, 1126 (2d Cir. 1986), which dealt with the admissibility of a subsequent court opinion holding that a bogus ministry did not entitle the defendants to tax exemptions, is similarly inapplicable.

The remaining cases cited by the government merely stand for the proposition that "intrinsic" evidence is not subject to the requirements of Rule 404(b). In this Circuit, the standard for whether evidence is intrinsic is set by *Bowie*. For the reasons set forth above, the government's evidence does not meet that standard, and therefore is subject to Rule 404(b).

**C.  The Government's Evidence Should be Excluded Under Rules 404(b) and 403.**

**1.  Legal standards**

Under Rule 404(b), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Ev. 404(b). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."

13

*Huddleston v. United States*, 485 U.S. 681, 686 (1988). As stated by the District of Columbia Circuit,

> The exclusion of bad acts evidence is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds.

*United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985).

To satisfy Rule 404(b), the evidence of other crimes or acts must be (1) relevant under Fed.R.Ev. 401; (2) related to "a matter in issue other than the defendant's character or propensity to commit crime; and (3) "sufficient to support a jury finding that the defendant committed the other crime or act." *Bowie*, 232 F.3d at 930. "[S]uch evidence is never admissible unless it is '*necessary*' to establish a material fact such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Shelton*, 628 F.2d 54, 56 (D.C. Cir. 1980)(footnotes omitted)(emphasis added).

Even if evidence is admissible under Rule 404(b), it should be excluded under Rule 403 of the Federal Rules of Evidence if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Ev. 403.

For purposes of Rule 403, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). As the D.C. Circuit has recognized, "[e]vidence of other crimes or acts having a legitimate nonpropensity purpose undoubtedly may contain the seeds of a forbidden propensity inference." *Bowie*, 232 F.3d at 931 (explaining why the court has "consistently stated that Rule 403 may bar evidence otherwise admissible under Rule 404(b)").

The dangers of admitting "other bad acts" evidence were emphasized by the District of Columbia Circuit in *United States v. Nicely*, 922 F.2d 850, 856-57(1991), in which a conviction was reversed because of the admission of such evidence deemed not closely enough related to the charged offenses:

> This court has repeatedly emphasized the narrow scope of the "bad acts" evidence exceptions under Rule 404(b) (such evidence may be used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident") and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied. *See, e.g., United States v. Manner*, 887 F.2d 317, 321 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); *Foskey,* 636 F.2d at 523-26; *see also United States v. Shelton,* 628 F.2d 54, 56 (D.C.Cir.1980) ("[B]ecause of the enormous danger of prejudice to the defendant that evidence of other crimes creates," the evidence must be both necessary as well as clear and convincing.).

"A fundamental tenet in our criminal jurisprudence is that a jury should not premise its verdict upon a general evaluation of the defendant's character but rather upon an assessment of the evidence relevant to the particular crime with which the defendant is presently charged." *United States v. Lavelle,* 751 F.2d 1266, 1275 (D.C.Cir.1985) *(citations omitted).* Recently, in *United States v. Rhodes,* 886 F.2d 375 (D.C. Cir. 1989), this court reversed a conviction for bank fraud and forgery because the admission of very similar but wholly unrelated fraudulent checks constituted plain error.

922 F.2d at 856-57.

## 2. The 1993 Memorandum must be excluded under Rules 404(b) and 403.

The government contends that its evidence is admissible under Rule 404(b) because it is relevant to proof of intent, plan, scheme and absence of mistake or accident. *See* Government's Motion at 10. However, in order for evidence to be admissible for these purposes, it must relate to an act that is substantially similar to the charged acts. *See, e.g., Jankins v. TDC Management Corp.*, 21 F.3d 436, 440-41 (D.C. Cir. 1994) (similarity required to admit evidence as relevant to a common plan or scheme, or intent); *United States v. Foskey*, 636 F.2d at 524 ("[w]hen a prior criminal act is relied upon to prove intent or knowledge, similarity between the two events must be shown to establish the threshold requirement of relevance")(citation omitted); *United States v. Turner*, 2006 WL 1980232, *4-5 (D.D.C. July 12, 2006)(same). In considering whether there is sufficient similarity between the acts, the "court is to consider – in part

– temporal proximity." *Turner,* 2006 WL 1980232, at *5. *See also*

*Jankins v. TDC Management*, 21 F.3d at 440 (where other acts were

"so different from the alleged fraud and so remote in time that

[they] were not properly offered to show 'plan' or 'intent.'")

   The 1993 Memorandum is a one-page document dated December

30, 1993, with a heading stating simply "To: Douglas, From:

Jack." The body of the memorandum states in part as follows:

> Attached per our discussion of Sunday, December 5 is a
> quarterly bonus check of $2,500. Please note the
> following:
>
> 1) Payment in this manner is 100% non-traceable as
> compensation, thereby eliminating tax burdens on both
> sides.
>
> 2) Although I am very happy here and feel well taken
> care of, after almost 3.5 years I believe a base pay
> increase is both reasonable and merited. As you know,
> accounting is very expensive and I save you a fortune
> in fees and also a lot in taxes through aggressive or
> creative accounting. . . .

*See* Exhibit A to Government's Motion.

   In its motion, the government states that this memorandum

"[r]eferences Brownell's attempts to pay himself a bonus that is

'untraceable' [sic] for tax purposes." Government's Motion, at

3. Actually, the memorandum does not say to whom the bonus check

would be payable. As the government concedes, Mr. Brownell was

the company's Chief Financial Officer, and thus had

responsibilities relating to compensation of persons other than

himself. This fact alone raises sufficient question as to the

similarity between the memorandum and the allegations in the indictment to require it to be excluded. A document that is ambiguous cannot be probative on any of the permissible issues under Rule 404(b). *See United States v. Spinner*, 152 F.3d at 961 (D.C. Cir. 1998)(letter which was subject to different meanings, and whose references were not clear, had no bearing on whether defendant had requisite intent).

Moreover, this memorandum was written in 1993, almost five years before the first act alleged in the indictment. It is too remote in time from the charged offenses to be relevant to Brownell's intent. *See Jankins v. TDC Management Corp.*, 21 F.3d at 441 (acts that started four months, one year and two-and-a-half years after the alleged fraud were too remote in time to be relevant).

Further, there is not enough information in this one-page memorandum to establish that it related to an actual attempt to evade taxes, let alone an attempt similar to the acts charged in this case. In addition to being ambiguous, there is no evidence that this memorandum was ever sent to anyone or acted upon, or that it is anything other than a draft. The alleged payment described in the memorandum does not relate to Potomac Valley Bank or Brownell's line of credit account, the primary vehicles for the alleged tax evasion. It is described as a bonus payment, while none of the checks identified in the indictment are

described in that manner. The memorandum does not relate in any way to loans to Brownell. In short, the memorandum does not meet the "threshold level of similarity" necessary to be admissible to prove intent or any of the other purposes asserted by the government. *See United States v. Turner*, 2006 WL 1980232, at *5.

The analysis in *Turner*, provided by Judge Kollar-Kotelly only six months ago, is telling:

> Despite the Government's "kitchen sink" approach, it is clear that at least some of the claimed Rule 404(b) exceptions simply are not pertinent to the matter at hand. For instance, it is clear that Turner's 1972 court martial conviction cannot be introduced as evidence of some sort of plan or scheme to defraud the United States. *See United States v. Foskey,* 636 F.2d 517, 523 n. 5 (D.C.Cir.1980) *(*"Given the time period separating the two arrests, and the Government's failure to provide any evidence of a continuing criminal relationship between Brunson and Foskey, the earlier arrest was not probative of plan or scheme") . . . .
>
> Moreover, contrary to the Government's bold assertion, its surviving claimed exceptions–i.e., modus operandi, knowledge, intent, identity, and lack of mistake–run into problems due to "similarity" concerns. "Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent." *Long,* 328 F.3d at 661 (citing *Jankins v. TDC Mgmt. Corp.,* 21 F.3d 436, 441 (D.C.Cir.1994); *Foskey,* 636 F.2d at 524). "What matters is that the evidence be relevant 'to show a pattern of operation that would suggest intent' and that tends to undermine the defendant's innocent explanation." *Id.* (quoting 2 Weinstein's *Federal Evidence* § 404.22[1] [a]). As the D.C. Circuit has emphasized, "the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense," *United States v. DeLoach,* 654 F.2d 763, 769 (D.C.Cir.1980), and are probative of intent rather than mere propensity, *Long,* 328 F.3d at 661.

However, in order to determine a "close" relationship or sufficient "similarity," the reviewing court is to consider-in part-temporal proximity. *See Jankins,* 21 F.3d at 347 (finding that the conditions of admissibility under Rule 404(b) were not satisfied because, *inter alia,* the two sets of disputes were "also remote in time"); *Foskey,* 636 F.2d at 523 n. 5 (same); *see also United States v. Rollins,* 301 F.3d 511, 519 (7th Cir.2002) (to pass muster under a Rule 404(b)/Rule 403 analysis, the evidence of "other crimes" must "show sufficient similarities in time and manner to establish relevance to the charged conduct"). As this Circuit has proclaimed, "[t]he temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof .... " *United States v. Watson,* 894 F.2d 1345, 1349 (D.C.Cir.1990); *United States v. Childs,* 598 F.2d 169, 174 (D.C.Cir.1979) (later acts are most likely to show the accused's intent when "they are fairly recent and in some significant way connected with prior material events"); *see also United States v. Jimenez,* 613 F.2d 1373, 1376 (5th Cir.1980) (where cocaine possession followed the charged heroin transaction by a year, the lapse "depleted the extrinsic offense of any relevance which could have outweighed the peril of jury prejudice"). . . .

. . . .Not only is the temporal proximity between the two acts at issue quite remote, a fact which substantially attenuates the relevance of the 1972 court martial conviction for the purposes of this case, but to arrive at a conclusion that the 1972 court martial charges and the charges in this case are somehow "similar" involves "reformulation" of the 1972 charges "at a rather high level of generality." *Jankins,* 21 F. 3d at 346. In *Jankins,* the D.C. Circuit expressly rejected such a tactic, concluding: "[O]ne cannot draw the line precisely between evidence of character and evidence of acts sufficiently similar to show intent or a common scheme. But when one must, in order to find similarity, define the character of the acts at such a high level of generality as here (greed, strategic behavior), and many of the events occur years after the conduct in dispute, we cannot

find the conditions of admissibility under Rule 404(b) satisfied."

2006 WL 1980232 at *4-6.

Even if the 1993 memorandum were found to be admissible under Rule 404(b), it should nevertheless be excluded under Rule 403. Its prejudicial nature clearly outweighs any probative value it may possess. As noted above, the memorandum is at best ambiguous, and there is no evidence that it was ever sent or acted upon. Yet the language is plainly inflammatory. Although the phrase "non-traceable as compensation" is not explained or elucidated (and could, for example, be simply a misstatement of the idea that the payment would be non-reportable as income), it is likely that a jury would find it inflammatory and interpret the phrase as indicating a plan to evade taxes. Moreover, the reference to "aggressive or creative accounting" – which does not in any way mean illegal accounting – is nevertheless likely to suggest improper activity to a jury. In short, this memorandum is likely to make a jury believe that Brownell has a propensity for tax evasion - exactly the result that Rules 404(b) and 403 are intended to preclude.[2]  Accordingly, the 1993 Memorandum should be excluded.

---

[2]  The limiting instruction proposed by the government will not cure any of these problems.

### 3.    Government Exhibit Nos. 56, 102, 30B, 50F, and 14 must be excluded under Rules 404(b) and 403.

The government also seeks to introduce a number of documents that substantially predate the charged offenses, claiming that they are relevant because they represent Brownell's income to be greater than that reported in his W-2's for those years. As noted above, the government has not attached any of these documents to its motion. We are preparing copies and will submit them to the Court.

The arguments advanced above relating to the 1993 memorandum apply here as well. Like the 1993 Memorandum, these documents are too remote in time to clear the "threshold level of similarity" necessary to be admissible for one of the purposes permissible under Rule 404(b). They deal only with alleged misstatements of Brownell's income to entities other than the IRS in years for which he is not charged with tax evasion, well prior to the commencement of the conduct in the indictment. Any such representations that may have been made before the alleged tax evasion scheme began can have no bearing on Brownell's intent, motive, etc., in carrying out the alleged criminal tax scheme, since the scheme had not yet commenced. Nor, for the same reason, could they constitute "admissions" about the allegedly true state of Brownell's income. It is much more likely that the "motive" for any such misstatements was,

simply, Brownell's desire to be approved for a mortgage or other credit.

Moreover, with respect to the 1996 "draft" W-2 form, there is no evidence that it ever was submitted to anyone or even printed off the computer.

Finally, even if these exhibits fell within a Rule 404(b) exception, which they do not, they should nevertheless be excluded under Rule 403. They are likely to make jurors believe that Brownell was careless and cavalier, or dishonest, about the way he described his income to banks, and thereby cause them to draw pejorative inferences based not on any evidence of crime but merely on their negative views of his character.

The government suggests that this evidence is not particularly inflammatory. There is no substance to this contention. Even if the government does not expressly argue that Mr. Brownell is guilty of bank fraud or a violation of 18 U.S.C. Section 1001 in years prior to those implicated in the indictment – years well outside the statute of limitations – the implication of illegality to the jury will be as clear as a bell. Moreover, the presentation of such evidence would require us to defend against such allegations, substantially increasing the length of the trial, diluting its focus, and increasing the chance of confusing the issues before the jury.

## CONCLUSION

As the D.C. Circuit has recognized,

Rules 403 and 404(b) are not obstacles to be cleared at all costs, even by cutting around corners whenever it is possible to do so. These rules were designed to ensure a defendant a fair and just trial based upon the evidence presented, not upon impermissible inferences of criminal predisposition or by confusion of the issues.

*United States v. Foskey,* 636 F.2d at 525 (D.C. Cir. 1980).

For the reasons set forth above, defendant Brownell respectfully submits that this Court should deny the government's motion as to the 1993 Memorandum and Government Exhibit Nos. 56, 102, 30B, 50F, and 14, and exclude these documents from evidence in this case.

Defendant respectfully requests oral argument on this matter.

Respectfully submitted,

JOHN E. BROWNELL

By Counsel:


__/s/ Barry Coburn_____
Barry Coburn (D.C. Bar #358020)
Gloria B. Solomon (D.C. Bar #358880)
Jeffrey C. Coffman (D.C. Bar #493826)
TROUT CACHERIS, PLLC
1350 Connecticut Avenue, N.W.
Suite 300
Washington, D.C.  20036
Phone: (202)464-3300
Fax: (202) 464-3319

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of January, 2007, I served a copy of the foregoing Defendant Brownell's Opposition to Government's Motion to Admit Certain Evidence by ECF.


__/s/ Barry Coburn_____