UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 06-077 (RMU) |
| | : | |
| JOHN E. BROWNELL | : | |

GOVERNMENT'S REPLY TO
DEFENDANT'S BROWNELL'S OPPOSITION TO
GOVERNMENT'S MOTION TO ADMIT CERTAIN
EVIDENCE

The United States, through its attorney, the United States Attorney for the District of

Columbia, respectfully replies to defendant Brownell's Opposition to the Government's Motion

to Admit Certain Evidence.

I.  INTRODUCTION

In this tax evasion case, the defendant seeks to keep the jury from that in the years

immediately prior to the charged years, the defendant reported his income in various loan and

credit applications to be far greater than the amounts that were reported to the United States.

Moreover: 1) these loan and credit applications were associated with his personal residence, the

property secured by the very line of credit that the defendant is specifically charged with using as

part of the scheme charged in the Indictment, and, 2) these events occurred within the time frame

outlined in the Indictment during which the defendant failed to file returns.  The defendant has

had actual notice of the documents for close to a year.  Defendant misconstrues the law and facts,

and the government's motion to admit such evidence should be granted.

II.  NOTICE AND PROCESS

First, the defendant concedes that he has had the evidence of which he complains for

what will be close to 11 months by the time of trial.  The evidence at issue was transparent and

obvious in the discovery materials that were produced.  The government had marked with exhibit

stickers and scanned approximately 100 exhibits related to Brownell and his tax situation:  some

were tax returns, some were bank records, some were Douglas Development (DDC) documents,

some were payroll documents, and some, like the documents here, were clearly marked loan

application documents, prepared and signed by Brownell.[1]  Each of the loan applications files at

issue was separately and discretely marked; the applications were not concealed, buried or

scattered among thousands of pages.  The relevance and importance of the documents was

manifest, and skilled defense counsel could have had no real doubt about the government's intent

to use these documents.

     This effective notice constituted far more than the law requires.  Even if this evidence is

presumed to be governed by Rule 404(b) evidence, that Rule only requires reasonable notice of a

"general nature" of such evidence.[2]  Indeed, requests for "evidentiary detail" of the government's

---

[1]     The defendant's use of the term "wholesale" is inapt.  The government produced
easily identifiable separately marked exhibits.

[2]     Whether notice is adequate for Rule 404(b) purposes is necessarily a case by case
determination.  There may certainly be a circumstance where disclosure in discovery may not be
adequate.  See, e.g., United States v. Spinner, 152 F.3d 950, 961 (D.C. Cir. 1998).  However,
disclosure of the evidence 11 months prior to trial of the evidence, coupled with further
disclosures of an intent to use such evidence two months prior to trial is more than adequate.
"Other than requiring pretrial notice, no specific time limits are stated in recognition that what
constitutes a reasonable *** disclosure will depend largely on the circumstances of each case."
FRE 404(b), Adv'y. Comm. Notes, 1991 Amendments.  See, e.g., Hoey v. United States, 2006
WL 1642223 (W.D.N.C., June 13, 2006) at *3 (formal notice would have been superfluous since
evidence in files made available as part of the discovery).

     In any event, the facts of Spinner are easily distinguishable, and involved the use of cross-
examination of a letter written by a witness at trial that referenced the fact that the defendant was
selling drugs and trial surprise.  "Without approaching the bench, the prosecutor simply asked
Ms. Little about Spinner's refusal to stop his friends from using his mother's house to sell drugs."
United States v. Spinner, 152 F.3d at 961.  The Court of Appeals' comments about the requisite

Rule 404(b) evidence are routinely denied. Nonetheless, the government in this case provided

the <u>actual evidence</u> it will use in this case, not just the "general" nature of such evidence, and

thus provided far more than Rule 404(b) requires. See, e.g., United States v. Watts, 911 F.Supp.

538, 556-57 (D.D.C. 1995) (requests for evidentiary detail routinely rejected).

Indeed, defendant acknowledges actual notice of these documents, and goes so far as to

concede that despite having actual notice of the evidence he decided not to file a motion in

limine because he was unsure the government was going to use it. See Defendant's Opposition

at 7. ("Brownell relied upon this proposition in deciding not to file a motion in limine to exclude

404(b) evidence, and in his trial preparation." (emphasis supplied)). In substance, he has filed a

motion of limine now, in the form of his objection to the government's motion.

Second, even assuming that the government should have "gone first" and filed a formal

notice (even though defense had actual notice) – it is worth noting that the defendant filed

motions November 6, 2006, and the government filed oppositions on December 4, 2006.[3] Any

possible ambiguity about the government's intent to use the evidence was eliminated, as the

defendant has recognized and argued, as of December 4, 2006 – over two months prior to trial.

Case law makes clear that two months' notice is more than adequate. United States v.

Valenti, 60 F.3d 941, 945 (2d Cir. 1995) (four days reasonable notice); United States v.

---

disclosure obligations must be read in light of how this particular issue emerged at trial in
Spinner.

[3]    The defense compares the notice in this case with the government's notice in the
Jemal case. However, a quick purview of the Government's Jemal pleading makes clear that the
evidence at issue involved not only the intrinsic tax evasion conduct related to Esherick, but
evidence of bribes by DDC personnel to other DC personnel, bad acts by Jemal relating to the
Construction Vice President and Brownell, the Construction Vice President's testimony in a
zoning hearing in Maryland, and hisparticipation in preparing a false insurance claim.

Perez-Tosta, 36 F.3d 1552, 1560-63 (11 Cir.1994) (six business days deemed adequate); United

States v. Kern, 12 F.3d 122, 124 (8th Cir.1993) (notice fourteen days prior to trial is sufficient

under FRE 404(b)); United States v. French, 974 F.2d 687, 694-95 (6th Cir.1992) (one week

notice in narcotics prosecution upheld as valid exercise of discretion); United States v. Dussault,

1994 WL 249472, at *1 (4th Cir. June 9, 1994) (eight days reasonable notice); United States v.

Solomonyon, 451 F. Supp. 2d 626, 646 (S.D.N.Y. 2006) (two weeks); United States v. Al-Marri,

230 F.Supp. 2d 535, 542 (S.D.N.Y. 2002) ("While there is no contention thus far that any

witness will be placed in jeopardy, Al-Marri has not provided sufficient grounds to justify why

an earlier production date is necessary. Therefore, the rules do not require production of Rule

404(b) materials any earlier than the two week period proposed by the Government."); United

States v. Giampa, 904 F. Supp. 235, 283 (D.N.J. 1995) (2 weeks prior to trial); United States v.

Evangelista, 813 F. Supp.294, 302 (D.N.J. 1992) (notice ten business days prior to trial is

sufficient under FRE 404(b)); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind.1992)

(creating general ten-day rule); United States v. Alex, 791 F.Supp. 723, 729 (N.D.Ill.1992)

(ordering notice seven days before trial); United States v. Hernandez, 1999 WL 318090, at *4

(D.Kan. Feb. 23, 1999) (three weeks prior to trial); United States v. Tovar, 1987 WL 18566, at

*1 (N.D. Ill , Sept. 8, 1987) (one week prior to trial).  Thus, by any real standard, notice to the

defendant has been timely and generous, and at this time even includes an item by item analysis

by government counsel of certain of the critical facts.[4]

---

[4]    Upon receiving defendant's reply on December 18, 2006, government counsel, on
December 19, 2006, sought to have defense counsel consent to an expedited briefing schedule on
this issue, but was unable to obtain agreement.. On December 27, 2006, government counsel
informed defense counsel that the government was going to file a motion seeking an expedited
briefing schedule.  At that time, the parties agreed to place a joint call to the Court's law clerk

Finally, and in any event, the matter is ready for resolution and certainly within the guidelines prescribed by this Court for the resolution of evidentiary matters. The Court's Standing Order contemplates that motions in limine may be included in the "Pre-Trial Submission," Standing Order at 4, or 8 days prior to jury selection, Standing Order at 5. This set of pleadings has been filed prior to the Pre-trial Submission, and well in advance of 8 days prior to jury selection. In substance the parties are in the precise position they would be if the defendant's motion in limine were filed in the Pre-Trial Submission as contemplated by the Court.

### III. DEFENDANT'S LEGAL ARGUMENTS ARE FLAWED

#### A. The Evidence Is Not Properly Analyzed Under Rule 404(b)

As noted, the evidence at issue involves defendant's representations about his income in the 1994-1996 time-frame – in particular, a set of representations that his income was greater than that reported to the Internal Revenue Service. (The defendant did not file returns at that time, but W-2s were filed.) The defendant claims that these statements are akin to fraud on the banks; the government maintains these are admissions that he received income in excess of that reported to the IRS and, that by providing banks with W-2s and returns (though unfiled), the defendant concealed from the banks the fact he had failed to file returns with the IRS.

Though the Indictment specifically references conduct in the 1994 through 1996 time-frame as the "Introduction" to Count One, and though the Indictment specifically mentions the defendant's having obtained a line of credit in 1996, the defendant argues the narrowest interpretation of the charging language in this case in alleging that the evidence at issue is "other

_____

serving notice of this issue.

crimes" evidence, subject to Rule 404(b), and not direct evidence of the charged offenses.

Defendant's argument fails: these acts are part of a single lengthy criminal episode; the acts of

1995 and 1996 are "blended or connected with the crimes charged that [they] incidentally

involve[] it, explain[] the circumstances surrounding it, or tend[] logically to prove an element of

the charged crime." McLauglin, et al, Weinstein's Federal Evidence, Second Ed., §404.20(2)(c)

at 404-46.7.

Furthermore, the defendant is flatly wrong in claiming that the representations on the loan

applications did not facilitate the present offenses. The loan applications permitted Brownell to

purchase 6151 Tuckerman and obtain a secured line of credit on that property – facts described in

the Indictment.[5] Thereafter, DDC/Douglas Jemal made hundreds of thousands of dollars worth

of payments to that line of credit–funds that Brownell used for his personal purposes.[6]

Defendant's concession to permit the post-1998 evidence only undercuts his arguments,

for there is no real distinction between the post-1998 time period and the pre-1998 time period,

---

[5]     To purchase the property, Jemal gave Brownell approximately $32,000 in checks draws on DDC's payroll account. These were reported to the lender as a bonus. This "bonus" was not disclosed to the IRS on Brownell's W-2, but at least some portion of the funds constituting the bonus were recorded as on the DDC books as a loan from DDC to Brownell. This is precisely what is involved throughout this case: the payment of "bonuses" falsely recorded on the books and claimed by Brownell to be loans. Brownell's admissions to financial institutions that he in fact received bonuses and Jemal's statements that Brownell was paid bonuses are highly relevant and, moreover, they are true. Defendant's unseemly attempt to exclude his own true statements to financial institutions by asserting that they are false turns Rule 404(b) on its head. Defendant's attempts to explain or distinguish these acts go to weight; not admissibility.

[6]     These were recorded in the books not as loans to Brownell, but as "loan repayments" on mortgages and loans from Potomac Valley Bank to DDC. Even the interest on these payments was separately accounted for in the DDC books as if it were a legitimate DDC expense.

other than the fact that the most critical representations that prove the defendant's intent made in 1995 and 1996.

B. <u>Even If Analyzed under Rule 404(b), the Evidence Is Admissible</u>

The defendant misstates the Rule 404(b) principles. The <u>sole</u> ground for exclusion under Rule 404(b) is whether the evidence constitutes improper character and propensity evidence. <u>See</u>, <u>e.g.</u>, <u>United States v. Linares</u>, 367 F.3d 941, 946 (D.C. Cir. 2004) (Rule 404(b) is a rule "of inclusion rather than exclusion," and excludes only evidence that "is offered for the <u>sole</u> purpose of proving that a person's actions conformed to his or her character" (emphasis supplied)). No such forbidden propensity inferences are involved in this case.

Rather, evidence of Brownell's conduct immediately prior to the charged years tends to prove his state of mind for the charged years of conduct. This is critical, especially, as defendant acknowledges, where intent is nearly the only issue in this case. The fact that in the years <u>immediately</u> preceding the charged offenses, Brownell reported an income to others greater than reported to the IRS is relevant in that it "alters the probability" that the funds he received in the charged years likewise reflects an income greater than that reported to the IRS.

The most powerful and persuasive instances of this conduct are found in Brownell's loan applications of 1995 and 1996. Defendant's contentions to the contrary, this evidence is certainly not too remote within standard Rule 404(b) analysis.[7] Defendant's attempts to

---

[7]       <u>See</u>, <u>e.g.</u>, <u>United States v. Rude</u>, 88 F.3d 1538, 1549-550 (9th Cir. 1996) (evidence of prior fraud, eight years prior, introduced under Rule 404(b)); <u>United States v. Staggs</u>, 2005 WL 1400266 (9th Cir., June 15, 2005) (evidence of participation in other fraud schemes within five years of the charged offense admissible). <u>See also</u>, <u>e.g.</u>, <u>United States v. Estrada</u>, 453 F.3d 1208, 1213 (9th Cir. 2006) (10 years between alleged prior act and charged conduct not too remote) (citing cases); <u>United States v. Adams</u>, 401 F.3d 886, 894 (8th Cir.2005) (upholding admission of 1986 drug conviction in trial of offense committed in 2001); <u>United States v.</u>

-7-

distinguish the host of cases that make it clear that the financial/tax related conduct of an individual immediately prior to the charged years is admissible simply are unpersuasive. The government stands by its analysis of those cases and the principles for which they stand, especially where that evidence bears a close relationship to the charged conduct.

In United States v. Turner, 2006 WL 1980232 (D.D.C., July 12, 2006), cited extensively by the defendants (see Defendant's Opposition at 19- 21), Judge Kollar-Kotelly excluded a 34 year-old fraud conviction (by court-martial). In contrast, applying the principles announced by Judge Kollar-Kotelly, the evidence at issue in this case covers the time period immediately adjacent to the charged conduct – not a 34 year gap – and "show[s] a pattern of operation that would suggest intent and that tends to undermine the defendant's innocent explanation." United States v. Turner, 2006 WL 1880232 at *5 (citations and internal quotations omitted).

Finally, this evidence is particularly reliable in that the evidence is in the form of documents contained in loan applications. The evidence does not depend on witness testimony. Thus, though the defendant may dispute the significant of the evidence, there will be no dispute that the events the acts at issue actually occurred..

### C. The Evidence Should Not Be Excluded under Rule 403.

There is no unfair prejudice in the proffered evidence:

> Unfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence. That is hardly unfair. Rather, it refers to the

---

Williams, 308 F.3d 833, 836-37 (8th Cir.2002) (admission of prior robbery 20 years prior to the offense charged); United States v. Hernandez-Guevara, 162 F.3d 863, 873 (5th Cir.1998) (upholding admission of prior conviction for alien smuggling that was "nearly eighteen years old"); United States v. Lampley, 68 F.3d 1296, 1300 (approximately 15 years); United States v. Frankhauser, 80 F.3d 641, 649 (1st Cir. 1996) (7 years).

> tendency of certain evidence to provoke an emotional response in
> the jury or otherwise to suggest a decision on an improper basis.
> To require the exclusion of extrinsic evidence, unfair prejudice
> must <u>substantially</u> outweigh the probative value of the evidence.

<u>Weinstein on Evidence</u>, §404.21[3][b] at 404-69 (emphasis in original). Here, the prejudicial

effect is minimal. The other conduct – loan applications – can hardly be less inflammatory,

especially when introduced simply as documents subpoenaed from the financial institutions. It is

inconceivable that such evidence will "provoke an emotional response" so strong as to prompt a

juror to convict, in spite of the evidence, and in spite of limiting instructions.

The defendant fact that defendant "strenuously" objects does not in any way bootstrap or

enhance the quality of his arguments. The defendant's "strenuous" objection is instead a

reflection of his recognition of the legitimate force of the evidence.

### D. Defendant's Contentions that Such Evidence will Raise Complicated Trial Issues has no Basis

This evidence will be easily integrated into the government's presentation of evidence at

trial. Moreover, this Court will recall that certain conduct of Blake Esherick that occurred prior

to the first charged year of evasion (2001) was admitted at the Jemal trial, including, for example,

his 2000 tax return, a credit application, certain checks from DDC to Esherick's ex-wife, and

evidence from his ex-wife as to Esherick's financial circumstances surrounding their divorce.

This evidence was presented seamlessly with other evidence, and resulted in no disruption of the

trial. This Court can be confident therefore, that a like ruling in this case – admitting the pre-

charged conduct for the years immediately preceding the charged offenses – would be handled in

a similarly smooth manner, without engendering new and unique trial issues.

E. <u>The December 1993 Memorandum Should Be Admitted</u>

The defendant makes certain factual arguments at to the 1993 Memorandum, however, these go to weight and not admissibility. The jury would be permitted to conclude that even as far back in 1993, Brownell was concerned with paying himself or others bonuses that were "non-traceable as compensation." This is powerful, legitimate and non-prejudicial evidence; it is clear evidence of Brownell's intent in this case, and it is evidence of Brownell's relationship with Jemal on matters surrounding Brownell's (or others') compensation.[8] It does not become ambiguous merely because defense counsel intends to argue other inferences or explanations to blunt its full effect. This is why we have juries.

The defendant complains of late production of the document. The produced the document to the defense over six weeks prior to trial. Moreover, the seized documents – both hard copies and those stored electronically – have been available for review by counsel.[9]

_____

[8]    See, e.g., <u>United States v. Agudelo</u>, 2005 WL 1655033, at ** 1 (2nd Cir. 2005, July 13, 2005) (evidence of drug dealings between defendant and witness six years prior to the charged offense admissible: "[T]he evidence was admitted for the proper purposes of informing the jury of the background of the illegal relationship between Agudelo and the witness, * * *, and proving knowledge and intent, * * *." (citations omitted))

[9]    Upon the completion of the <u>Jemal</u> trial, post-trial briefings, and the preparation of responses to the defendant's motions in this case, government counsel commenced a final review of the seized computer evidence, located the document, and produced it promptly. As this Court would well appreciate, government counsel had not reviewed documents for purposes of the Brownell prosecution since early 2006.

WHEREFORE, we request the above-described evidence be admitted.

RESPECTFULLY SUBMITTED,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:

MARK H. DUBESTER
ASSISTANT UNITED STATES ATTORNEY
DC Bar No. 339655
555 Fourth Street, N.W., Room 5917
Washington, D.C. 20530
Ph. (202) 514-7986