UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :
:
v. : Crim. No. 06-077 (RMU)
:
JOHN E. BROWNELL :

## GOVERNMENT'S MOTIONS FOR MISCELLANEOUS RELIEF

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following motions:[1]

### MOTION IN LIMINE TO EXCLUDE DEFENDANT'S PROPOSED EXPERT TESTIMONY

The defendant has served notice that it may call two individuals, Bruce Dubinsky and Paul Wilner, as experts. The defendant's exhibit list sets forth numerous items of legal materials as potential evidence in this case, including Supreme Court cases. The defendant has provided notice of Mr. Dubinsky's proposed testimony.[2] This is attached to this pleading.

The notice of the defendant is plainly inadequate. Though the defense has merely informed the government of the **topics** of the expert testimony, i.e., that Mr. Dubinsky will testify "on the following matters" such as "the proper tax treatment" of loans and gifts, this notice does not provide notice of the actual substance of the proposed testimony. See Fed. R. Crim. P. 16(b)(1)(C) (requiring disclosure of a "written summary" that "describe[s] the witness's opinions, the bases and reasons for those opinions, and the witnesses qualifications"(emphasis

---

[1] The Government provided defense counsel general notice that it would be filing a motion addressing some of these topics on Thursday, January 11, 2006.

[2] The Government was first provided an exhibit list on Wednesday, January 10, 2007. The Government received the attached notice of the expert's testimony on the morning of Friday, January 12, 2006.

supplied)). As Judge Friedman of this District Court has recently stated:

> The primary purpose of Rules 16(b)(1)(B) and (C) is to prevent unfair surprise at trial and to permit the government (or in cases where the government is derelict in its duty, the defendant) to prepare rebuttal reports and to prepare for cross-examination at trial. As the Advisory Committee Note expressly states, Rule 16(b)(1)(C) is "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed.R.Crim.P. 16 advisory committee's note. The requirement that a written summary of an expert's testimony must be provided "is intended to provide more complete pretrial preparation by the requesting party." Id. "[M]ost important," a "summary of the bases of the expert's opinion" must be provided. Id. A failure to comply with these Rules may result in the exclusion of the proffered evidence. Fed.R.Crim.P. 16(d); see United States v. Barile, 286 F.3d 749, 758-59 (4th Cir.2002); United States v. Day, 433 F.Supp.2d 54, 57 (D.D.C.2006).

United States v. Naegele, — F.Supp.2d —, 2007 WL 30028 at *1 (D.D.C. January 5, 2007).

The defendant's notice is akin to a notice that an expert in a medical malpractice case will testify on the "matter" of the extent and nature of an jury, or that a forensic psychologist will testify "on the matter of" a defendant's mental capacity. Such notice is wholly insufficient to permit opposing the opposing party to prepare for examination, let alone prepare for trial or line up a rebuttal expert. No portion of the defendant's notice actually "describes the witness's opinions." The government seeks a specific written summary of precisely what expert opinions will be offered. That notice is the first step in determining whether such testimony can be allowed.[3]

---

[3] The government is calling two or three experts in its own case. Though the government's summary of their proposed testimonies is likewise very general, the defendant has ample knowledge of the testimony of each witness. Ms. Hwang, from the FBI, has previously testified in the Jemal case about the retrieval of documents from the seized computers and will

Because no notice has been provided, it is difficult to address the substance of the expert testimony. Nonetheless, the government maintains it is all but certain that the expert can offer <u>no relevant testimony</u> whatsoever. The legal issue – the definition of a loan – has been decided by the Court, and there is no basis to permit an expert to discuss that definition further. The factual issue – whether Brownell intended the transactions to be loans – is one for the jury.

First and most troubling is the defendant's professed intent to have the witness testify as to "the proper tax treatment" of loans and gifts. It is clear that the defendant intends for the witness to discuss the law, and to do so at length, defendant's assertion to the contrary. Indeed, this understanding of the witness's intended testimony is inescapable in that the defense has represented that the expert opinion – whatever it may be – will supposedly be buttressed by discussion of legal materials such as Supreme Court cases, IRS regulations, Tax Court decisions, and so forth.[4] However, it is for the Court, not a witness, to explain the law. Legal materials are not evidence and testimony about their contents is wholly improper. The defendant is not permitted to create an alternate legal universe as to the definitions of gifts and loans; he is not

---

do the same here. Ms. Abbott, from the IRS, also testified in the <u>Jemal</u> case about the calculation of Esherick's taxes, and her testimony in the instant prosecution will describe similar expertise and procedures, including an explanation as to what is meant by "gross" and "net" income. The government has also identified as a potential expert Robert Jodoin, a Certified Public Accountant, who, along with IRS Special Agent Charles Jones, may provide certain "summary" testimony. The precise summary charts and the precise income calculations will depend on the precise evidence that is admitted at trial. However, the defense has received drafts of some of the summary charts, and has received as marked exhibits the underlying financial records on which other summary charts may be based.

[4]    The defendant concedes the expert will "base this testimony on the Internal Revenue Code and related Treasury Regulations, IRS rulings, IRS publications, Administrative Rulings, Treasury Decisions, General Counsel Memoranda, judicial doctrines of taxation *** and other authoritative documents."

permitted to imply that the jury should use any criteria other than those set forth by the Court;[5] and he is not permitted to massage the jury instructions through interpretations offered by an expert.[6] If the defendant were permitted to adduce this testimony, presumably, the government would then be permitted to call as a witness its own expert, say, someone from the Appellate Section of the Criminal Division, or a high-level IRS Attorney, to rebut the expert's contentions as to the law. If the defendant believes that the instructions are inadequate, he is free to suggest additional ones.[7]

Second, there is remarkably little notice as to any other <u>factual</u> matters as to which the defendant expects to elicit expert testimony. The reference to anticipated testimony about "IRS procedures" is so vague as to be virtually meaningless and provides no notice whatsoever.

Moreover, the witness plainly cannot testify to the actual intent of Brownell, the witness cannot testify that his perceptions of the IRS's procedures was shared by Brownell, and the witness certainly did not advise Brownell. In short, the defense cannot call an "expert" to serve, in substance, as a surrogate for Brownell, have that expert testify as to a view of the facts and law

---

[5] Will the expert use any definition of "loan" that is different than the Court's definition? Will the witness suggest that the Internal Revenue Service uses any criteria to evaluate a loan from non-loan other than those that the jurors should use? If so, what is the basis for that opinion? Will the witness purport to interpret the various IRS Rules and Regulations and explain what they "mean"? Is the witness going to quote Treasury Regulations and Supreme Court cases, and seek to admit them into evidence? Is the government then permitted to cross-examine him with other sources of "the law?"

[6] See, e.g., <u>United States v. Willis</u>, 277 F.3d 1026. 1033 (8th Cir. 2002) ("Moreover, introduction of the statutes and judicial opinions would have had a high potential to confuse the jury and conflict with the court's responsibility to instruct on the law. Willis had been permitted to explain the source of his beliefs and to introduce other exhibits on which he relied, and the district court did not err in excluding the additional documents. Fed.R.Evid. 403.").

[7] Moreover, the definition of a "loan" is not complicated.

and thereby suggest, explicitly or by implication, that Brownell held that same view. The <u>defendant</u> himself may testify as to his <u>own</u> perceptions, beliefs and intent.

The government thus requests: 1) that the defendant be required to provide a detailed proffer that satisfies Rule 16(b)(1)(C) and summarizes and provides real and actual notice of the substance of the proposed expert witness testimony and basis for such testimony; 2) that further briefing or argument be permitted subsequent to that proffer prior to a ruling on the admissibility of such expert testimony; 3) that there be no mention of potential expert testimony, or the substance of the testimony the defendant would reasonably expect to elicit from his experts, in opening statements.

## MOTION IN LIMINE RELATED TO BROWNELL'S DEALINGS WITH THE IRS

In late 2004 and into 2005, after Brownell was put on notice that the government was investigating him, the defendant through tax counsel engaged in dealing with civil components of the IRS to clear up his back taxes. In April 2005, he filed returns for 1999 through 2004, and the records suggest that Brownell (through tax counsel) attempted to negotiate settlements and made payments based on these filings over the next several months.

The defendant has marked as trial exhibits numerous documents related to these interactions with the IRS. (The government viewed these particular exhibits for the first time the afternoon of Friday, January 12, 2007.) The government does not know the precise documents of the marked collection that the defendant will seeks to admit or the precise theory of admission. Some, for example, involve legal correspondence from Brownell's tax lawyer to the IRS; others are proposed settlement agreements.

The government does not dispute that some of the documents, or some portions, may be admissible – the government understands that the defendant may make a general "good faith" argument, to be buttressed by his attempts to clean up his tax situation in 2005. If the documents are sought to be admitted for <u>any other purpose</u> the government would request the defendant be required to provide a proffer as to relevance. Moreover, numerous of the documents appear to have obvious hearsay problems or pose obvious issues of potential jury "confusion" and "prejudice" as they consist of legal correspondence or negotiated attempts to settle debts.[8] The government is willing to review the documents defense counsel to determine whether there is a basis to reach agreements on redactions or agreements as to which documents will and will not be admitted. However, until the admissibility of any disputed documents, or portions of documents, is resolved by the Court, the government requests that the defendant not be permitted to mention of the contents of documents before the jury.

MOTION IN LIMINE TO PRECLUDE
ARGUMENTS CHALLENGING THE GOVERNMENT'S MOTIVES OR PRACTICES
<u>IN HANDLING THIS CASE</u>

Reading between the lines of the defendant's notice of expert testimony (seeking to introduce evidence of how the IRS typically deals with late filers), and the defendant's marking

---

[8] Certainly, the defendant's communications to the IRS are self-serving that should not be admitted; and certainly, the communications of the IRS civil and administrative components are not "admissions" of the government that can simply be brought before the jury because they originated from the IRS. The IRS is not a party to this case.

If the defendant simply wants to make the following point: that once he became aware of the potential tax investigation he took acts – in what he maintains to be good faith – to resolve any issues with the IRS, the government is willing to work with the defendant to redact materials that include self-serving hearsay or inadmissible hearsay. The response of the IRS, for example, is not relevant.

of exhibits related to Brownell's dealings with the IRS in 2004 and 2005, the government anticipates that the defendant may challenge the good faith of the government in bringing these charges, argue that certain components of the IRS viewed this as a only a civil or administrative matter (and hence, the jury should see the facts in the same way), or claim that the matters associated with Brownell's taxes are matters that are typically handled civilly or administratively, or could have been so handled in this case. If this is indeed the defendant's intent, he should be specifically instructed not to make such arguments.

The exercise of prosecutorial discretion resides with the United States Department of Justice. A federal judge approved the search warrant that in substantial aspects tracks the charges. The grand jury returned a valid indictment. The prosecution was independently approved by the United States Attorney for the District of Columbia and the Tax Division of the Department of Justice. The fact that <u>some</u> non-filers and late filers are not prosecuted – a fact that the defendant would have his expert testify about – has nothing to do with the exercise of prosecutorial discretion in determining whether this non-filer/late filer should be prosecuted.

The civil components of the IRS with whom Brownell exchanged correspondence did not have the information known to the criminal investigators or the grand jury, especially evidence that demonstrated Brownell's involvement in other criminal activities that bear on his honesty and the merits or prosecution. Any efforts to call into question the decision to pursue criminal charges would inherently open up a host of issues, and would invite, for example, a prosecutor or IRS Agent to explain the charging decision in this case. The suggestion that others in the federal government, based on incomplete information, may have perceived some of the facts associated with Brownell's taxes as matters to be handled civilly has no relevance to any factual issue that

the jury must decide, and may not be used by the defendant as some suggestion that any component of the federal government concluded he lacked criminal intent.[9]

## MOTION TO LIMIT SCOPE OF CROSS-EXAMINATION

The government's case should consist of no more than dozen witnesses – hopefully fewer – some of whose testimony will be quite brief. Nearly all are local, and some are closely affiliated with the defendant. The government urges the Court to limit the scope of cross to the scope of direct, unless good cause is shown.[10]

Thus, the defendant should not be permitted to elicit broad open-ended descriptions of the business of Douglas Development or the nature of its work place (if those topics are not raised by the direct). Similarly, absent good cause, if the government calls a witness to identify specific documents on a specific topic, there is no basis for the witness to be asked to identify documents on unrelated topics.

This pre-trial "motion" on this topic is necessarily general, and may in fact not be necessary. The government cannot anticipate at this point in time exactly what the defense will attempt to accomplish with certain witnesses in cross examination.

---

[9] To the same end, the government is confident that defense counsel would not indicate that he was a former prosecutor and thereby seek to bolster his interpretations of the facts of this case.

[10] For example, the government will not object to "outside the scope" direct questioning of out of town witnesses, so long as the government can cross-examine any such witnesses on any new topic areas elicited by the defense.

NOTICE OF ADDITIONAL MOTION THE GOVERNMENT EXPECTS TO FILE

The Government intends to file a motion seeking a pre-trial ruling on the "non-controversial" documents for which it shall seek a pre-trial ruling as to admissibility and/or authenticity, thus to save time at trial.

RESPECTFULLY SUBMITTED,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____
MARK H. DUBESTER
ASSISTANT UNITED STATES ATTORNEY
DC Bar No. 339655
555 Fourth Street, N.W., Room 5917
Washington, D.C. 20530
Ph. (202) 514-7986