UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 06-0077 (RMU) |
| JOHN E. BROWNELL, | ) ) ) | |
| Defendant. | ) ) | |

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS FOR MISCELLANEOUS RELIEF

Defendant John E. Brownell, through undersigned counsel, respectfully opposes the "Government's Motions for Miscellaneous Relief."

**I.    Defense Expert Testimony**

The government seeks exclusion of our proffered expert testimony on the grounds that the notice we have provided is insufficient, and that the testimony we seek to elicit is impermissible. We respectfully submit that this request should be denied for at least the following reasons:

- The government has provided the Court with only part of the expert notice we have provided. In point of fact, we gave the government far more detailed notice of our intended expert testimony than the government provided to us about its experts. Further, we invited the government to furnish us with any authority indicating that our notice was incomplete. The government ignored this invitation, instead filing its motion without engaging in any further dialogue on the subject with us.

- We have carefully sought to circumscribe our proffered expert testimony so that it does not come close to invading the Court's exclusive province of instructing the jury on the

law.

In fact, it is not entirely clear what relief the government demands. The initial section of its motion is entitled, "Motion in Limine to Exclude Defendant's Proposed Expert Testimony." However, at the close of that section of its motion, at page 5, the government states that it seeks only a more detailed proffer, an opportunity for further argument, and a bar on references to this testimony in opening statement. We have tried to be openhanded in our multiple proffers on this subject and intend to continue to approach the matter in that fashion. We do respectfully submit, however, that the testimony we have proffered is relatively uncontroversial and thus we should not be barred from referencing it in opening statement.

A.     **The Defense Proffer**

As noted in our opposition to the government's pending "Motion to Admit Certain Evidence," we sent the government a standard, detailed discovery demand letter on August 8, 2006. Exhibit 1 hereto. This letter expressly requested notice of expert testimony. Page 2, ¶ 7. No response to this request was received until December 18, 2006. On that date, as part of the government's draft Joint Pretrial Statement, which it e-mailed to us, the government provided the following expert witness proffer:

Government Witnesses

Susy Hwang - Ms. Hwang will testify as a forensic computer technician, as to the processes of retrieving electronically stored data from Douglas Development's computers.

Jennifer Abbott - Ms. Abbott, an IRS Revenue Agent, will testify as an expert in tax calculation;

Robert Jodoin - Mr. Jodoin, a Certified Public Accountant[,] will testify as a summary witness as to the review of Mr. Brownell's financial records.

2

Exhibit 2. This is the sum total of the expert witness disclosure we have received from the government. The final version of the Joint Pretrial Statement contains only the government's expert witness proffer quoted above.

In evaluating the government's suggestion that our expert witness proffer is inadequate, it is instructive to compare the government's responsiveness to our discovery demand, and the breadth of its proffer, to our level of responsiveness and the extent of our proffer. We furnished our initial proffer on December 21, 2006, *despite the fact that no reverse discovery demand had as yet been interposed by the government pursuant to Fed.R.Crim.P. 16(b).* By e-mail dated December 21, 2006, we informed the government:

> We are considering designating Bruce Dubinsky, or perhaps a Grossberg employee, as an expert witness regarding criteria for distinguishing loans versus income, though I doubt we would ask such a witness to opine specifically about the facts in our case.

Exhibit 3. The government interposed its reverse discovery demand the next day, on December 22, 2006, noting, "You have provided a potential defense expert." Exhibit 4.

In the Joint Pretrial Statement, we provided a significantly more detailed proffer of our expert testimony than did the government:

> Bruce Dubinsky - Mr. Dubinsky will testify as a "teaching witness" with respect to the rules, procedures, documents and criteria utilized by the Internal Revenue Service and other government agencies to distinguish between taxable income and non-taxable items such as loans and gifts, and to treat late-filed income tax returns and funds provided with them.
>
> Paul Wilner - Mr. Wilner may provide testimony similar to that proffered above for Mr. Dubinsky.

Joint Pretrial Statement at 44. Nevertheless, the next day, January 11, 2007, the government asked us for more detail:

>Please provide a written summary of the proposed expert testimony. Please provide it so that I may file a motion in limine by next Tuesday.

Exhibit 5. We responded within a few minutes:

>Happy to provide more information about the expert testimony we envision. Essentially, the plan is to elicit testimony, as we said in the Joint Pretrial, about the:
>
>rules, procedures, documents and criteria utilized by the Internal Revenue Service and other government agencies to distinguish between taxable income and non-taxable items such as loans and gifts, and to treat late-filed income tax returns and funds provided with them.
>
>As you can see from our exhibit list, we've marked a number of IRS and other government documents relating to these issues. Our plan is to have the expert witness explain what the IRS does and how it distinguishes between income and non-income items, how the IRS deals with late-filed returns and accompanying funds, identify the items we've marked and explain how they play into this process. We do not, however, anticipate asking our expert to comment in any way on the particular facts of this case.
>
>Let [us] know if you need more information about this. We're happy to provide it informally. Our intention is to approach this in an openhanded fashion.

Exhibit 6. In another e-mail a few minutes later, we indicated that we were not even certain that the testimony in question is "expert," since we were seeking to provide descriptive rather than opinion testimony. Exhibit 7. Further, we made sure that the exhibits in question, as well as Mr. Dubinsky's resume, were available for the government's review on Friday, January 12, 2007. However, the above-quoted proffer, much more detailed than the expert proffers provided by the government, still was not satisfactory to the government. By e-mail of January 11, 2007, the government stated:

>You have provided the topics, but you have not provided a summary of the substance of the testimony in any meaningful way. What will Dubinsky actually testify to as to how the IRS distinguishes between income and non-income items and as to how the IRS deals with late filed returns? Which items that you marked will he identify (even approximately)? How is it that he will comment on the items you have marked -- from this case -- without in substance commenting on the facts of this case?

> Is Dubinsky going to define what a loan is in any other terms other than the precise definition in the jury instruction?  Is he going to suggest, imply or insinuate [the] IRS uses any criteria to distinguish income from a loan other than that provided in the jury instructions?  Is he going to reference particular IRS materials and legal materials (cases, etc) and the law?
>
> Can you please provide me his resume in advance of our review of your documents.

Exhibit 8.  Again, we responded immediately:

> Thanks for the clarification.  While I respectfully disagree that responding to these specific, detailed questions is within the scope of our discovery obligations, or that responses to them would be necessary to the motion in limine you are planning to file, I'll nonetheless try to get you some more detailed information and will provide it to you as soon as possible.

Exhibit 9.  The next day, January 12, 2007, we sent the government the even more detailed proffer attached by the government to its instant motion, along with the following note:

> Please see our enclosed supplemental expert disclosure.  Please consider it to apply both to Mr. Dubinsky and to Mr. Wilner.  This disclosure is intended to supplement, not substitute for, the several expert disclosures we previously have provided.  If you have any authority suggesting that these multiple disclosures do not satisfy our reverse Rule 16 obligations, please cite it so we can review it.

Exhibit 9.   The government did not respond to our request for authority, instead filing its instant motion.  We think it significant that we have been unfailingly responsive to the government's request for information about our expert testimony, providing substantially more detailed information about it than the government has provided about its experts, but nonetheless the government has suggested that our proffer is in some way insufficient.

Turning to the substance of our proposed expert testimony, as we have tried to make abundantly clear to the government, we are well aware that instructing the jury on the law is the Court's exclusive province.  We also know that we cannot present expert opinion testimony to

5

the effect that our client did not mean to violate the tax laws.  This does not mean, however, that no witness can legitimately testify about the procedures and publications of the Internal Revenue Service and other government agencies relating to distinguishing between, *e.g.*, loans, gifts and income.  Some of these government forms constitute admissions by the government.  Moreover, this testimony relates to the information available in the public arena on these subjects, which in turn relates to the defendant's reasonable state of mind concerning what could, credibly, be deemed a loan or a gift.  This in turn relates to the defendant's specific intent to commit tax fraud, and to the presence or absence of good faith, which are critical issues in this case.  *See generally Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (expert's testimony about IRS procedures deemed probative).

## II.     Brownell's Dealings With the IRS

As the government acknowledges, documents showing Mr. Brownell's dealings with the IRS relating to the tax years at issue in the indictment can relate to Mr. Brownell's good faith, a complete defense in this case. Government's Motion at 6.  We have shown the documents at issue to the government.  The government's hearsay objection to these documents does not appear to have merit, since they are plainly business records, are in some cases admissions of the United States,[1] and are in any case admissible to show Mr. Brownell's state of mind.  Further, the government is seeking a lesser-included offense instruction as to failure to file tax returns in violation of 26 U.S.C. § 7203.  The IRS' treatment of Mr. Brownell's tax status is directly relevant to that offense as well.

---

[1]The government contends that these cannot be admissions because the IRS is not a party to this case.  The IRS is, however, a United States government agency, and the United States is a party to this case.

We see no basis for the government's demand that we be precluded from mentioning these documents during opening statement. Opening statement is a critical stage of Mr. Brownell's trial, and an irreplaceable opportunity to make a first impression with the jury. We know the evidentiary rules, just as the government does, and if we promise evidence in opening statement that we fail to deliver, the government can call us to account for it in closing argument. This evidence is not so controversial, unusual, inflammatory or otherwise extraordinary to warrant any bar on our referencing it in an appropriate fashion in opening statement.

### III.    Government's Motives or Practices

As to the government's motive in bringing this case, we are unsure at this moment whether we will seek to argue that issue before the jury and will commit not to include that in our opening statement. Nor do we have any intention of eliciting testimony, expert or otherwise, that some non-filers are not criminally prosecuted. *See* Government's Motion at 7. Nor would undersigned counsel imagine telling the jury that he is a former prosecutor, or indeed any other background information about himself. *See* Government's Motion at 8 n.9. It is noteworthy, however, that Mr. Brownell was indicted well after his colleagues Messrs. Douglas Jemal, Esherick and Norman Jemal, based on essentially the same conduct alleged against Douglas Jemal and Blake Esherick, plainly in an attempt to pressure him into cooperating with the government's investigation and prosecution of Messrs. Jemal and Esherick. Particularly given the IRS' treatment of Mr. Brownell for the same tax years, we are not prepared to concede at this time that the government's motive in initiating this prosecution is irrelevant for all purposes in this case. In *United States v. Burge*, 990 F.2d 244, 248-49 (6th Cir. 1992), *cert. denied*, 508 U.S. 924 (1993), the Court held:

> Insofar as evidence of the government's motives may cast doubt on the credibility of evidence or testimony presented by the government, it is certainly relevant to the defendant's case. *See, e.g., United States v. Salerno,* 937 F.2d 797 (2d Cir.1991) (refusal to allow inquiry into bias of FBI agents who selectively recorded and transcribed conversations of defendant was reversible error), *rev'd on other grounds,* 505 U.S. 317, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992).

Moreover, to the extent an IRS document concerning Mr. Brownell is directly inconsistent with the government's theory of criminality in this case, it is patently an admission by a party-opponent, and admissible.

### IV.     Limiting Scope of Cross-Examination

We do not believe that there is any need for the Court to address at this time whether either party should be permitted to exceed the scope of direct examination when cross-examining a witness. This trial will be far shorter than the Jemal trial in any event.

Respectfully submitted,

JOHN E. BROWNELL

By Counsel:

/s/

_____
Barry Coburn (DC Bar #358020)
Jeffrey C. Coffman (DC Bar #493826)
TROUT CACHERIS PLLC
1350 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Tel: 202-464-3300
Fax: 202-464-3319

<u>Certificate of Service</u>

      I hereby certify that I served a true copy of the foregoing Opposition upon counsel of record in this case, this 17th day of January, 2007, by ECF.

/s/
_____
Barry Coburn