UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 06-077 (RMU) |
| | : | |
| JOHN E. BROWNELL | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTIONS FOR MISCELLANEOUS RELIEF**

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following reply to the defendant's opposition to the Government's Motions for Miscellaneous Relief.

## I. INTRODUCTION

The one thing that emerges loud and clear from the Defendant's Opposition to the Government's Motions for Miscellaneous Relief is the defendant's unwillingness to provide necessary information as to potentially inflammatory issues, his unwillingness to disavow inflammatory arguments, and his unwillingness to provide information whereby the Court can even consider appropriate and measured requests of the Government to limit testimony, statements of counsel, or obviously irrelevant arguments.

## II. MOTION IN LIMINE TO EXCLUDE DEFENDANT'S PROPOSED EXPERT TESTIMONY

The government acted with urgency when the expert testimony notice in the pre-trial submission provided no more detail than had been provided by the defense provided in the brief email exchange and when the defendant's exhibit list revealed 60 marked exhibits of legal materials, including such items as reported federal cases and statutory and regulatory materials. See generally, Defendant's Exhibit List, Exhibits 121-180. The government thereafter diligently

sought that the defense inform the government of the specifics of the testimony, consistent with the criteria of Rule 16(b)(1)(C).

In response to such requests, the defense provided what purported to be a more detailed notice. In fact it was no more detailed, it was simply longer, and despite its length failed to provide any actual notice of the contents of the witness's testimony. Concluding that it was vital to raise this issue promptly, government counsel, in a telephone conversation with defense counsel on Thursday, January 11, 2007, informed the defense counsel that the government was going to file a motion on this matter but that it would not do so prior to close of business Friday, January 12, 2007 (because government counsel sought to review the defense exhibits first). The government attached to its pleading what appeared to be the most complete statement of the witness's testimony, aware that the Court also had before it the defendant's notice in the pre-trial submission.

The defendant's opposition primarily addresses the reasonableness of the timing of the defendant's disclosures, and thus addresses issues not in dispute. The government is not raising any procedural issues based on timing. The government recognizes that issues are likely to become more focused and require judicial attention as trial grows closer. In any event, reasonableness of the timing of disclosures has nothing to do with the reasonableness of the substance of the disclosures.

In this regard, the critical issue is precisely that of substance, and on that issue the defendant's opposition offers virtually <u>nothing</u> as to the contents of the proposed testimony or the

adequacy of his disclosures.[1] Again, defendant merely announces the **topics** about which the expert will testify. This is plainly inadequate.

Indeed, the one paragraph that defendant actually offers as to substance only makes clear that the contemplated testimony is precisely as the government fears and is absolutely inadmissible. The defense claims it wants to elicit information – presumably statements of law – that is in the "public arena" (though the defendant adamantly refuses to state what that information actually is). However, whether information is in the "public arena" is absolutely irrelevant unless the defendant knew of the information and reasonably relied on it. "Case law on which the defendant did not in fact rely is irrelevant because only the defendant's subjective belief is at issue." United States v. Harris, 942 F.2d 1125, 1132 n.6 (7th 1991). As another court has made clear: "Willfulness is personal. It relates to the defendant's state of mind. It does not exist in the abstract. Unless there is a connection between the external facts and the defendant's state of mind, the evidence of the external facts is not relevant." United States v. Curtis, 782 F.2d 593, 599 (6th Cir. 1986) (disallowing expert testimony as to uncertain state of law in tax evasion prosecution "unless defendant could establish that he was confused or had relied on the expert's

---

[1] The defendant's comparison of his expert notice with the government's disclosure is inapt for several reasons. First, the government provided the information in early December, as part of the exchange of materials in anticipation of the pre-trial submission. Second, defendant's counsel actually observed the testimony of the witnesses at issue as a spectator in the Jemal trial, and knows the contents of each witness's testimony. Third, certain of the summary materials have been provided in draft. Fourth, defense counsel has not requested more detail.

In contrast, Mr. Dubinsky's testimony remains a mystery, despite repeated efforts by the government to learn what he will say. It is particularly noteworthy that thoguh defense counsel sought to continue a dialogue on this topic, counsel has not responded in any meaningful way to the government's requests.

advice") (emphasis supplied).[2]  Defendant clearly seeks to use this witness to construct an alternate legal landscape, and suggest it is a legal landscape that the defendant may have perceived.

Thus, the law could not be more clear: "Experts are supposed to interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations."  United States v. Curtis, 782 F.2d at 599 (emphasis supplied).  "[T]he judge is the sole arbiter of the law and its applicability."  Specht v. Jensen, 853 F.2d 805, 809 (10th Cir. 1988).  In describing how such testimony "is detrimental to the trial process," the Tenth Circuit stated:

> If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same. Given the proclivity of our brothers and sisters at the bar, it can be expected that both legal experts will differ over the principles applicable to the case. The potential is great that jurors will be confused by these differing opinions, and that confusion may be compounded by different instructions given by the court.

Id. at 809 (citations omitted).[3]

---

[2]   See also, United States v. Herzog, 632 F.2d 469, 473 (5th Cir. 1980) (affirming trial court's exclusion of proposed expert testimony: "None of the questions concerning [the expert's] view of the tax laws could be relevant to the willfulness issue, the court reasoned, since [the expert's] opinion that the laws are complex could not shed any light on whether Herzog had been confused by any such complexity at the time he submitted the withholding forms.").

[3]   See also Marx & Co. v Diners' Club, Inc., 550 F.2d 505 (2d Cir. 1977) (error to permit securities lawyer to testify as to certain legal standards), cert. denied, 434 U.S. 861 (1977):
> It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge. As Professor Wigmore has observed, expert testimony on law is excluded because "the tribunal does not need the witness' judgment . . . . The judge (or the jury as

The government has addressed above what it perceives to be the likely substance of the expert testimony – it has been forced to make assumptions because the defendant has not provided adequate information. But again, to pose the questions rhetorically serves to highlight the problems. Will the witness testify: "The definition of a loan is X."; "IRS Publication X defines a loan as Z."; "the Supreme Court in Duberstein defined gift as X."; "the such-and-such tax practice manual sets forth the following criteria for determining what a loan is."; "the X Treasury Ruling defines loan as X." The defendant will not say. Assuming the witness were to so testify, would the government then be free to cross-examine on cases or materials the witnesses did not consider?

The defense contends that certain IRS materials constitute "admissions" of the government. However, the defendant has provided the government no notice of what statements are contended to be "admissions," or whether these are statements of "law" or assertions of "fact." If the defendant seeks to rely on IRS materials, such as IRS publications, rules and

---

        instructed by the judge) can determine equally well . . . ." The special legal knowledge of the judge makes the witness' testimony superfluous.

Id. at 509-10 (citations omitted; emphasis in original); United States v. Zipkin, 729 F.2d 384, 387 (6th Cir. 1984) ("A jury listening to a bankruptcy judge testify as to a question of bankruptcy law would be expected to give special credence to such testimony. It was not proper for the witness to testify as to a legal conclusion; it is the sole function of the trial judge to instruct the jury on the law."); Good Shepherd Manor Found., Inc. v City of Momence, 323 F.3d 557, 564 (7th Cir. 2003) ("The district court correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible."); United States v. Weitzenhoff, 35 F.3d 1275, 1287 (9th Cir. 1993) ("The court's admission of expert testimony on contested issues of law in lieu of instructing the jury was manifestly erroneous."), cert. denied, 513. U.S.1128 (1995)

regulations, to advance his legal position as to the definition of loans, he certainly may raise these arguments as part of requests for additional jury instructions. It is improper present these to the jury through an expert "fact witness."

Based on the present record, there is no basis to admit any expert testimony. The government renews its request that the defendant provide a real notice of the substance of the testimony, that the Court permit further briefing and argument thereafter, and that there be no mention of such testimony in the defendant's opening statement pending further rulings by the Court.[4]

### III. BROWNELL'S DEALINGS WITH THE IRS AND CONTENTIONS SURROUNDING THE BRINGING OF THE CHARGES

The issue in the opening statement is not whether the defendant promises evidence that he then fails to deliver – it is whether the defendant promises inadmissible evidence that prejudices the right of the government to a fair trial, even if the evidence is subsequently precluded as irrelevant or because issues of prejudice and confusion outweigh probativeness.

In this regard, a representation by the defense counsel that the evidence will show that the defendant sought in good faith to resolve matters in 2005 is not objectionable. What is objectionable, however, would be references to self-serving statements by defendant or his agents (his attorneys) in documents, or arguments that ask the jury to infer from the fact that the IRS engaged the defendant in civil negotiations that the "government" viewed this as a civil matter

---

[4] Notably, in the Jemal case, where a full proffer was in fact made, this Court made the decision to keep counsel from mentioning such expert testimony in his opening statement. See, United States v. Jemal, et al, Transcript of Pretrial Hearing, August 8, 2006 at 42-43. The Court has even less basis to evaluate the defendant's proposed expert testimony in this case, and, correspondingly, more basis to exclude it – at least from the opening statement for now. Indeed, it may be the case that after the government's case, the defense will not need to call an expert.

inconsistent with criminality. This argument is flatly improper and has been rejected. In <u>United States v. Pandilidis</u>, 524 F.2d 644, 650 (6th Cir. 1975), the defendant sought to introduce evidence of the actions of the IRS after he late filed certain returns in order to "demonstrate that an agent of the government believed the defendant guilty of no more than a civil offense." This evidence was excluded on the grounds that the conduct of the IRS was not an "admission" against the government:

> The defendant sought to introduce this evidence, which the defendant thought demonstrated that an agent of the government believed the defendant guilty of no more than a civil offense, to establish that defendant was not guilty of the criminal offense with which he was charged. While evidence of contradictory statements may be used to impeach a government agent, they may not be introduced to prove the truth of the statements offered. <u>United States v. Santos</u>, 372 F.2d 177 (2nd Cir. 1967); <u>United States v. Powers</u>, 467 F.2d 1089 (7th Cir. 1972).

<u>See also</u>, <u>United States v. Arroyo</u>, 406 F.3d 881, 888 (7th Cir. 2005) (government agents are not party-opponents for the purposes of Rule 801(d)(2)).[5]

Even if the "statements" of the IRS were considered "admissions" by the government (and thus satisfied a hearsay exception), the defendant's factual argument is flawed, dangerous, and should not be countenanced on relevance grounds, for the fact that the IRS engaged in civil negotiations with the defendant in the spring and summer of 2005 does not, and cannot, constitute any "admission" related to "the government's" view of Brownell's criminal culpability. First, it is not uncommon that certain matters are handled both civilly and criminally, and that a victim of a fraud may seek to pursue civil remedies, notwithstanding the fact that law

---

[5] There is some contrary authority. See, <u>e.g.</u>, <u>United States v. Van Griffin</u>, 874 F.2d 634, 638 (9th Cir. 1989) (court should have admitted DOT manual).

enforcement may prosecute the same facts criminally. The existence of civil remedies has nothing to do with the existence of parallel criminal remedies, and the pursuit of one does not logically preclude the other. Any implication to the contrary would be improper. Second, the individuals with whom Brownell dealt had no knowledge of the full range of his conduct or all the facts that are charged in the Indictment. Third, even if the actions of the civil components of the IRS can be viewed as the "opinions" or specific persons of the IRS that the matter should be handled civilly, such "opinions" are irrelevant.

Morever and most disturbing, a clue to the argument the defendant may seek to make is suggested in his pleading, namely, that the government only prosecuted Brownell to secure his cooperation. The defendant explicitly declines to rule out bringing this contention before the jury. The government only notes the following: the evidence is uncontested that Brownell, a skilled highly compensated accountant, failed to file personal returns for over a decade; the government would have faced significant joinder issues if it tried to include Brownell in the prior Jemal indictment (for the evidence did not demonstrate that Brownell had involvement in the alleged bribery scheme), and, the evidence demonstrated that Brownell was in fact a participant in the wire fraud scheme of which Douglas Jemal and Blake Esherick were found guilty. Defendant's bald assertion that the facts of the Brownell case are the same as those of the Jemal prosecution is demonstrably not correct, and the charging considerations in the Brownell case, involving the prosecution of a skilled accountant for tax fraud, are likewise demonstrably different. Defendant's insistence that he seeks to hold this argument in reserve, and not disavow that he may attempt to raise it at trial, is truly chilling, and gives a sense of the wholly objectionable defense the defendant may pursue (and highlights why the government filed this set

of motions). Allegations that impugn the charging decision are extremely prejudicial – they are easily made but difficult to rebut without bringing before the jury evidence surrounding the charging considerations in this case.[6]

The defendant's response on this issue provides all the more reason that the government's requests that the defendant be required to address potentially inflammatory and prejudicial arguments (and potentially irrelevant expert testimony) be granted.

### IV.  MOTION TO LIMIT CROSS

It is in both parties' interest to have a good sense of the ground rules in advance of trial. The fact that this trial will be shorter than the Jemal trial is all the more reason to enforce the rules on the scope of examination.

---

[6]  The Burge case, cited by the defendant, is inapposite. The Sixth Circuit affirmed the trial court's decision that prohibited the defense from calling a law enforcement agent to elicit statements that he threatened the defendant with prosecution if he did not cooperate, and the court analyzed the proffered evidence in terms of its potential use for impeachment: "In this context, the testimony regarding the government's motives in prosecuting the defendant would not, in any significant way, reflect on the credibility of those witnesses." United States v. Burge, 990 F.2d 244, 249 (6th Cir. 1992). The broad language cited by the defendant is dicta. Indeed, Burge. has been cited and relied on to support the exclusion of testimony that does not directly bear on a witness's credibility. See United States v. Owens, 159 F.3d 221, 227 (6th Cir. 1998).

WHEREFORE, the government requests its Motions be Granted.

RESPECTFULLY SUBMITTED,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____
MARK H. DUBESTER
ASSISTANT UNITED STATES ATTORNEY
DC Bar No. 339655
555 Fourth Street, N.W., Room 5917
Washington, D.C. 20530
Ph. (202) 514-7986