UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
**UNITED STATES OF AMERICA**  )
                              )
   v.                         )   Criminal No. 06-0077 (RMU)
                              )
**JOHN E. BROWNELL,**         )
                              )
   **Defendant.**             )
_____)

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR PRETRIAL
RULINGS ON (1) ADMISSIBILITY OF BUSINESS RECORDS AND
(2) AUTHENTICITY OF DOUGLAS DEVELOPMENT RECORDS; AND
DEFENDANT'S CROSS-MOTION TO
PRECLUDE USE OF LATE-DESIGNATED GOVERNMENT EXHIBITS**

Defendant John E. Brownell, through undersigned counsel, respectfully responds as follows to the Government's Motion For Pretrial Rulings on (1) Admissibility of Business Records and (2) Authenticity of Douglas Development Records. We also respectfully cross-move to preclude the government from utilizing exhibits that have been, and continue to be, designated, renumbered and produced to us, for the first time, long after the Court's deadline for finalization of the parties' exhibits and exhibit lists.

**I.      Government's Motion**

There are a number of issues conflated in the government's motion. In mid-January, the government asked us if we would stipulate to the authenticity of, and application of the business records exception to, a long series of Douglas Development Corporation financial documents. (Exhibit A hereto; January 18, 2007 correspondence from the prosecutor.) We informed the government orally, at a meeting at the United States Attorney's Office on February 1, 2007, that while we did not think we disputed the authenticity of Douglas Development Corporation's

financial records as a general matter, we were not prepared to stipulate to the application of the business records exception.[1]  That remains our position.  We do not know of any authority for the government's request that the Court make a pre-trial authenticity finding concerning these exhibits absent any evidentiary record.  Nor are we prepared to stipulate in wholesale fashion to the admissibility of these records pursuant to F.R.E. 403, particularly since a number of them appear irrelevant and the government has made no specific proffer of relevancy for any of them in its motion.

Also on January 18, 2007, the government sent us a separate letter (Exhibit B), relating to long series of financial records that it contends are self-authenticating documents pursuant to F.R.E. 902(11).  According to the government's letter, it intends to move this entire series of financial records into evidence "immediately after opening statements."  The government did not reiterate this request at our meeting at its offices on February 1.  However, it appears to be the principal focus of its instant motion.

While we have not yet carefully parsed each custodial affidavit with respect to Mr. Brownell's banking and other financial records, we doubt that we will have an issue as to the authenticity of most or all of these records.  We simply have no interest in interposing frivolous authenticity objections to exhibits, thereby unnecessarily elongating and complicating this trial.  Admissibility, however, is a different question.  The government's position appears to be, essentially, that every single personal financial record relating to Mr. Brownell is admissible against him in wholesale fashion in this criminal tax prosecution.  We respectfully but vigorously

---

[1]Some of the documents listed in the government's letter, particularly Government's Exhibit 86, appear to be misidentified.  This may be a result of the government's changing its exhibit numbers since the pretrial conference.  *See* below.

disagree. Quite a number of these records have no relevancy to the charges at issue, and are substantially prejudicial. For example, these records contain references to Mr. Brownell's purchases of alcohol. The government's case against Mr. Brownell, as we understand it, is that he and Mr. Jemal, his co-conspirator, disguised reportable income as loans and other payments. Mr. Brownell's spending habits and other aspects of his financial history would appear not to be probative, one way or the other, of whether Mr. Brownell is guilty of the charges in the indictment, though they could well prejudice the jury against him by giving the sense that he is generally financially irresponsible or profligate. Further, since such evidence is not intrinsic to the charges, its admissibility would have to be determined pursuant to both F.R.E. 404(b) and 403. The government's opportunity to designate, and litigate the admissibility of, such other crimes evidence has long since passed. Accordingly, we respectfully object to the government's announced intention to seek wholesale admission of hundreds of pages of Mr. Brownell's miscellaneous financial records, without even the benefit of a witness' explanatory testimony, or any specific proffer of their relevancy, immediately after opening statement. To the extent particular financial records are shown to be relevant and otherwise admissible during the course of the trial, we will not object to their admission into evidence.

## II.     Defendant's Cross-Motion

The government's exhibits and exhibit list in this case are a fast-moving target, which would appear not to be what is envisioned by this Court's Standing Order for Criminal Cases.

On January 10, 2007, in accordance with the Court's Standing Order, the parties exchanged exhibit lists and provided them to the Court. The pretrial conference in this case was held on January 19, 2007. On January 19, the parties agreed to exchange and provide to the

3

Court revised exhibit lists on Tuesday, January 23, 2007. We did so. The government however, has never, so far as we know, updated its exhibit list since the original list it provided on January 10.

On January 24, 2007, we provided a CD containing images of our exhibits to the government. Also on January 24, we picked up two CD's from the government which then purported to be all of the government's exhibits. These exhibits were numbered differently from the government's exhibits that previously had been provided to us in discovery, and contained a number of documents that had not previously been provided to us. Moreover, one of the disks was in Adobe Acrobat (pdf) format, while the other, containing different exhibits, used a new, proprietary imaging and viewing software called "IPRO." Nevertheless, we tried as best we could to understand the government's new numbering system and integrate the new exhibits into our trial preparation.

This, however, was not the final version of the government's exhibits. At our above-referenced meeting at the United States Attorney's Office on February 1, 2007, the government provided us with yet another CD of exhibits. Unlike the government's previous set of exhibits, which contained exhibits numbered 1 through 148, this new CD contained exhibits numbered from 1 through 159. All of these were saved using the new IPRO software, making it impossible for us to copy them onto a hard drive or another disk. Moreover, these exhibits are substantially renumbered from the government's prior exhibits, and a number of the exhibits previously marked and provided to us in discovery, which we had intended to reference during the trial, are *omitted* from the new CD. On Saturday, February 3, undersigned counsel e-mailed the prosecutor to ask about these omitted exhibits. Exhibit C. The prosecutor indicated that he

would have someone call us about the omitted exhibits (*see* Exhibit C), but that has not yet occurred.  Undersigned counsel spent much of the weekend of February 3-4 going through the government's new exhibit CD, trying to determine how the renumbered exhibits corresponded to the previous numbering system the government used, updating witness outlines with new government exhibit numbers, and attempting to make sure that the omitted government exhibits remained accessible to us at trial.

Even that, however, did not close the book on the government's exhibits.  On Saturday, February 3, 2007, the government sent us two e-mails, in sequence, containing what appear to be yet additional purported government exhibits, not yet numbered.  *See* Exhibits D and E hereto.  In the first e-mail, the prosecutor states:

> These are snapshots of the server screens containing a list of the files where various of the computer-documents were found.  In some instances, there are excerpts of the file list, and there are skips in the alphabetical order, in that the list of files would take more than one page.  Ms. Hwang may use these to describe where some of the documents were found on the server.

We do not even understand what this e-mail means.  Attached to it are what appear to be folder and file lists from a computer or server.  Exhibit D.  The government's second e-mail, sent a few minutes later, states:

> I asked Ms. Hwang of the FBI to print out the other "imaged" documents that were stored in the computer file of your client where the 1996 W-2 was found.  They are listed in the screen shot that I also sent you.

Exhibit E.  This e-mail attaches a series of what appear to be draft corporate, partnership or real estate tax forms which would seem not to relate in any way to the personal income tax issues presented in this case.  Exhibit E.  None of these documents appear on the new CD provided to us on February 1.

Then, yesterday evening, February 5, 2007, our client came home to find a UPS package from Citibank containing a copy of a subpoena that had been served upon it on *February 2, 2007*, for Mr. Brownell's financial records. Exhibit F.[2]

The Court's reason for requiring the parties to strictly adhere to rules relating to the filing of a joint pretrial statement, with exhibits, is plainly to minimize the risk of surprise, disorganization and waste of time during final trial preparation and at trial. The constantly changing designations of the government exhibits would appear to comply neither with the letter nor spirit of these requirements. Accordingly, we respectfully request that the Court order that the government be precluded from supplementing or otherwise changing the exhibits contained in the CD it provided to us on February 1, 2007.

Respectfully submitted,

JOHN E. BROWNELL

By Counsel:

/s/
_____
Barry Coburn (DC Bar #358020)
Jeffrey C. Coffman (DC Bar #493826)
TROUT CACHERIS PLLC
1350 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Tel: 202-464-3300
Fax: 202-464-3319

---

[2] We note parenthetically that many of the subpoenas issued to witnesses by the government in this case purport to compel the witness' attendance in court on February *8*, 2007. February 8 has never been a trial date in this case.

Certificate of Service

    I hereby certify that I served a true copy of the foregoing Response and Cross-Motion upon counsel of record in this case, this 6th day of February, 2007, by ECF.

/s/
_____
Barry Coburn