UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Action No.: 06-0077 (RMU) |
| : | |
| JOHN E. BROWNELL, : | **FILED** |
| : | |
| Defendant. : | MAY 17 2007 |
| | NANCY MAYER WHITTINGTON, CLERK |
| | U.S. DISTRICT COURT |

**FINDINGS OF FACTS & CONCLUSIONS OF LAW**

### I. INTRODUCTION

On February 8, 2007, the defendant pleaded guilty to tax evasion in the year 1999. Specifically, the defendant admitted that he failed to pay taxes on $10,000 that he received from his employer, Douglas Development Corporation ("DDC"). The court held an evidentiary hearing on February 13-14, 2007 to determine the applicable tax loss attributable to the defendant. Based on its review of the evidence presented at the evidentiary hearing and the parties' memoranda submitted in connection thereto, the court makes the following findings of facts and conclusions of law.

### II. FINDINGS OF FACT

#### A. The Two Checks Totaling $47,000 Constitute Unreported Income

1. In October 1995, DDC issued two checks totaling $47,000 to the defendant. Govt's Proposed Findings of Facts & Conclusions of Law[1] ("Govt's Mcm.") Ex. 1 at 1. One of the checks contained the description "bonus pay." *Id.*

2. One of the checks was recorded on DDC's general ledger as a loan from DDC to the

---

[1] The government's proposed findings of fact contain the three sets of exhibits that the government submitted to the court at the evidentiary hearing.

defendant. Tr. (Feb. 13, 2007) at 73.

3. In filling out documents related to a mortgage application for the purchase of his home in Rockville, Maryland, the defendant represented that the $47,000 constituted a bonus. Govt's Mem. Ex. 3 at 23.

4. The government has shown, by a preponderance of the evidence, that the two checks totaling $47,000 constitute unreported income, rather than a loan.

### B. The PVB Payments Totaling $228,616.88 Constitute Unreported Income

5. In May 1996, the defendant obtained a $60,000 line of credit from Potomac Valley Bank ("PVB"), secured by his home in Rockville, Maryland. Tr. (Feb. 13, 2007) at 59.

6. After opening the line of credit, the defendant wrote a check payable to DDC for $50,000. *Id.* The defendant's loan to DDC was recorded in DDC's general ledger as loan payable. Def.'s Proposed Findings of Facts & Conclusions of Law ("Def.'s Mem.") at 10.

7. From 1996 to 2004, DDC made payments to the defendant's home equity line of credit account at PVB. Tr. (Feb. 13, 2007) at 60-61.

8. The payments that DDC made to the defendant's PVB line of credit in the years 1996 - 20004 total $278,616.88. *Id.* All of the payments were recorded in DDC's general ledger as a loan payable.

9. Of the $278,616.88 that DDC paid to the defendant's PVB line of credit account, $50,000 represents DDC's repayment of the loan that the defendant made to DDC. Def.'s Mem. at 9.

10. Although the defendant contends that the $228,616.88 constituted a loan, rather than income, from DDC, the court concludes that the government has shown by a preponderance of the evidence, that the amounts constitute unreported income.

2

11. First, the defendant was involved in recording the payments in DDC's books so that the payments appeared as loan repayments from DDC to PVB. Tr. (Feb. 13, 2007) 20-24; Tr. (Feb. 14, 2007) 43-44, 89-90.

12. Second, for eight and a half years, and almost immediately after each payment that DDC made to his PVB account, the defendant wrote a check on the PVB account for an amount closely approximating the DDC deposit amount. Tr. (Feb. 13, 2007) at 64-68; Govt's Mem. Ex. 1 at 11-18.

13. Third, in 2005, approximately seven years after DDC started making the purported loans by sending money to the defendant's PVB account and after the government's investigation began, the defendant received a bonus from DDC, which he used to "pay" the purported loans. Def.'s Mem. at 15.

### C. Other Payments Totaling $ 47,700 Constitute Unreported Income

14. On May 14, 1999, the defendant wrote a check to DDC in the amount of $20,000; the check described the payment from the defendant to DDC as a loan. Def.'s Mem. at 16 & Ex. O. On December 30, 1999 and on October 30, 1999, DDC issued two checks for $20,000 each to the defendant. The checks were coded in DDC's books as loans from DDC to the defendant. Def.'s Mem. at 16. Assuming, as the defendant does, that one of the $20,000 check from DDC to the defendant constitutes a repayment for the May 14, 1999 loan,[2] the court concludes that the other $20,000 check constitutes income, rather than a loan, because

---

[2] The defendant does not state which of the two $20,000 checks constitute a repayment of the May 14, 1999 loan. The court notes that it would be natural to conclude that the first check (the check dated October 30, 1999), rather than the second check (dated December 30, 1999) constitutes a repayment.

3

there is no indication that the defendant intended to repay that amount to DDC.

15. On March 1, 2002, DDC issued a $9,000 check to Construction by Design, Inc. to repay the contractor for work it did on the defendant's rental property. *Id.* at 15. The check is recorded on DDC's books as a loan from DDC to the defendant. Although the $9,000 was recorded as a loan from DDC to the defendant, there is no indication that the defendant ever repaid or intended to repay the $9,000 to DDC. Because there is no indication that the $9,000 was intended as a loan from DDC to the defendant, the court concludes that it constitutes unreported income.

16. On June 21, 2002, DDC wrote a $8,700 check to Tex-Mex Construction, Inc. to repay it for the work it did on the defendant's rental property. *Id.* The check is recorded on DDC's books as a loan from the defendant to DDC. There is no indication that the defendant ever repaid or intended to repay the $8,700 to DDC. Because there is no indication that the $8,700 was intended as a loan from DDC to the defendant, the court concludes that it constitutes unreported income.

17. The defendant received a $10,000 check from DDC's attorneys. Because the defendant plead guilty to evading taxes in relation to this check, the court includes this amount in its determination of the tax loss.

18. On December 23, 1998, the defendant received a check for $10,000 from Joseph Cayre. Because the government has not offered any information concerning this payment, the court concludes that it has not met its burden of proving, by a preponderance of the evidence, that it constitutes unreported taxable income to the defendant.

19. On June 26, 2001 DDC wrote a $2,984.83 check to the defendant's PVB business loan

account. Def.'s Mem. at 16. Because the government has not offered any information concerning this payment, the court concludes that it has not met its burden of proving, by a preponderance of the evidence, that it constitutes unreported taxable income to the defendant.

20. The defendant received $3,000 in the form of three Traveler's Checks in June 2003. Govt's Mem. at 23. The court concludes that the government has not met its burden of proving, by a preponderance of the evidence, that it constitutes unreported taxable income to the defendant.

21. The government introduced evidence regarding a "check kite" between May - June 2002. *Id.* Because the government has not offered any information concerning the tax consequences of the "check kite," the court concludes that it has not met its burden of proving, by a preponderance of the evidence, that the payments involved in the check kite are unreported taxable income.

### D. The Defendant's Intent

22. Based on the documentary and testimonial evidence presented at the hearing, the court concludes that the government has shown, by a preponderance of the evidence, that the payments at issue were income, rather than loans. An overview of the evidence presented at the evidentiary hearing reveals the following:

23. The grand jury subpoenaed from DDC all records in the nature of loan agreements, loan schedules, repayment plans, or similar documents. DDC, however, did not provide any documents in response to the subpoena. Govt's Mem. at 10 & Ex. 5 at 22-23.

24. In January 2005, just a few weeks after the subpoenas were issued, DDC increased the defendant's compensation to $300,000. *Id.* at 11. The defendant contends that DDC increased his salary in 2005 because the company, which was historically "cash-poor," sold

some of its assets. Def.'s Mem. at 20. The defendant's contention is undermined, however, by DDC's practice of giving purported loans to employees such as the defendant.

25. DDC gave the defendant a one-time bonus of $420,683.07 gross (approximately $233,000 net) after the government's investigation began. Thereafter, the defendant wrote a check for $232,846.98 "to repay his outstanding loans to DDC." *Id.*

26. The defendant's income patterns also supports the government's argument that the defendant had substantial unreported income. The defendant received only a few, small salary increases in the years 1994 - 1999 (his salary in those years was approximately between $45,000 - $55,000). In 2000, however, his salary increased to over $150,000. That year, DDC's payments to the PVB line of credit account decreased. Govt's Mem. at 18. Even after the defendant received the salary increase, however, he did not repay any purported loans to DDC. *Id.* at 19. The defendant's salary was less than that of his subordinate. *Id.* at 19.

27. On December 30, 1993, the defendant wrote a memo to his employer, referring to a "quarterly bonus check," and stating that "[p]ayment in this manner is 100% non-traceable as compensation, thereby eliminating tax burdens on both sides." Govt's Mem. Ex. 3 at 1.

28. The defendant, an accountant, failed to file tax returns for 10 years.

29. The defendant made representations to financial institutions stating that the payments at issue were income. For example, on two October 2000 credit applications, the defendant represented to the financial institution that the PVB line of credit account was paid for by his employer. *Id.* Ex. 3 at 12; Govt's Mem. Ex. 5 at 16. Further, in contrast to his claims before this court, the defendant's applications for credit did not disclose that he owed his employer any money at all.

30. The defendant also represented to financial institutions that his income was much higher than his reported income. Govt's Mem. at 21. For example, the defendant submitted information to financial institutions stating that his income in the years 1994, 1995, 1996, and 1998 was over $100,000. *See generally* Govt's Mem. Ex. 3.

31. In 1995, the defendant's employer wrote a letter stating that the defendant "is paid both a base salary and bonuses. This is our current arrangement, this has been our arrangement for the past several years, and I expect this arrangement to continue in the future." Govt's Mem. Ex. 5 at 18.

32. Taken together, the defendant's actions show that he had a state of mind capable of calculating how to avoid taxes and that the payments that DDC made to him did not constitute bona fide loans.

### III. CONCLUSIONS OF LAW

33. The question of whether a payment is a loan turns on intent. "[T]he sine qua non of a bona fide non-reportable loan is the taxpayer's own intention to repay." *United States v. Pomponio*, 563 F.2d 659, 662 (4th Cir. 1977).

34. Pursuant to the now-advisory Sentencing Guidelines, tax loss equals 28% of any unreported income associated with tax evasion, unless a more accurate determination can be made. U.S.S.G. § 2T1.1(c)(1).

35. Under the advisory Guidelines, a court tasked with determining the total task loss should consider "all conduct violating the tax laws . . . unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1. *See also United States v. Feola*, 275 F.3d

216, 218 (2d Cir. 2001), *United States v. Hayes*, 322 F.3d 792, 801-02 (4th Cir. 2003).

36. The unreported income in this case is $323,316.88. The tax loss is $90,528.73 (28% x $323,316.88).

37. A tax loss or more than $80,000 and less than $200,000 results in a base offense level of 16.

## IV. CONCLUSION

For the foregoing reasons, the court finds and concludes that the tax loss attributable to the defendant is more than $80,000 and less than $200,000, resulting in a base offense level of 16. The court does not, at this juncture, make any rulings with respect to potential enhancements. Such issues may be raised in a memorandum in aid of sentencing.

_____  5/17/07
Ricardo M. Urbina
United States District Judge