UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**UNITED STATES**                  )
                                   )
     v.                            )     Crim. No. 06-CR-0077 (RMU)
                                   )
**JOHN E. BROWNELL,**              )
                                   )
          **Defendant.**           )
_____)

## DEFENDANT BROWNELL'S MOTION FOR
## RECONSIDERATION OF TAX LOSS FINDINGS

Defendant John E. Brownell, by counsel, respectfully moves this Court to reconsider its Findings of Facts & Conclusions of Law entered on May 17, 2007, as follows:

(1) Defendant requests that the Court reconsider its finding that Brownell received $47,000 in two checks from Douglas Development Corporation ("DDC") in October 1995, given that the two checks were in the amounts of $9,992.17 and $23,000.62, totaling $32,992.79;

(2) Defendant requests that the Court reconsider its finding that $228,616.88 in payments from Douglas Development Corporation to defendant's line of credit account at Potomac Valley Bank constituted unreported income;

(3) Defendant requests that the Court reconsider its finding that one of the $20,000.00 checks received by Brownell from DDC in 1999 constituted unreported income; and

(3) accordingly, Defendant requests that the Court reconsider its conclusions regarding the amount of tax loss and the base offense level applicable here.

The grounds for this Motion are set forth in the attached memorandum of points and authorities, which is incorporated by reference herein.

Wherefore, defendant respectfully requests that his Motion for Reconsideration be granted.

Respectfully submitted,

JOHN E. BROWNELL

By Counsel:


/s/ Barry Coburn_____
Barry Coburn (D.C. Bar #358020)
Gloria B. Solomon (D.C. Bar #358880)
Jeffrey C. Coffman (D.C. Bar #493826)
TROUT CACHERIS PLLC
1350 Connecticut Avenue, N.W.
Suite 300
Washington, D.C.  20036
Phone: (202) 464-3300
Fax: (202) 464-3319


**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of June, 2007, I served a copy of the foregoing Defendant Brownell's Motion for Reconsideration of Tax Loss Findings, with attached Memorandum and proposed Order, by ECF.


/s/ Barry Coburn_____

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                       )
**UNITED STATES**               )
                                       )
    **v.**                             )       **Crim. No. 06-CR-0077 (RMU)**
                                       )
**JOHN E. BROWNELL,**     )
                                       )
       **Defendant.**        )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT BROWNELL'S MOTION
FOR RECONSIDERATION OF TAX LOSS FINDINGS**

       Defendant John E. Brownell, by counsel, submits this Memorandum of Points and Authorities in support of his motion for reconsideration of the Findings of Fact & Conclusions of Law entered by the Court with regard to tax loss.

### INTRODUCTION

       Mr. Brownell respectfully requests that the Court reconsider its findings and conclusions regarding tax loss in several respects.[1] First, he submits that in its findings concerning the two October 1995 checks Brownell received from Douglas Development Corporation ("DDC"), the Court incorrectly used the gross amount referenced in notations on those checks rather than the actual amounts paid. Second, Brownell respectfully requests that the Court reconsider its conclusion that the government met its burden with regard to the $228,616.88 in payments from DDC to Brownell's line of credit account at Potomac Valley Bank ("PVB"). Brownell respectfully submits that the finding that these payments constituted unreported income rather

---

[1] By filing this motion for reconsideration on certain issues only, Brownell does not waive his objections to the other findings of fact and conclusions of law entered by the Court.

than loans overlooks critical dispositive, unrebutted evidence presented at the hearing – particularly the accounting workpapers recognizing these payments as loans and the testimony of DDC's outside accountants concerning the treatment of these payments in DDC's books. Brownell respectfully submits that weighing all of the evidence leads to the conclusion that the government failed to meet its burden of proof as to these payments, and that the PVB payments should not be treated as income for tax loss purposes.[2] Finally, Brownell requests that the Court reconsider its finding that one of the $20,000 checks received by Brownell from DDC in 1999 constitute unreported income.

We acknowledge that motions for reconsideration are frequently made and rarely granted. We further acknowledge that tax evasion is a serious offense to which Mr. Brownell pled guilty. Moreover, it is true that certain aspects of Mr. Brownell's conduct, such as the 1993 memorandum and certain of Mr. Brownell's credit applications, are problematic, though in our view their limited probative value as to the charged conduct is overwhelmed by unambiguous indicia of Mr. Brownell's and DDC's contemporaneous intent concerning the payments at issue. We have strictly limited the scope of this motion to three particular areas in which, we submit, the overwhelming weight of the evidence demonstrates that no tax evasion occurred.

Brownell fully acknowledges his guilty plea to one count of tax evasion relating to the $10,000 settlement check he received in 1999, and further offers no excuses for his failure to file tax returns for a number of years. However, Brownell respectfully submits that the issue of payments to his PVB line of credit is a separate question that needs to be analyzed on its own

---

[2] If the Court does not reconsider this finding, then the Court should at least reconsider the amount of tax loss associated with the PVB payments and give Brownell the $6,300 credit set forth in the government's tax loss calculations, for the portion of the payments by DDC that represent its payment of interest to PVB on DDC's original $50,000 loan from Brownell. *See* Gov't. Ex. 1, p.22.

facts. These payments were always understood by Brownell, DDC *and DDC's outside accountants* to be advances that would be repaid to DDC. Although there was no written loan agreement or repayment schedule for this loan, that was entirely consistent with the way DDC did business. The Court has heard voluminous evidence to this effect, both in this case and in during the Jemal/Esherick trial. Loans were routinely made to employees from DDC and from employees to DDC – and, indeed, between various DDC entities – without being reduced to writing. No evidence to the contrary was offered by the government. Brownell himself made a $50,000 loan to DDC in 1996 from his PVB line of credit without a loan agreement. Repayments on that loan were made to PVB and recorded in DDC's books. When the loan from Brownell was repaid, the payments continued as loans to Brownell. There was no attempt to conceal that these payments went to Brownell's benefit; instead, the documents attached to each payment request explicitly revealed this fact. DDC's outside accountant recognized these payments as loans to Brownell and, as Brownell's expert accounting witness testified without contradiction, these payments were expressly treated as loans in DDC's contemporaneously maintained books. Brownell continued to treat these payments as loans even after the criminal investigation commenced, and repaid them in 2005. Brownell respectfully urges the court to reconsider the evidence with regard to these payments and amend its conclusions to find that the government failed to establish that they were unreported income.

In analyzing this and the other issues in this motion for reconsideration, Brownell also respectfully urges the Court to compare the loss calculation methodology applied in this case to the methodology applied in calculating the loss applicable to Brownell's colleague, Blake Esherick, in *United States v. Douglas Jemal, et al.*, Crim. No. 05-0359-1, 3 (RMU). After a full trial, Mr. Esherick was convicted of tax evasion for 2001 and 2002, but was acquitted for 2003.

3

At sentencing, the Court expressly stated that it would "determine the tax [loss] based on the convicted conduct from 2001 and 2002, including unreported income." Transcript of Esherick Sentencing, March 15, 2007, at 14. As set forth in his final presentence investigation report, the unreported income figures were based only on amounts reported in Mr. Esherick's amended W2's filed in 2005. *See* Presentence Investigation Report, at 6-7. These amounts did not include any of the loan payments from DDC to Esherick challenged by the government. Despite the government's urging, the Court did not include any loss amount relating to the year for which Mr. Esherick was acquitted, nor did it include any loss amount based on the government's assertion of uncharged relevant conduct for 1999, 2000 and 2004. *Id.* at 13-14.

In this case, with the government's agreement and pursuant to an offer from the government, Brownell pled guilty to tax evasion for one year, 1999, and the government agreed to dismiss all remaining charges for other tax years. Yet in determining Mr. Brownell's tax loss, the Court included loss amounts not only for the years relating to the dismissed charges, but also for payments made in years that were outside of the indictment entirely, and included amounts for loan payments that were recorded in DDC's books in the same manner as loans to Mr. Esherick. Brownell respectfully submits that this treatment of his tax loss is fundamentally inconsistent and incompatible with the manner in which Mr. Esherick's tax loss was calculated. In the interests of justice and fairness, he respectfully urges the Court to recompute his tax loss in a manner consistent with that applied to Mr. Esherick.

## ARGUMENT

### A. Brownell Only Received $32,992.79 From the October 1995 Checks.

In findings 1 through 4 of its order, the Court determined that Brownell received $47,000 in unreported income in the form of two checks from DDC in October 1995. In fact, the two

4

checks received by Brownell were in the face amounts of $9,992.17 and $23,000.62, totaling $32,992.79. Although notations on the checks refer to gross amounts of $15,000 and $32,000, totaling $47,000, from which deductions are noted to reach the face amounts, there is no evidence in the record that Brownell received the gross amounts stated in the notations. Instead, he received only $32,992.79 from these payments, and the government's own tax loss calculation only includes $32,992.79 as the amount of income from these checks. Accordingly, Brownell respectfully submits that even if these checks constituted unreported income properly includable in calculating the tax loss amount in this case, the amount of income associated with these checks is $32,992.79, not $47,000.

    **B.    The Government Did Not Meet Its Burden of Proving that the Payments to Brownell's PVB Account Were Not Loans.**

        **1.    The preponderance of the evidence standard requires that the government's evidence be of superior weight for it to meet its burden.**

Under the preponderance of the evidence standard applied by the Court here, the government's evidence must *outweigh* the evidence submitted by the defendant for the government to meet its burden.[3] Preponderance of the evidence is

> evidence which as a whole shows that the fact sought to be proved is more probable than not[.] 'Preponderance' means something more than 'weight;' it denotes a *superiority of weight*, or outweighing.

*United States v. Mathis*, 216 F.3d 18, 28 (D.C. Cir. 2000), *quoting United States v. Montague*, 40 F.3d 1251, 1255 & n. 2 (D.C. Cir. 1994)(emphasis added). Sentencing determinations that are not based on at least a preponderance of the evidence cannot stand. *See United States v. Smith*, 267 F.3d 1154, 1165 (D.C. Cir. 2001)(overturning trial court's decision to sentence defendant as

---

[3]    By addressing the preponderance standard here, Brownell does not waive the issues regarding the proper burden of proof raised in his proposed findings of fact and conclusions of law.

if he had been convicted of uncharged crimes because the court's analysis was "not supported by the greater weight of the evidence"); *United States v. Khan*, 88 F.3d 1279, 1996 WL 311458, *2 (D.C. Cir. 1996)(finding of post-offense misconduct based on another state's indictment but no direct evidence did not meet the preponderance standard).

The Sentencing Guidelines provide that in determining relevant conduct for tax loss purposes, the court should consider related conduct "violating the tax laws." Federal Sentencing Guidelines, § 2T1.1, Application Note 2. Thus, in order for any amounts to be included in the tax loss calculation, the government must meet its burden of proving that they arose from *criminal* tax evasion. *United States v. Powell*, 124 F.3d 655, 663-64 (5th Cir. 1997) ("In [*United States v.*] *Daniel* [956 F.2d 540, 544 (6th Cir. 1992)], the Sixth Circuit held that losses must result from criminal conduct to be considered part of the "tax loss" for the purposes of sentencing under USSG § 2T1.1. *See Daniel,* 956 F.2d at 544. The court thus remanded the case for resentencing in light of the district court's inclusion of civil liabilities for unpaid taxes as part of the "tax loss"). Because willfulness is an element of tax evasion, *see Sansone v. United States*, 380 U.S. 343, 351 (1965), the government cannot meet its burden by showing negligence or a mistake under the tax laws. Instead, the government must establish that Brownell intentionally violated a known duty. *See Cheek v. United States*, 498 U.S. 192, 201 (1991). If Brownell had a good faith belief that he was not liable for taxes on the payments to his PVB account because they were not loans, his actions were not willful and therefore did not constitute tax evasion, even if his belief was objectively unreasonable. *See id.* at 202.

We respectfully submit that under these standards, the government has not met its burden of establishing that Brownell willfully evaded taxes with regard to the payments to his PVB account.

6

### 2. The conclusion that the payments to Brownell's PVB account were not loans is not supported by the superior weight of the evidence.

The Court's conclusion that the payments to Brownell's PVB line of credit account constituted unreported income was based on three findings: (1) that the defendant was involved in recording the payments in DDC's books so that they appeared as loan repayments from DDC to PVB; (2) that after DDC made payments to his PVB account, Mr. Brownell wrote checks on that account in approximately the amount of the deposits; and (3) that Brownell repaid the loans after receiving a bonus from DDC in 2005. (Findings 11-13, p. 3.) Brownell respectfully notes, however, that these conclusions do not take into account the unrebutted evidence offered at the hearing showing that the method by which the PVB payments were recorded in DDC's books was *not* designed to conceal the nature of the payments, and the evidence of contemporaneous records showing that the payments were loans.

First, DDC's "vendor file" for PVB, which contained copies of checks issued by DDC and back-up documentation for those checks, included copies of Brownell's home equity line statements for every payment made by DDC to PVB. *See, e.g.,* Def. Exs. 1A and 1B, pp. 1-2(Tab F); Gov't. Ex. 67(b) (Tab G); *see also* Gov't. Exs. 62(a), 62(d), 62(f), 62(g), 65(d), 65(f), 65(h), 66(b)(Tab H).[4]

Second, the notion that Brownell was attempting to conceal the PVB payments by having them recorded in DDC's books as mortgage payments from DDC to PVB, hidden among other DDC property mortgages payments, was directly contradicted by the testimony of David Medding, DDC's former controller. Mr. Medding established without contradiction that DDC

---

[4]  Tab references are to the attachments to Brownell's Proposed Findings of Fact and Conclusions of Law.

itself did not purchase properties and so did not record property mortgages in its books. 2/13 Tr. at 42-43.

Third, the findings do not take account of the fact that that accounting workpapers prepared by Jack Minnis, DDC's outside accountant, show that, after Brownell's $50,000 loan to DDC from his PVB account was repaid, the additional payments to PVB were recorded as amounts "**Due from Jack Brownell**." Def. Ex. 117-1998, pp. 235, 240 (Tab K) (emphasis added); *see also* Def. Ex. 117-1999, p. 247 (Tab L). Minnis's contemporaneously-created workpapers unequivocally showed that these payments – recorded as a "contra-balance" in the credit account – were loans to Brownell.

The findings also do not take account of the testimony of Paul Wilner, an expert accountant from Grossberg Company, who stated that the method by which the payments to Brownell's PVB account were presented in DDC's general ledger was an acceptable way of presenting a loan to Brownell:

> If it was a payable and it converted to a negative payable, which means a receivable, it's just a contra-liability account. It reflects exactly the same thing. Wherever it sits, it tells me as an accountant that there's an amount of money due from. There's a receivable. If it's in 2600, and it's a negative, that means it's a receivable ....

2/14 Tr. at 74.

Wilner also testified without rebuttal that recording the loan payments to Brownell in this manner did not reflect an intent to conceal the nature of these payments, because amounts recorded as payables or receivables are subject to reconciliation and examination:

> . . . So **if I was trying to put something somewhere where no one would try to understand what it was, I would never put it in a balance sheet account**.
>
> Q.   And is that where these payments were?
>
> A.   Absolutely.

8

2/14 Tr. at 66 (emphasis added).

Based on this record, the government's evidence of the way in which the PVB payments were recorded in DDC's books, which the government claims supports a finding that the payments were income, does not outweigh – and is indeed outweighed by – the unrebutted evidence showing that the payments were given an accounting treatment consistent with their status as loans.

Further, Brownell's practice of writing checks out of his PVB account after the DDC loan payments were deposited does not add to the weight of the evidence against him. It is not inconsistent or unusual for a person receiving a loan to need to use the funds loaned and, therefore, to draw them out of the account when made available. Moreover, Paul Wilner offered unrebutted testimony that it was sensible for DDC to have repaid its loan from Brownell with checks payable to PVB (2/14 Tr. at 88); this practice simply continued when the payments became loans to Brownell. Similarly, Mr. Brownell's 2005 repayment of the amounts due to DDC *supports* the conclusion that these payments were loans and understood to be loans. It certainly does not add weight to the government's claim that the payments must have been intended as income.

        **3.**       **The weight of the evidence does not support the conclusion that Brownell did not intend the payments to be loans.**

In order to prevail, the government must, as set forth above, establish a criminal violation of the tax laws with regard to the payments to Brownell's PVB account. It must prove that the payments were not loans, and also must prove that Brownell did not have a good faith belief that they were loans. *See Cheek v. United* States, 498 U.S. 192, 201 (1991).

As discussed above, the contemporaneous records and accounting treatment of the payments establish that they were loans. With regard to Brownell's understanding, the evidence

9

introduced at the hearing and detailed in his proposed findings of fact and conclusions of law demonstrated the following: DDC had a regular business practice of taking loans from and making loans to employees, including high-level employees, without loan agreements or other documentation; Brownell was acting in this context when he first lent money to DDC and then received loans from DDC; the accounting treatment of the payments to his PVB account was entirely consistent with their status as loans, and was not designed to conceal; Brownell continued to treat the payments to his PVB account as loans even after the investigation began, and accounted for them as loans in his tax returns filed in 2005; and he repaid those loans from a bonus he received after DDC initiated a major asset sale. Brownell respectfully submits that this evidence supports a finding that Brownell understood these payments to be loans.

The intent evidence relied on by the government is not of sufficient weight to meet its burden of showing otherwise. The absence of a loan agreement, repayment schedule or similar document is not dispositive; indeed, the law is clear that no one factor is dispositive and that the key issue is intent to repay, s*ee United States v. Pomponio*, 563 F.2d 659, 662 (4th Cir. 1977), which is shown here by Brownell's own conduct. In this case, the lack of documentation was in line with DDC's regular business practices with regard to loans. The pattern of Brownell's reported wages and the challenged payments does not establish that the payments were not loans. Among other things, the government's claim that the payments to the PVB account were intended to provide Brownell with a steadily increasing income is belied by the total payments in 2003, which were significantly lower than the total payments the government claims were income to Brownell in 2000, 2001 and 2002.

The government relied heavily on a 1993 memorandum purportedly written by Brownell to Douglas Jemal. But the 1993 memo on its face does not relate to the matters at issue here. It is

remote in time, having been written almost five years before the first act alleged in the indictment. More importantly, it does not address PVB or Brownell's home equity line of credit. It does not discuss any loans to Brownell or the payments at issue in this matter. It does not propose the use of sham loans as a means for avoiding taxes. Although the memo references a bonus check, it does not say who the check was for. The government offered no evidence that this memo was ever finalized or sent to anyone by Brownell, much less that it was ever acted on. Indeed, the government offered no testimony about the 1993 memorandum at all, let alone testimony connecting it to the PVB line of credit account or to Brownell's intent with regard to the payments from DDC. On this record, the meaning of any of the statements in the 1993 memo and their relationship, if any, to the events under consideration now, is purely a matter of speculation. Speculation alone is certainly not enough to support a finding that Brownell possessed criminal intent to evade taxes with respect to the payments to his PVB account, particularly in light of the contemporaneous documentation treating these payments as loans.

The government also relied on statements in certain loan and credit applications prepared by Brownell as evidence of his intent. Even if Brownell misdescribed his income and debts in these documents, this does not establish that the payments he received from DDC were not loans or that Brownell did not believe them to be loans. The description of his PVB credit line, in certain of his loan applications, as being paid by DDC, accurately reflected that the payments on that line of credit did come from DDC – directly contradicting the government's theory that Brownell was attempting to conceal this fact. Moreover, the government also offered no testimony about these documents or the circumstances under which they were created or transmitted. The conclusion on which the government insists – that these documents reflected

11

Brownell's "real" understanding of his income and debts – is again based on nothing more than speculation.

The government's evidence of intent was thus indirect, non-contemporaneous, ambiguous and, most importantly, dependent on speculation. In contrast, Brownell presented unrebutted direct evidence, including contemporaneous documentation, showing that the payments were loans and treated as loans, and were not "hidden" in DDC's books. Brownell respectfully submits that a fair weighing of all of the evidence presented leads to the conclusion that the government's evidence did not have the "superiority of weight" required under *United States v. Mathis* to meet its burden by a preponderance of the evidence.

Accordingly, defendant Brownell respectfully submits that the Court should amend its findings and conclusions and determine that the $228,616.88 in payments from DDC to Brownell's line of credit account at PVB have not been proven to be unreported income.

**4.    The findings here cannot be reconciled with the Court's findings in the Esherick sentencing.**

As we noted above in our introduction, the inclusion of tax years other than 1999 here cannot be reconciled with the approach used by the Court in sentencing Blake Esherick, where tax years other than the years of conviction were excluded from the tax loss.

**5.    In any event, the $6,300 credit acknowledged by the government should be incorporated in the calculation.**

In its submissions to the Court, the government acknowledged that in calculating the tax loss arising from the PVB payments, a deduction of $50,000 should be taken from the total, because that amount represented DDC's repayment of the $50,000 check written by Brownell to DDC on his line of credit and, therefore, was not income to Brownell. *See* Gov't Ex. 1, p.22. The Court included this deduction in its findings.

12

The government also acknowledged that an additional deduction, in the amount of approximately $6,300, was appropriate. *See* Gov't Ex. 1, p. 19 (calculating exact amount as $6,316.03), and p. 22. However, the Court did not include this deduction in its findings. Even if the Court were to decline to reconsider its classification of the PVB payments as a whole, Brownell respectfully submits that it should include this deduction in calculating the tax loss.

As set forth in the government's exhibits, the $6,300 amount represents payments by DDC that constituted interest to PVB on the $50,000 received by DDC from Brownell's PVB account. In other words, when Brownell borrowed $50,000 from his PVB line of credit to lend to DDC, interest charges from PVB were incurred on that amount. Both the $50,000 principal and the interest had to be repaid to PVB. In addition to the amounts that went toward repaying the $50,000 principal, which were not income to Brownell, all of the amounts paid by DDC that went toward the interest owed to PVB were not income to Brownell. Since the government has acknowledged this, it certainly has not met its burden of proving that the $6,300 amount should be included as unreported income for tax loss purposes.

    **C.**    **The Government Did Not Meet Its Burden of Proving That the $20,000 Check in 1999 Was Unreported Income.**

As the Court noted in its findings, in 1999 Brownell received two checks from DDC, each in the amount of $20,000. Finding 14, at 3-4. As the government acknowledged and the Court found, one of those checks was offset by a $20,000 check written by Brownell to DDC in May of 1999. The Court concluded that the other $20,000 check, dated December 30, 1999, constituted income to Brownell. *Id.* Brownell respectfully submits that the Court should reconsider this conclusion, because the treatment of the check in DDC's books plainly indicates that it was a loan. The December 30 check was coded in DDC's general ledger in the "1400" account, representing "loans receivable" – that is, loans made by DDC to another party which

13

were to be repaid to DDC. Further, we understand that this amount was included in the loan repayment made to DDC by Brownell in 2005.

Moreover, treating this check as unreported income is inconsistent with the tax loss calculation made by the Court for Blake Esherick. A number of the checks from DDC to Blake Esherick that the Court declined to treat as unreported income were coded in exactly the same manner as this check – that is, in the "1400" loans receivable account in DDC's general ledger. Accordingly, Brownell respectfully submits that the Court should reconsider its findings and determine that the $20,000 check did not constitute unreported income.

14

## CONCLUSION

For the reasons set forth above, defendant Brownell respectfully submits that the Court should reconsider its findings and conclusions and determine (1) that the two checks Brownell received from DDC in October 1995 totaled $32,992.79; (2) that the government failed to establish that the $228,616.88 in payments from DDC to Brownell's line of credit account at Potomac Valley Bank were unreported income to Brownell; and (3) that the $20,000 check Brownell received from DDC in 1999 was not shown to be unreported income.  Brownell further respectfully submits that the Court should recalculate the tax loss and base offense level accordingly.

Respectfully submitted,

JOHN E. BROWNELL

By Counsel:

/s/ Barry Coburn_____
Barry Coburn (D.C. Bar #358020)
Gloria B. Solomon (D.C. Bar #358880)
Jeffrey C. Coffman (D.C. Bar #493826)
TROUT CACHERIS PLLC
1350 Connecticut Avenue, N.W.
Suite 300
Washington, D.C.  20036
Phone: (202) 464-3300
Fax: (202) 464-3319

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
UNITED STATES                  )
                               )
    v.                         )     Crim. No. 06-CR-0077 (RMU)
                               )
JOHN E. BROWNELL,              )
                               )
         Defendant.            )
_____)
```

## ORDER AMENDING FINDINGS OF FACT & CONCLUSIONS OF LAW

This matter came before the Court on the motion of defendant Brownell for reconsideration of the tax loss findings in this case. Upon consideration of the motion and supporting memorandum, the government's opposition and the reply, it is, this ___ day of _____, 2007, hereby

ORDERED, that the Motion for Reconsideration be and it hereby is GRANTED; and it is further

ORDERED, that the Findings of Fact & Conclusions of Law entered on May 17, 2007, are amended as follows:

(1) the Court finds that the two checks Brownell received from Douglas Development Corporation ("DDC") in October 1995 totaled $32,992.79;

(2) the Court finds that the government failed to establish that the $228,616.88 in payments from DDC to Brownell's line of credit account at Potomac Valley Bank were unreported income to Brownell;

(3) the Court finds that the government failed to establish that the $20,000 check from DDC to Brownell in 1999 constituted unreported income; and

(4) accordingly, the Court concludes that the tax loss in this matter is no more than $16,993.98 and the base offense level is 12.

_____
Ricardo M. Urbina
United States District Judge

Copies to:

Mark H. Dubester
Assistant United States Attorney
U.S. Attorney's Office for the
  District of Columbia
555 Fourth Street, N.W.
Room 5917
Washington, D.C. 20001

Barry Coburn
Jeffrey C. Coffman
Trout Cacheris, PLLC
1350 Connecticut Avenue, N.W.
Suite 300
Washington, D.C.  20036