UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 06-077 (RMU) |
| : | |
| JOHN E. BROWNELL : | |

**GOVERNMENT'S REPLY TO DEFENDANT BROWNELL'S MOTION FOR
RECONSIDERATION OF TAX LOSS FINDINGS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Defendant Brownell's Motion for Reconsideration of Tax Loss Findings.

I. INTRODUCTION

The defendant's motion fails to present factual or legal arguments that require any material change in the Court's Findings of Fact & Conclusions of Law[1] ("Findings"). Accordingly, the defendant's motion should be denied.

II. ARGUMENT

At the evidentiary hearing, the Government produced evidence that convincingly established that the defendant used a host of methods to cause Douglas Development (DDC) to make payments to him and for his benefit amounting to several hundred thousand dollars over many years, without the payments being reported to the Internal Revenue Service as income or income taxes paid on that amount. The payments were variously recorded in DDC's books as "loans" to the defendant (even though there was virtually no evidence of any intent that the so-called loans were ever to be repaid) and as "loans payable" to third parties (not to the defendant).

---

[1] Findings of Fact & Conclusions of Law, United States v. Brownell (Crim. No. 06-077 (RMU) (May 17, 2007).

Moreover, the amounts recorded as "loans payable" were hundreds of thousands of dollars in excess of any purported "loans" by the defendant to DDC.

The Government introduced a near-seamless web of evidence to support the contention that the amounts paid to the defendant from DDC were intended to constitute concealed and unreported income, including evidence that: the defendant failed to file tax returns (compelling the proper inference that he had little regard or respect for his tax obligations); he routinely used fraudulent and forged financial documents in reporting his income to financial institutions;[2] he laundered the funds he received from DDC by running them through his line of credit account; he wrote a memo specifically discussing making income "non-traceable;" he personally directed that the transactions be accounted for in the books of DDC in a manner that was outright false if not profoundly misleading; and he only "repaid" the purported loans when under a tax evasion investigation. The DDC payments to or for the benefit of Mr. Brownell have the feel of income, that is, the payments were made on a near-monthly basis of relatively consistent amounts, and were used to support the defendant's expenses of daily living. Moreover, on no less than three occasions the defendant denied in bank applications having outstanding loans – though he insists now that the hundreds of thousands of dollars he received over almost a decade were in fact loans.[3] Because the defendant is a skilled accountant, it is plain that these events, occurring over

---

[2] When the defendant needed his reported income to be greater than actual income – such as to obtain a loan – he used dishonest means such as false documents; when he wanted his income to be low, so as to avoid taxes, he used other dishonest means.

[3] The clear thrust of Mr. Brownell's representations in loan applications that DDC was paying his Potomac Valley Bank (PVB) line of credit was that he was not liable for the PVB line of credit in his name – a debt that ranged from $60,000 to over $120,000 as the line of credit was increased over time. Such representations in loan applications could have had no purpose but to convey that he had no liabilities – representations totally at odds with his present

almost a decade, were by design, and not by confusion or innocent mistake.

The two defense witnesses had little to offer and in nearly all pertinent aspects they supported the Government's case. They could not and did not testify as to Mr. Brownell's actual intent. Mr. Minnis, in particular, testified he had no first-hand knowledge of relevant facts subsequent to1999.[4] Mr. Wilner had no first-hand knowledge whatsoever of any of the contemporaneous facts, and the most he could provide as an "expert" was that Mr. Brownell may have intended a contrived and misleading accounting of some of the payments. The Court was free to consider the multitude of evidence (of which Mr. Wilner was unaware) in making its determination as to Mr. Brownell's intent.

The Offense Level urged by the Government was based on post-2001 versions of the Sentencing Guidelines that provide that a tax loss in excess of $80,000 results in Offense Level 16. In fact, as the (draft) Pre-Sentence Report notes, it appears that the Guidelines to be considered are those that were in effect in 1999. The1999 Guidelines provide that a tax loss in excess of $70,000 yields an Offense Level of 14. The Court's determination of a tax loss of slightly more than $90,000 easily exceeds the $70,000 that is required for Level 14. Moreover, even if the Court were to accept other particular adjustments urged by the defense, the "tax loss" would remain over $70,000, and the Guideline level would not change.[5]

---

contentions.

[4] Indeed, the lack of scrutiny after 1999 provided the defendant the freedom to persist in the conduct at issue – conduct that he concealed from DDC's Controller (David Medding).

[5] There are three potential adjustments the defendant urges in addition to the Court's reconsideration of the monies paid the defendant through the Potomac Valley Bank line of credit account. First, the defendant urges reducing the income resulting from the 1995 checks

In short, there is no reason for the Court to reconsider its findings.

WHEREFORE, the Government requests the Defendant's Motion be DENIED.

>Respectfully submitted,

>JEFFREY A. TAYLOR
>UNITED STATES ATTORNEY

>By:      /s/
>Mark H. Dubester, D.C. Bar No. 339655
>Assistant United States Attorneys
>555 4th Street, NW
>Room 5917
>Washington, D.C. 20530
>(202) 514-7986

---

from $47,000 (the gross amount of the checks) to $32,992, resulting in a $14,008 adjustment. Second, the defendant urges that he received credit for an additional $6,300 as purported interest on what he maintains was a $50,000 loan. (Though there is no actual evidence that Mr. Brownell actually "lent" the money to DDC with "interest," the Government, to be conservative, was willing to attribute approximately $6,300 as interest. The Court is not required to make such a finding if not warranted by the facts.) Third, the defendant would have the Court reverse its finding that a given $20,000 item was income and find that it was a "loan." There is **no** basis for any change in this finding.

Even if the Court were to make the first two of the proposed adjustments, the ultimate tax loss would change only slightly, and not in any material fashion:

- Giving the defendant credit for the $14,008 adjustment would reduce his total unreported income to $309,308.88, or his tax loss to $86,606.

- Giving the defendant credit for (1) the $14,408 adjustment and (2) the $6,3000 adjustment would reduce his total unreported income to $303,008.88, or his tax loss to $84,842.49.

In either instance, the total amount would remain well over ($70,000) (or even over $80,000).