UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 06-0077 (RMU) |
| | : | |
| JOHN E. BROWNELL, | : | Document No.: 67 |
| | : | |
| Defendant. | : | |

**FILED**

JUL 2 - 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>**MEMORANDUM ORDER**</u>

GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR
RECONSIDERATION

This case is before the court on the defendant's motion for reconsideration of the May 17, 2007 findings and conclusions regarding the tax loss attributable to the defendant. In particular, the defendant requests that the court reconsider three of its factual conclusions. First, the defendant asks the court to reconsider its conclusion regarding the amount of income that the defendant received from the two October 1995 checks. Second, the defendant asks the court to reconsider its conclusion that the payments from DDC to the defendant's PVB account constitute income, rather than loans. Third, the defendant moves for reconsideration of the court's finding that a $20,000 check issued by DDC to the defendant in 1999 constitutes income. For the reasons that follow, the court grants in part and denies in part the defendant's motion for reconsideration.

**1. The Court Grants the Motion With Respect to the Two October 1995 Checks**

The court's May 17, 2007 findings of fact concluded that the defendant received $47,000 from two DDC checks issued in October 1995. Findings of Fact & Conclusions of Law (May 17, 2007) ("Findings") ¶¶ 1-4. The defendant, however, points out that he received $32,992.79,

rather than $47,000, from those two checks. Def.'s Mot. at 5. The government does not dispute this contention, except to point out that a reduction of approximately $14,000 in the court's tax loss calculation does not impact the defendant's Guidelines level. Govt's Opp'n at 3-4 n.5. Because the court based its conclusion on the gross amounts stated on the check, rather than on the amount that the defendant actually received, the court grants the defendant's motion for reconsideration with respect to the October 1995 checks.

### 2. The Court Denies the Motion With Respect to the PVB Account

The defendant argues that the government did not meet its burden of proving, by a preponderance of the evidence, that the payments that DDC made to Brownell's PVB account were not loans.[1] Def.'s Mot. at 5. In particular, the defendant argues that: (1) DDC's vendor file for PVB included copies of Brownell's home equity line statements, (2) David Medding's testimony contradicts the conclusion that the defendant attempted to conceal the true nature of the payments, and (3) accounting work papers classified the payments as loans from DDC to the

---

[1] In the alternative, the defendant asks that the court give him a $6,300 credit for purported interest on a $50,000 loan that he made to DDC. Def.'s Mot. at 2 n.2. Although there is no evidence that the defendant lent the money to DDC with interest, the government "to be conservative," was willing to attribute that amount as interest. Govt's Opp'n at 4 n.5. Although a $6,300 credit does not impact the defendant's Guidelines level, the court grants the defendant's request to attribute the $6,300 in the manner set forth in the government's original calculations.

defendant.[2] The defendant's arguments,[3] however, do not change the court's conclusion.

Although the payments that DDC made to the defendant were recorded as loans to the defendant, or as loans payable to third parties, there is no indication that the payments were actually intended as loans to the defendant. Indeed, the defendant treated these payments as income, withdrawing them on a nearly-monthly basis from his PVB account over approximately eight years. The defendant also made no efforts to repay the purported loans, even when his employer more than doubled his reported income in 2000. As early as 1993, the defendant wrote a memo to his employer, referring to a "quarterly bonus check," and stating that "[p]ayment in this manner is 100% non-traceable as compensation, thereby eliminating tax burdens on both sides." Findings ¶ 27.

The defendant's income pattern also supports the court's conclusion that the PVB payments were income, rather than loans. From 1994 to 1999, the defendant received only a few, small salary increases (and his salary was less than that of his subordinate), and after his reported salary increased in the year 2000, DDC's payments to the PVB account decreased. Findings ¶ 26. Additionally, the defendant routinely represented to financial institutions that his income was much higher than the income reported to the IRS (and that he was not liable for the PVB account), and his employer wrote letters to financial institutions stating that the defendant

---

[2] The defendant also argues that the court's conclusion is inconsistent with its treatment of tax loss in *United States v. Esherick*, Crim. No. 05-0359. But, the defendant overlooks that Blake Esherick's conviction resulted from a trial, rather than a plea, and in plea cases, less danger exists that the record will be unclear or error-ridden. *Cf. Halbert v. Michigan*, 545 U.S. 605, 630 (2005). In the *Esherick* matter, moreover, the court did not have the benefit of a sentencing fact finding hearing to assist it in determining whether the conduct in the uncharged years was criminal in nature and whether it was related to the conduct in the years of conviction.

[3] The court notes that the defendant presented these same arguments at the fact finding hearing and in his Proposed Findings of Facts and Conclusions of Law.

received both a salary and bonuses. Findings ¶¶ 30-31.

With respect to testimony about DDC's accounting practices and the testimony regarding the accounting work papers, the court notes that none of the witnesses could testify as to the defendant's intent. Medding, however, did testify that the manner in which the payments were recorded in DDC's books made them appear like a payment that DDC was making on one of its own loans. Tr. (Feb. 13, 2007) at 18-19. Other witness testimony, further, showed that DDC did not typically record "contra balances" in its loan payables account. Tr. (Feb. 14, 2007) at 40. And, some of the testimony relied on by the defendant came from individuals who only had limited knowledge of the defendant's financial dealings with DDC, see e.g., id. at 36 and 83-85, thereby decreasing the probative value of their testimony.

Moreover, although the accounting work papers state that the PVB payments are amounts "due from Jack Brownell," those papers were not located in DDC's offices and were not used in day-to-day accounting work. Theoretically, DDC's books would ultimately need to be reconciled, thereby showing anyone inclined to examine DDC's ledgers that the defendant allegedly owed money to DDC. But, such a reconciliation would not occur until some indefinite point in the far-off future, id. at 83-84, making it easy for the defendant to conceal the nature of the payments at issue. In short, the court concludes that the government has shown, by a preponderance of the evidence, that the payments to PVB were not treated as loans by the defendant or his employer, and that the defendant possessed the requisite intent for tax evasion.

### 3. The Court Denies the Motion With Respect to the $20,000 1999 Check

The court previously concluded that a $20,000 check that the defendant received from DDC constituted income. Findings ¶ 14. The defendant asks the court to reconsider this

conclusion "because the treatment of the check in DDC's books plainly indicates that it is a loan." Def.'s Mot. at 13. For its part, the government argues that "there is *no* basis for any change in this finding." Govt's Opp'n at 4 n.5 (emphasis in original). The court agrees.

The defendant argues that the $20,000 constitutes a loan, rather than income, because the "check was coded in DDC's general ledger" in an account that represented loans made by DDC. Def.'s Mot. at 13. But, "the sine qua non of a bona fide non-reportable loan is the taxpayer's own intention to repay." *United States v. Pomponio*, 563 F.2d 659, 662 (4th Cir. 1977). In this case, the government proved, by a preponderance of the evidence, that the check was not a bona fide loan. First, the defendant never made a payment on the loan until 2005, after the criminal investigation began and six years after he received the purported loan. Second, the check is dated December 30, 1999, a date on which employers give employees year-end bonuses. Third, the defendant's income pattern also supports the court's conclusion that the $20,000 check constitutes income. Most employees' incomes do not decrease from one year to the next, but rather, either stay the same or increase. In 1998, the defendant received approximately $63,000 in unreported income, and if the $20,000 is income, the defendant received approximately $61,000 in unreported income in 1999. But, if the $20,000 does not constitute income, it would mean that DDC decreased the defendant's compensation in the year 1999 (and then increased it approximately three-fold in the year 2000). To reiterate the court's previous conclusion, the government's evidence regarding the $20,000 check showed, by a preponderance of the evidence, that it constituted income, rather than a loan.

Accordingly, it is this 28th day of June 2007,

**ORDERED** that the defendant's motion is **GRANTED in part and DENIED in part**.

**SO ORDERED**.

_____
Ricardo M. Urbina
United States District Judge